**STEVEN J. ROTHANS-State Bar No. 106579**
**SCOTT CARPENTER-State Bar No. 253339**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 South Grand Avenue, 19th Floor**
**Los Angeles, CA 90071**
**(213) 228-0400 / (213) 228-0401 (Fax)**
srothans@crdlaw.com / scarpenter@crdlaw.com

Attorneys for Defendants, City of San Bernardino, a public entity, and
Officers Jonathan Davalos and Andres Estrella, public employees

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO URENA, individually, | Case No. 5:24-cv-00341-JGB-ACCV |
| Plaintiff, | **DEFENDANTS' MOTION FOR SUMMARY JUGDMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| CITY OF SAN BERNARDINO, JONATHAN DAVALOS, ANDRES ESTRELLA and DOES 1-10, inclusive, | [Filed concurrently with the Separate Statement of Uncontroverted Facts] |
| Defendants. | Date: April 20, 2026 |
| | Time: 9:00 a.m. |
| | Courtroom: 1 – Riverside |

PLEASE TAKE NOTICE that on April 20, 2026 at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 1 of the United States District Court, Central District, located at 3470 Twelfth Street Riverside, CA 92501, Defendants City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella, will and, pursuant to Federal Rule of Civil Procedure 56, hereby do move the Court for summary judgment, or in the alternative, PARTIAL

summary judgment as to the following claims and issues:

1.     Defendants are entitled to judgment in their favor as to the plaintiff's second claim for "Excessive Force" which is brought pursuant to 42 U.S.C. § 1983, where the uncontroverted material facts clearly establish that the force used by Officers Davalos and Estrella against the plaintiff was objectively reasonable, and where the officer defendants are shielded from liability by the doctrine of qualified immunity;

2.     Defendants are entitled to judgment in their favor as to the plaintiff's eighth claim for "Battery" because the undisputed evidence shows that the officers acted with objective reasonableness under the circumstances, and the officers are immune under the Government Code;

3.     Defendants are entitled to judgment in their favor as to the plaintiff's ninth claim for Negligence because the undisputed evidence shows that the officers acted with objective reasonableness under the circumstances, and the officers are immune under the Government Code;

4.     Defendants are entitled to judgment in their favor as to the plaintiff's tenth claim for violation of the Bane Act because the undisputed evidence shows that the officers did not have a specific intent to violate plaintiff's rights, and the officers are immune under the Government Code; and

5.     Plaintiff's request for punitive damages must be stricken, where the undisputed evidence does not demonstrate that the officers acted with malice, oppression, or fraud.

This motion is made following the conference of counsel pursuant to L.R. 7- 3 which took place on February 27, 2026.  During the conference, counsel were able to resolve certain issues but not all of the issues related to this motion.  <u>See</u> Carpenter Declaration ¶ 4.

This motion will be made and based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all evidence submitted in

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  support of the motion, the pleadings and records on file with this Court, any

2  evidence of which the Court may take judicial notice prior to or at the hearing of

3  this matter, and upon such oral or documentary evidence as may be presented at

4  the hearing of this motion.

5

6  DATED:  March 9, 2026      CARPENTER, ROTHANS & DUMONT LLP

7                                              */s/  Scott J. Carpenter*

8                         By: _____

9                                    Steven J. Rothans
                                     Scott J. Carpenter
10                                   Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS .....................................................................2

III.  PLAINTIFF'S CLAIMS .......................................................................4

IV.   LEGAL STANDARD ON SUMMARY JUDGMENT ...................................4

V.    STATEMENT OF LAW ........................................................................5

      A.  Plaintiff's Second Claim For Excessive Force Is Subject To Summary Judgment..........................................................................5

      B.  Qualified Immunity Shields Officers Davalos And Estrella.................8

      C.  Plaintiff's Wrongful Death Claims (Battery & Negligence) Fail. ........13

      D.  Plaintiff's State Tort Claims Are Barred By California Government Code Immunity. ..........................................................14

      E.  Plaintiff's Bane Act Claim Fails.....................................................15

      F.  The Prayer For Punitive Damages Should Be Stricken. ....................166

VI.   CONCLUSION…………………………………………………16

- 1 -

# TABLE OF AUTHORITIES

**Cases**

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ....................................................4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................................5

Ashcroft v. al-Kidd, 563 U.S. 731 (2011) ..........................................................9, 12

Billington v. Smith, 292 F.3d 1177 (9th Cir. 2002) ................................................11

Blanford v. Sacramento Cnty., 406 F.3d 1110 (9th Cir. 2005)..............................12

Brosseau v. Haugen, 543 U.S. 194 (2004) ...............................................................9

Brown v. Ransweiler, 171 Cal.App.4th 516 (2009)................................................13

Calonge v. City of San Jose, 104 F.4th 39 (9th Cir. 2024) ......................................6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)....................................................4, 5

Chaudhry v. City of Los Angeles, 751 F.3d 1096 (9th Cir. 2014).........................15

City of S.F. v. Sheehan, 135 S. Ct. 1765 (2015) ....................................................10

Conway v. County of Tuolumne, 231 Cal.App.4th 1005 (2014)............................15

Cornell v. City and County of San Francisco, 17 Cal.App.5th 766 (2017) ...........16

Cruz v. City of Anaheim, 765 F.3d 1076 (9th Cir. 2014) .......................................12

Easley v. City of Riverside, 890 F.3d 851 (9th Cir. 2018)......................................11

Est. of Chivrell v. City of Arcata, 2025 WL 2210020 (N.D. Cal. Aug. 4, 2025) ...11

Est. of Strickland v. Nevada County, 69 F.4th 614 (9th Cir. 2023)........................11

George v. Morris, 736 F.3d 829 (9th Cir. 2013) ......................................................6

Gonzalez v. City of Anaheim, 747 F.3d 789 (9th Cir. 2014)...........................7, 13

Harlow v. Fitzgerald, 457 U.S. 800 (1981) ..............................................................8

Hunter v. Bryant, 502 U.S. 224 (1991) ....................................................................8

Hyde v. City of Willcox, 23 F.4th 863 (9th Cir. 2022)...........................................13

Kisela v. Hughes, 584 U.S. 100 (2018)..................................................................12

Kocol v. United States, 2015 WL 12670408 (C.D. Cal. 2015)..............................14

Krause v. County of Mohave, 846 F. App'x 569 (9th Cir. 2021) ............................6

Lal v. California, 746 F.3d 1112 (9th Cir. 2014) ......................................................8

Long v. City & Cnty. of Honolulu, 511 F.3d 901 (9th Cir. 2007) ...........................6

- 1 -

Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011) ........................................8

Mullenix v. Luna, 136 S. Ct. 305 (2015)......................................................9

Munoz v. City of Union City, 120 Cal. App. 4th 1077 (2004) ................................5

Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,
    210 F.3d 1099 (9th Cir. 2000) ...................................................5

Pearson v. Callahan, 555 U.S. 223 (2009) ......................................8, 9, 12

Reese v. Cnty. of Sacramento, 888 F.3d 1030 (9th Cir. 2018) ...........................16

Reynolds v. Cnty. of San Diego, 858 F. Supp. 1064 (S.D. Cal. 1994) ....................6

Reynolds v. County of San Diego, 84 F.3d 1162 (9th Cir. 1996)..........................11

Romero v. Kitsap County, 931 F.2d 624 (9th Cir. 1991)..................................8

Ryburn v. Huff, 565 U.S. 469 (2012)...................................................6

S.B. v. Cnty. of San Diego, 864 F.3d 1010 (9th Cir. 2017) ............................10

S.E.C. v. Seaboard Corp., 677 F.2d 1301 (9th Cir. 1982)................................5

Sabbe v. Washington Cnty. Bd. of Commissioners, 84 F.4th 807 (9th Cir. 2023).11

Saucier v. Katz, 533 U.S. 194 (2001)..................................................9

Scott v. Harris, 550 U.S. 372 (U.S. 2007) ...........................................6

Scott v. Henrich, 39 F.3d 912 (9th Cir. 1994)........................................11

Screws v. United States, 325 U.S. 91 (1945) ........................................16

Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110 (9th Cir. 2017).......................10

Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005) .............................6, 11

Smith v. Wade, 461 U.S. 30 (1983) ..................................................17

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003)......................18

Tarabochia v. Adkins, 766 F.3d 1115 (9th Cir. 2014) ................................8

Terry v. Ohio, 392 U.S. 1 (1968)....................................................6

Torres v. City of Madera, 648 F.3d 1119 (9th Cir. 2011)..............................12

White v. Pauly, 137 S. Ct. 548 (2017)...............................................10

Wilkinson v. Torres, 610 F.3d 546 (9th Cir. 2010) ..................................7

**Statutes**

Cal. Civ. Code § 52.1............................................................15

TABLE OF AUTHORITIES

Cal. Gov't Code § 820.2 .................................................................................15

Cal. Penal Code § 835a ..................................................................................14

Fed. R. Civ. P. 56(a) .......................................................................................4

**Other Authorities**

9th Cir. Model Jury Instr. 5.5 (2019) .............................................................17

Cal. Jury Inst., No. 1305A .............................................................................13

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

This civil case arises out of the non-fatal officer-involved shooting of Renato Alfonso Urena by City of San Bernardino Police Department ("SBPD") Officers Andres Estrella and Jonathan Davalos on February 10, 2023.

On the morning of February 10, 2023, Officers Andres Estrella and Jonathan Davalos were on patrol when they received a report of a male subject armed with a handgun driving a silver Nissan Versa nearby. After locating the suspect Nissan, and observing various vehicle code violations, the officers attempted to conduct a traffic stop. However, the driver (later identified as plaintiff Renato Urena) tried to evade officers, abandoned the Nissan, and fled on foot into a vacant lot. Officers Estrella and Davalos pursued plaintiff on foot and observed plaintiff reaching for, and retrieving, a handgun. After plaintiff went into tall, thick grass and shrubbery, and officers observed plaintiff moving toward the officers as if targeting with the gun, the officers fired fearing that plaintiff was about to shoot them.

Plaintiff survived the encounter and now brings a claim of excessive force under 42 U.S.C. section 1983, as well as state law claims of battery, negligence, and violation of the Bane Act.

Defendants submit that summary judgment is appropriate as to each of these claims. The indisputable facts, including the body-worn camera evidence, demonstrate that the force used by Officers Davalos and Estrella was objectively reasonable under the totality of circumstances. Plaintiff evaded a lawful traffic stop and fled on foot from officers while retrieving a handgun. Plaintiff continually refused to comply with the officers' commands and was even warned that he would be shot. Plaintiff turned towards the officers with the gun in his hand as if targeting them. Plaintiff then dove down into a position of concealment inside the overgrown vegetation of an abandoned lot, which partially obscured the officers' view of the suspect. Plaintiff then raised his arm with the gun in his hand

**MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT**

in the officers' direction, thereby posing an imminent threat of death or serious bodily harm to the officers.  In response, the officers shot plaintiff in self-defense.

Even if the amount of force is considered excessive, Officers Davalos and Estrella are nevertheless shielded from liability by qualified immunity.  There was no clearly established law as of February 2023 that deemed unlawful the use of deadly force against a fleeing, resistive, unrestrained suspect that was armed with a firearm and turning towards the officer with gun in hand, while concealed in thick vegetation, and where the suspect had given no indication of any intent to surrender prior to the shooting.

## II. <u>STATEMENT OF FACTS</u>

On February 10, 2023, around 10:15 a.m., Officers Davalos and Estrella were on duty as partners assigned as district resource officers in a marked police vehicle in the area of 14th Street and K Street in the City of San Bernardino.  Fact 1. The officers had previously received a tip about a Hispanic male in a gray or silver Nissa Versa who was possibly armed with a gun around the area near 14th Street and K Street, which was known to be gang territory.  Facts 2-3.  Around the same time, plaintiff Renato Urena was driving a silver Nissan Versa near K Street and 14 Street after having just left a friend's house where he had used marijuana. Fact 4.  Plaintiff was driving without a valid driver's license and was armed with a .40 caliber handgun that was in the front pouch of his hooded sweatshirt.  Fact 5.

The officers observed plaintiff's Nissan at the intersection of 14th Street and K Street and saw that it had a cracked windshield - a possible violation of Vehicle Code section 26710.  Facts 6-7.  The officers then saw the Nissan travel westbound on 14th Street and run a stop - a violation of Vehicle Code section 22450 – and the officers determined to initiate a traffic stop.  Facts 8-9.  Officer Estrella could see plaintiff reaching around inside the Nissan.  Fact 10.  After the officers activated their emergency lights and siren, plaintiff did not pull over and instead ran a stop sign while turning northbound from 14th Street onto Mount Vernon.  Fact 11.

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

Plaintiff drove the Nissan in a northwest direction, crossing into the opposing southbound traffic lanes until he abandoned the Nissan along the westside curb in front of a driveway leading to a vacant lot between 14th Street and Magnolia Avenue.  Fact 12.  Plaintiff then proceeded to flee on foot westbound through the vacant lot while grabbing at his waistband with both hands, and the officers pursued.  Facts 13-14.

At the outset of the foot pursuit, the officers yelled commands for plaintiff to show his hands.  Facts 15-17.  Despite repeated commands, plaintiff continued to grab at his waistband area, and the officers ultimately saw plaintiff retrieve a firearm while running away from them towards an area where the corner of a residence's chain-link fence met a vacant field with tall, overgrown vegetation. Facts 18-20.  The officers continue to give commands to plaintiff to stop reaching and Officer Davalos warns plaintiff that he would be shot.  Facts 21-22.

As plaintiff reaches the overgrown field, he turned counterclockwise towards the officers with a firearm in his right hand as if trying to target the officers.  Fact 24.  Plaintiff then unexpectedly went down to the ground into the thick vegetation, which the officers feared was an attempt to achieve a concealed shooting position from which to ambush the officers.  Fact 25.

As the officers approached plaintiff, their visual of him was limited due to the think brush, but they could see plaintiff laying on the ground with his feet closer to the officers, about five to ten yards away, while facing the officers with his arms outstretched towards the direction of the officers.  Fact 27.  Plaintiff, who was still holding the handgun, started to move his arm up towards the officers' direction and the officers fired their service weapons in self-defense.  Facts 28-29. Just after the first shots were fired, and as plaintiff's arm is raising up, the gun leaves plaintiff's hand and travels upward, but the officers never saw the gun leave plaintiff's hand.  Facts 30-32.  The officers later learned that the .40 caliber handgun was recovered in the backyard of the residence next to which plaintiff

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1    was located when laying the bushes.  Fact 41.

2        After the shooting, the officers approached plaintiff, handcuffed him, and

3    called for medical assistance.  Facts 34-37.  Paramedics ultimately arrived and

4    transported plaintiff to the hospital.  Fact 44.

5        Criminal proceedings were against plaintiff brought on charges of, among

6    others, Penal Code section 245 (assault with a deadly weapon), Penal Code section

7    29800 (felon in possession of a firearm), and Penal Code section 2800.1 (evading

8    police in a motor vehicle).  Fact 45.  On or around June 18, 2024, plaintiff entered

9    into a plea agreement where he plead guilty to felon in possession of firearm and

10   evading police.  Fact 46.

11   **III.    PLAINTIFF'S CLAIMS**

12       The following are the remaining claims asserted in Plaintiff's Complaint:[1]

13       (1) Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

14          against the officer defendants;

15       (2) Battery against all defendants;

16       (3) Negligence against all defendants; and

17       (4) Violation of the Bane Act (Cal. Civ. Code § 52.1) against all defendants.

18   **IV.    LEGAL STANDARD ON SUMMARY JUDGMENT**

19       Summary judgment is proper when "the movant shows that there is no

20   genuine dispute as to any material fact and the movant is entitled to judgment as a

21   matter of law." FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S.

22   317, 323 (1986).  The moving party has the initial burden of showing summary

23   judgment is proper by either providing evidence that shows there is no genuine

24   issue of material fact, or by stating the absence of a genuine issue of material fact.

25   See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); Celotex Corp., 477

26   

27   ————————————————

28   [1] The parties stipulated to dismiss certain of plaintiff's other claims, including
Unlawful Detention / Arrest under 42 U.S.C. § 1983, municipal liability claims

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

U.S. at 322.  An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue is material only if it "affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).

A moving party meets its initial burden of production by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this burden, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact."  Id. at 1103 (citing Celotex Corp., 477 U.S. at 322).  If no genuine issue of material fact exists, then summary judgment should be granted.  Celotex Corp., 477 U.S. at 323-24.

## V.    STATEMENT OF LAW

### A.    Plaintiff's Second Claim For Excessive Force Is Subject To Summary Judgment.

A claim that a police officer has used excessive force, whether brought under federal law or state law, is analyzed under the framework of the Fourth Amendment.  See Graham v. Connor, 490 U.S. 386, 395-95 (1989); Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1100 (2004).

Under the Fourth Amendment, officers may only use such force as is "objectively reasonable" under the circumstances.  Graham, 490 U.S. at 397.  To determine whether the force used was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

under 42 U.S.C. § 1983, and state law false imprisonment. See Dkt. No. 23.

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1    countervailing governmental interests at stake." Id. at 396.

2         "The 'reasonableness' of a particular use of force must be judged from the

3    perspective of a reasonable officer on the scene, rather than with the 20/20 vision

4    of hindsight." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  Thus, the test

5    is an objective one, viewed from the vantage of a reasonable officer at the scene,

6    and is highly deferential to the police officer's need to protect himself or others.

7    Id. at 396-97.  Whether the force used was objectively reasonable under the Fourth

8    Amendment is a question of law.  Scott v. Harris, 550 U.S. 372, 381 (U.S. 2007).

9         The Supreme Court has indicated that "judges should be cautious about

10   second guessing a police officer's assessment, made on the scene, of the danger

11   presented by a particular situation." Ryburn v. Huff, 565 U.S. 469, 477 (2012).

12   Moreover, the most important element of the three factors is whether the suspect

13   poses an immediate threat to the safety of the officers or others.  Smith v. City of

14   Hemet, 394 F.3d 689, 702 (9th Cir. 2005).

15        "An immediate threat might be indicated by 'a furtive movement, harrowing

16   gesture, or serious verbal threat.'"  Calonge v. City of San Jose, 104 F.4th 39, 46

17   (9th Cir. 2024) (quoting George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013)); see

18   Reynolds v. Cnty. of San Diego, 858 F. Supp. 1064, 1072 (S.D. Cal. 1994), aff'd

19   in part, remanded in part, 84 F.3d 1162 (9th Cir. 1996) ("[A]n officer may

20   reasonably use deadly force when he or she confronts an armed suspect in close

21   proximity whose actions indicate an intent to attack.").  More specifically, "[w]hen

22   an individual points his gun in [an] officer's direction, the Constitution

23   undoubtedly entitles the officer to respond with deadly force." George, 736 F.3d

24   at 838 (citing Long v. City & Cnty. of Honolulu, 511 F.3d 901, 906 (9th Cir.

25   2007)).  This is particularly true when a suspect has ignored or otherwise

26   disobeyed an officer's command to drop the gun and where the suspect has been

27   warned that he would be shot.  See, e.g., Krause v. County of Mohave, 846 F.

28   App'x 569, 570-71 (9th Cir. 2021) ("reject[ing] as unpersuasive Plaintiff's

- 6 -

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1    contention that [the officer defendant's] repeated order to drop the gun provided

2    insufficient warning to [the decedent] or that a more fulsome warning was

3    practicable during the short duration of this event").

4        Here, Officers Davalos and Estrella used objectively reasonable force under

5    the circumstances.  Before the encounter, the officers were on the lookout for

6    plaintiff's vehicle based on a report of an armed individual.  Plaintiff evaded a

7    lawful traffic stop, driving erratically through a stop sign and into opposing lanes

8    of travel.  Plaintiff then abandoned his vehicle and led the officers on a foot

9    pursuit, during which time he retrieved a handgun from his waistband area while

10   refusing to comply with repeated commands to show his hands and to stop

11   reaching.  Plaintiff ran through an abandoned lot towards a field overgrown with

12   thick, tall vegetation.  He was warned that he would be shot, but he continued to

13   run and gave no indication of an intent to surrender or discard the gun.  Rather, as

14   he entered the overgrown field, he threatened the officers by turning towards them

15   with the gun in his hand as if targeting them.  He then unexpectedly went to the

16   ground, concealed by the thick shrubbery, into a position the officers perceived as

17   a concealed firing position from which plaintiff could ambush them.  While on the

18   ground, plaintiff again moved the gun in the direction of the officers by raising his

19   arm up while armed.  In fear for their lives, Officers Davalos and Estrella fired

20   their service weapons.

21       In analyzing the use of force, courts "must view the facts from [the officer's]

22   perspective at the time he decided to fire."  Wilkinson v. Torres, 610 F.3d 546, 551

23   (9th Cir. 2010).  "We take the perspective of an officer on the scene without the

24   benefit of 20/20 hindsight and consider that 'police officers are often forced to

25   make split-second judgments—in circumstances that are tense, uncertain, and

26   rapidly evolving—about the amount of force that is necessary in a particular

27   situation.'"  Gonzalez v. City of Anaheim, 747 F.3d 789, 794 (9th Cir. 2014)

28   (citing Graham, 490 U.S. at 396-97)).

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1    The indisputable evidence confirms that Officers Davalos and Estrella's use

2 of force was reasonable under the totality of the circumstances.  <u>Graham</u>, 490 U.S.

3 386.  Plaintiff held a firearm in his hand while fleeing from officers and then, from

4 a concealed position, made a harrowing gesture that the officers reasonably

5 perceived as a real and imminent threat of death or serious bodily harm.  Plaintiff

6 simply cannot establish a claim for excessive force as a matter of law.

7    **B.    <u>Qualified Immunity Shields Officers Davalos And Estrella</u>.**

8    Officers Davalos and Estrella are entitled to qualified immunity as to the

9 claims against them arising under 42 U.S.C. § 1983, including excessive force.

10    Under the doctrine of qualified immunity, government officials are shielded

11 from liability for civil damages from mistakes unless their conduct violates

12 "clearly established statutory or Constitutional rights of which a reasonable person

13 would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1981); <u>Romero v.</u>

14 <u>Kitsap County</u>, 931 F.2d 624 (9th Cir. 1991).  Qualified immunity gives ample

15 room for mistaken judgments by protecting "all but the plainly incompetent or

16 those who knowingly violate the law."  <u>Hunter v. Bryant</u>, 502 U.S. 224, 229

17 (1991).  "The protection of qualified immunity applies regardless of whether the

18 government official's error is a mistake of law, a mistake of fact, or a mistake

19 based on mixed questions of law and fact."  <u>Pearson v. Callahan</u>, 555 U.S. 223,

20 231 (2009) (citations omitted).

21    Once the official pleads qualified immunity, the burden is on the plaintiff to

22 prove that a constitutional right was violated and that the right was clearly

23 established at the time of the alleged misconduct.  <u>See</u> <u>Mattos v. Agarano</u>, 661

24 F.3d 433, 440 (9th Cir. 2011).  Even if a plaintiff can establish a constitutional

25 violation, the Court must then determine: (1) whether the Constitutional right at

26 issue was clearly established at the time of the alleged violation (the "clearly

27 established requirement"); and (2) whether it would be clear to a reasonable

28 official in the defendant's *specific position* that his conduct was *unlawful* (the

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

"objectively reasonable requirement"). <u>Pearson</u>, 555 U.S. at 230.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). Such clarity can only be established by "existing precedent" that has "placed the statutory or constitutional question beyond debate." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004).

As such, "officials can have reasonable, but mistaken, beliefs . . . and in those situations courts will not hold that they have violated the Constitution." <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001). Particularly, in tense and rapidly evolving situations, officials are afforded "broad discretion" and "immunity even when [they] make mistakes." <u>Jeffers v. Gomez</u>, 267 F.3d 895, 909 (9th Cir. 2001).

The Ninth Circuit has defined the type of existing precedent that is necessary to create clearly established law:

> In analyzing this question, we acknowledge the Supreme Court's recent frustration with failures to heed its holdings. The Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.' . . . Our court lacks a monopoly over such immunity missteps. When recently reversing the Tenth Circuit, the Supreme Court wrote: 'In the last five years, [the Supreme Court] has issued a number of opinions reversing federal courts in qualified immunity cases.'. . . 'The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is

1    erroneously permitted to go to trial.'

2    We hear the Supreme Court loud and clear. Before a court can impose

3    liability on [the defendant officer], we must identify precedent . . . that

4    put [the officer] on clear notice that using deadly force in these

5    particular circumstances would be excessive. General excessive force

6    principles, as set forth in Graham and Garner, ... do not by themselves

7    create clearly established law outside an obvious case. Instead, we

8    must identify a case where an officer acting under similar

9    circumstances as [the defendant officer here] was held to have

10    violated the Fourth Amendment. We cannot locate any such

11    precedent.

12    S.B. v. Cnty. of San Diego, 864 F.3d 1010, 1015-16 (9th Cir. 2017) (citing

13    City of S.F. v. Sheehan, 135 S. Ct. 1765, 1775-76 (2015) and White v. Pauly, 137

14    S. Ct. 548, 551 (2017)). "It is the plaintiff who bears the burden of showing that

15    the rights allegedly violated were clearly established." Shafer v. Cnty. of Santa

16    Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017).

17      As of February 2023, there was no clearly established law precluding the use

18    of deadly force against a fleeing, unrestrained, and armed suspect who ignored

19    repeated commands to show his hands, who was warned that he would be shot,

20    who threatened officers by turning in their direction with the gun in his hand, and

21    where the suspect had given no indication of any intent to surrender or toss the

22    gun, but instead dove to the ground into a concealed shooting position, and then

23    made a "harrowing gesture" of raising the gun up towards the officers' direction.

24      To the contrary, Ninth Circuit case law has indicated that officers are

25    entitled to use deadly force in situations similar to the one that Officers Davalos

26    and Estrella were confronting. In particular, Ninth Circuit law confirmed that

27    "where a suspect threatens an officer with a weapon such as a gun or a knife, the

28    officer is justified in using deadly force." City of Hemet, 394 F.3d at 704; accord

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1   Billington v. Smith, 292 F.3d 1177, 1185 (9th Cir. 2002) (holding that deadly force

2   was justified where a suspect violently resisted arrest, physically attacked the

3   officer, and grabbed the officer's gun); Reynolds v. County of San Diego, 84 F.3d

4   1162, 1168 (9th Cir. 1996) (holding that deadly force was reasonable where a

5   suspect, who had been behaving erratically, swung a knife at an officer).

6       Moreover, Ninth Circuit law "is clear that when a suspect reaches for a gun

7   or aims a weapon at officers, responding with deadly force does not violate the

8   Constitution."  Sabbe v. Washington Cnty. Bd. of Commissioners, 84 F.4th 807,

9   828 (9th Cir. 2023); see also Scott v. Henrich, 39 F.3d 912, 914–15 (9th Cir. 1994)

10  (suggesting that the use of deadly force is objectively reasonable where a suspect

11  points a gun at officers); Est. of Chivrell v. City of Arcata, 2025 WL 2210020, at

12  *15 (N.D. Cal. Aug. 4, 2025) (using deadly force was objectively reasonable when

13  officer was "confronted by the immediate threat of suspect's raised gun"); cf.

14  Easley v. City of Riverside, 890 F.3d 851, 857 (9th Cir. 2018), rev'd on reh'g en

15  banc, 765 F. App'x 282 (9th Cir. 2019) (qualified immunity found even though the

16  defendant officer shot Easley "within two to four seconds of the [gun] leaving

17  Easley's hand.").

18      Based on all of plaintiff's conduct leading up to the shooting, the officers

19  reasonably perceived that plaintiff posed an immediate threat.  While it is true that

20  the during the course of the shooting, the gun left plaintiff's hand and was later

21  found in the adjoining property, there can be no genuine dispute as to whether the

22  officers ever actually perceived that event – they did not see him toss the gun and

23  would not have fired if they had seen that occur.

24      "Officers can have reasonable, but mistaken, beliefs as to the facts

25  establishing the existence of an immediate threat, and in those situations courts

26  will not hold that they have violated the Constitution."  E.g., Est. of Strickland v.

27  Nevada County, 69 F.4th 614, 621 (9th Cir. 2023) (use of deadly force was

28  objectively reasonable where suspect pointed replica gun at officers).  "Qualified

- 11 -

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." <u>Ashcroft</u>, 563 U.S. at 743.  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" <u>Pearson</u>, 555 U.S. at 231.  As long as the mistake is a reasonable one, qualified immunity applies.  <u>Torres v. City of Madera</u>, 648 F.3d 1119, 1127 (9th Cir. 2011).

For example, in <u>Kisela v. Hughes</u>, the Supreme Court held officers were entitled to qualified immunity based in part on their subjective but mistaken belief that a suspect was threatening another person.  584 U.S. 100, 105-07 (2018).  In <u>Blanford v. Sacramento Cnty.</u>, the Ninth Circuit held the officers were entitled to qualified immunity based on their reasonable but mistaken belief that a man holding a sword was ignoring their shouted commands to stop and drop the weapon; in reality, he was wearing headphones and could not hear them, so he only "appeared" to be flaunting the officers' commands.  406 F.3d 1110, 1118-19 (9th Cir. 2005).  In <u>Cruz v. City of Anaheim</u>, a case where the suspect had behaved erratically but was ultimately found to be unarmed, the Ninth Circuit wrote "it would be unquestionably reasonable for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, or even if he reaches there for some other reason." 765 F.3d 1076, 1078 (9th Cir. 2014).

Here, given the fast-evolving circumstances, plaintiff's defiant and threatening behavior up to the time of the shooting, as well as plaintiff taking a shooting position while concealed within thick, overgrown vegetation, Officers Davalos and Estrella reasonably, even if mistakenly, believed that plaintiff remained armed and posed an imminent threat throughout the course of the shooting.

"The law does not require an officer who immediately faces physical harm

1  to wait before defending himself until the indication of impending harm ripens into

2  the onslaught of actual physical injury." <u>Gonzalez</u>, 747 F.3d at 800 (Trott, J.,

3  concurring in part and dissenting in part).  As the Ninth Circuit has warned, the

4  court is "generally loath to second-guess law enforcement officers' actions in a

5  dangerous situation by analyzing each act without looking at the entire event and

6  considering the officers' mindset amid the uncertainty and chaos. We should not

7  scrutinize an officer's every minor move in a frantic and chaotic situation as if we

8  were examining the Zapruder film in slow-motion." <u>See</u> <u>Hyde v. City of Willcox</u>,

9  23 F.4th 863, 872–73 (9th Cir. 2022) (denying qualified immunity to officers that

10  deployed intermediate force to a "handcuffed, shackled, and exhausted" plaintiff

11  who "could no longer resist and did not pose a threat").

12      In all, reasonable officers could have concluded, under the law clearly

13  established at the time, that the use deadly force against plaintiff was reasonable

14  under the circumstances.

15      **C.    Plaintiff's Wrongful Death Claims (Battery & Negligence) Fail.**

16      To prevail on a wrongful death state law claim against a peace officer,

17  whether premised on a battery or negligence theory, a plaintiff must prove the

18  officer used unreasonable force.  <u>Brown v. Ransweiler</u>, 171 Cal.App.4th 516, 526-

19  28 (2009).

20      To prevail on a state law battery claim against a police officer, a plaintiff

21  must establish that: (1) the officer intentionally touched plaintiff or caused plaintiff

22  to be touched; (2) the officer used unreasonable force on the plaintiff; (3) plaintiff

23  did not consent to the use of that force; (4) plaintiff was harmed; and (5) the

24  officer's use of unreasonable force was a substantial factor in causing plaintiff's

25  harm.  Cal. Jury Inst., No. 1305A.

26      "[T]he decision by a peace officer to use force shall be evaluated from the

27  perspective of a reasonable officer in the same situation, based on the totality of

28  the circumstances known to or perceived by the officer at the time, rather than with

- 13 -

**MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT**

1    the benefit of hindsight, and that the totality of the circumstances shall account for

2    occasions when officers may be forced to make quick judgments about using

3    force." Cal. Penal Code § 835a(a)(4); <u>Brown</u>, 171 Cal.App.4th at 526.

4         The California Legislature has explicitly stated that an officer "is justified in

5    using deadly force upon another person . . . when the officer reasonably believes,

6    based on the totality of the circumstances, that such force is necessary . . . [t]o

7    defend against an imminent threat of death or serious bodily injury to the officer or

8    to another person." Cal. Penal Code § 835a(c)(1)(A)

9         "A threat of death or serious bodily injury is 'imminent' when, based on the

10   totality of the circumstances, a reasonable officer in the same situation would

11   believe that a person has the present ability, opportunity, and apparent intent to

12   immediately cause death or serious bodily injury to the peace officer or another

13   person. An imminent harm is not merely a fear of future harm, no matter how great

14   the fear and no matter how great the likelihood of the harm, but is one that, from

15   appearances, must be instantly confronted and addressed." Cal. Penal Code §

16   835a(e)(2).

17        Here, for the reasons discussed above, plaintiff posed an imminent threat of

18   harm and the officers' use of force was objectively reasonable. As such, the

19   officer defendants are justified under state statute and they are immune from civil

20   liability. <u>Brown</u>, 171 Cal.App.4th at 533. Thus, plaintiff cannot prevail on his

21   battery claim. <u>See</u> <u>Kocol v. United States</u>, 2015 WL 12670408, at *6 (C.D. Cal.

22   2015) ("A prima facie case [of assault and] battery is not established unless the

23   plaintiff proves . . . an officer used unreasonable force").

24   **D.    Plaintiff's State Tort Claims Are Barred By California**
25        **Government Code Immunity**.

26        Government Code section 820.2, which immunizes public employees for

27   injuries that result from their actions or failures to act, where such decisions were

28   "the result of the exercise of the discretion vested in [them], whether or not such

- 14 -

discretion be abused." CAL. GOV'T CODE § 820.2. This includes decisions to arrest and detain.

In Conway v. County of Tuolumne, 231 Cal.App.4th 1005 (2014), Conway sued the county and its officers for various torts alleging liability against the officers for using tear gas when they arrested him. Conway, 231 Cal.App.4th at 1008. The trial court granted summary judgment in favor of defendants finding there was no dispute of material fact that the officers' decision to use the tear gas was an exercise of their discretion, and thus, immunized them from liability under section 820.2. Id. at 1012. The appellate court upheld summary judgment, holding that decisions made by officers in response to "changing circumstances," rather than in blind obedience to order, were discretionary. Id. at 1019. Thus, section 820.2 shielded them from liability for the purported injuries suffered by Conway because of those decisions. Id. at 1021.

The court reasoned that section 820.2 "does not contain a reasonableness requirement" and that liability for "split-second decisions" made pursuant to safety concerns could conceivably hamstring officers with unpleasant results. Id. at 1020-21. Like the officers' decisions in Conway, the officers here made decisions regarding how to safely detain plaintiff and the amount of force necessary to protect themselves and others from imminent great bodily injury or death. Such decisions fall squarely within their discretion.

Therefore, plaintiff's state tort claims fail because the officer defendants are entitled to immunity under Section 820.2.

**E.    Plaintiff's Bane Act Claim Fails.**

Civil Code section 52.1, known as the Bane Act, "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). Two seminal cases from the California Court of Appeal and the Ninth Circuit, Cornell v. City and County of

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1    <u>San Francisco</u>, 17 Cal.App.5th 766 (2017) and <u>Reese v. Cty. of Sacramento</u>, 888

2    F.3d 1030, 1040 (9th Cir. 2018), make clear that a Bane Act claim is not the state

3    tort twin of an excessive force claim under section 1983.

4          In <u>Cornell v. City and County of San Francisco</u>, 17 Cal. App. 5th 766

5    (2017), court explained that "[p]roperly read, the statutory phrase 'threat,

6    intimidation or coercion' serves as an aggravator justifying the conclusion that the

7    underlying violation of rights is sufficiently egregious to warrant enhanced

8    statutory remedies, beyond tort relief." <u>Id.</u> at 800.  Accordingly, the court held that

9    "the egregiousness required by section 52.1 is tested by whether the circumstances

10   indicate the arresting officer had a specific intent to violate the arrestee's rights."

11   <u>Id.</u> at 801.  In so holding, <u>Cornell</u> adopted the specific intent standard established

12   in <u>Screws v. United States</u>, 325 U.S. 91 (1945), for assessing criminal violations of

13   federal civil rights.  <u>Cornell</u>, 17 Cal. App. 5th at 802.  In light of the California

14   Court of Appeal's decision in <u>Cornell</u>, the Ninth Circuit has adopted the specific

15   intent standard for Bane Act claims.  <u>Reese v. Cnty. of Sacramento</u>, 888 F.3d

16   1030, 1043 (9th Cir. 2018).

17         Here, there is no evidence to establish that Officers Davalos and Estrella

18   interfered with plaintiff's legal rights by the use of threats, intimidation or

19   coercion.  In addition, plaintiff cannot prove coercion *independent* from that of

20   which is inherent in the Fourth Amendment claim.  Also, there is no evidence

21   Officer Davalos or Estrella had the *specific intent* to violate plaintiff's rights when

22   they determined to deploy deadly force.  Rather, the uncontroverted evidence

23   shows that the officers merely acted pursuant to their duties as peace officers,

24   reacting to a series of rapidly evolving events set into motion by plaintiff's own

25   criminal and threatening conduct.  Accordingly, Plaintiff's Bane Act claim cannot

26   survive summary judgment.

27       **F.**   <u>**The Prayer For Punitive Damages Should Be Stricken**</u>.

28         Plaintiff seek punitive damages claiming that the conduct of Officers

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1    Davalos and Estrella was "willful, wanton, malicious, and done with an evil

2    motive and intent and a reckless disregard for the rights and safety of URENA."

3    <u>E.g.</u>, Compl. at ¶ 28.  However, the uncontroverted evidence does not support a

4    finding that the conduct of Officers Davalos and Estrella warrants punitive

5    damages.  In this regard, the Ninth Circuit Model Jury Instructions explain:

6                You may award punitive damages only if you find that the

7                defendant's conduct was malicious, oppressive or in reckless

8                disregard of the plaintiff's rights.  Conduct is malicious if it is

9                accompanied by ill will, or spite, or if it is for the purpose of

10               injuring another.  Conduct is in reckless disregard of the

11               plaintiff's rights if, under the circumstances, it reflects complete

12               indifference to the plaintiff's safety or rights, or the defendant

13               acts in the face of a perceived risk that its actions will violate

14               the plaintiff's rights under federal law.  An act or omission is

15               oppressive if the person who [performs] [fails to perform] it

16               injures or damages or otherwise violates the rights of the

17               plaintiff with unnecessary harshness or severity, such as by the

18               misuse or abuse of authority or power or by the taking

19               advantage of some weakness or disability or misfortune of the

20               plaintiff.

21   9th Cir. Model Jury Instr. 5.5 (2019).

22          Courts have explained that punitive damages are available in a civil rights

23   action against individual defendants only "when the defendant's conduct is shown

24   to be motivated by evil motive or intent, or when it involves reckless or callous

25   indifference to the federally protected rights of others."  <u>Smith v. Wade</u>, 461 U.S.

26   30, 56 (1983).  As explained by the United States Supreme Court, "[T]he most

27   important indicium of the reasonableness of a punitive damages award is the

28   degree of reprehensibility of the defendant's conduct."  <u>State Farm Mut. Auto. Ins.</u>

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

Co. v. Campbell, 538 U.S. 408, 419 (2003).

Here, there is no evidence that either Officer Davalos or Estrella acted with malice, oppression or in reckless disregard of plaintiff's rights. Rather, the evidence demonstrates that he acted reasonably and within the confines of the Constitution. The officers acted in self-defense. As detailed above, Officers Davalos and Estrella acted reasonably based on their observations of plaintiff and considering the imminent risk posed by plaintiff's resistive and threatening actions.

Moreover, plaintiff can offer no evidence that Officers Davalos and Estrella maliciously retaliated against plaintiff or acted deliberately to deny him his rights. There is nothing indicating that Officers Davalos and Estrella maliciously targeted or discriminated against decedent based on his race and/or ethnicity. At no point during the encounter do Officer Davalos or Officer Estrella say anything offensive or derogatory to plaintiff that would imply malice or discriminatory intent. Nor is there any evidence that the amount of force deployed was in retaliation to plaintiff's flight from officers. Accordingly, based on all of these facts, plaintiff is not entitled to punitive damages against Officer Davalos or Officer Estrella.

## VI.    **CONCLUSION**

Based on the foregoing, defendants respectfully request that the Court grant the instant motion in its entirety and enter judgment in their favor.

DATED:  March 9, 2026            CARPENTER, ROTHANS & DUMONT LLP

                                        */s/  Scott J. Carpenter*

                         By:    _____
                                        Steven J. Rothans
                                        Scott J. Carpenter
                                        Attorneys for Defendants

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT

1

## <u>**CERTIFICATE OF COMPLIANCE**</u>

2

3      The undersigned, counsel of record for Defendants, City of San Bernardino

4      and Officers Davalos and Estrella, certifies that this brief contains 5,823 words,

5      which complies with the word limit pursuant to Local Rule 11-6.1

6      DATED:  March 9, 2026          CARPENTER, ROTHANS & DUMONT LLP

7                                         */s/  Scott J. Carpenter*

8                              By: _____

9                                   Steven J. Rothans
                                    Scott J. Carpenter
10                                   Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -

MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT