**STEVEN J. ROTHANS-State Bar No. 106579**
**SCOTT CARPENTER-State Bar No. 253339**
**CARPENTER, ROTHANS & DUMONT LLP**
500 South Grand Avenue, 19th Floor
Los Angeles, CA 90071
(213) 228-0400 / (213) 228-0401 (Fax)
srothans@crdlaw.com / scarpenter@crdlaw.com

Attorneys for Defendants, City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella, public employees

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO URENA, individually, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF SAN BERNARDINO, JONATHAN DAVALOS, ANDRES ESTRELLA and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 5:24-cv-00341-JGB-ACCV <br><br> **DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS** <br><br> [Filed concurrently with the Memorandum of Points and Authorities] <br><br> Date: April 20, 2026 <br> Time: 9:00 a.m. <br> Courtroom: 1 - Riverside |

After consideration of the papers in support of and in opposition to the Motion for Summary Judgment filed on behalf of Defendants City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella, public employees, the Court determines that the following facts have been established as uncontroverted:

///
///

- 1 -
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. On February 10, 2023, around 10:15 a.m., San Bernardino Police Department ("SPBD") Officers Davalos and Estrella were on duty as partners assigned as district resource officers in a marked police vehicle in the area of 14th Street and K Street in the City of San Bernardino. | Davalos Decl. ¶ 4, Ex. 1; Estrella Decl. ¶ 4, Ex. 2; Davalos Depo. at 22:15-23:10, Ex. 7. |
| 2. Prior to that day, in their capacity as district resource officers, Officers Davalos and Estrella had received a tip about a Hispanic male in a gray or silver Nissa Versa who was possibly armed with a gun around the area near 14th Street and K Street. | Davalos Decl. ¶ 4 Ex. 1; Estrella Decl. ¶ 4, Ex. 2; Davalos Depo. at 23:11-24:21, Ex. 7; Estrella Depo. at 9:25-10:17, Ex. 8. |
| 3. The officers knew that area, which was known gang territory. | Davalos Decl. ¶ 5, Ex. 1; Estrella Decl. ¶ 5, Ex. 2. |
| 4. Meanwhile, on February 10, 2023, at some time around 10:15 a.m., plaintiff Renato Urena was driving a silver Nissan Versa near K Street and 14 Street after having just left a friend's house where he had used marijuana. | Urena Depo. at 37:6-39:4, 40:3-15, 43:14-44:8, Ex. 3. |

- 2 -
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 5. Plaintiff, who was driving without a valid driver's license, was armed with a .40 caliber handgun that was in the front pouch of his hooded sweatshirt. | Urena Depo. at 22:12-14, 46:2-25, Ex. 3. |
| 6. Around that time, Officers Davalos and Estrella observed plaintiff's Nissa Versa turn westbound onto 14th Street from K Street. | Davalos Decl. ¶ 6, Ex. 1; Estrella Decl. ¶ 6, Ex. 2; Davalos Depo. at 26:1-19, Ex. 7. |
| 7. The officers noticed that the Nissan had a cracked windshield – a possible violation of Vehicle Code section 26710. | Davalos Decl. ¶ 6, Ex. 1; Estrella Decl. ¶ 6, Ex. 2 |
| 8. As the officers followed the Nissan westbound on 14th Street, they also observed the Nissan fail to completely stop at an intersection stop sign - a violation of Vehicle Code section 22450. | Davalos Decl. ¶ 6, Ex. 1; Estrella Decl. ¶ 6, Ex. 2; Davalos Depo. at 26:20-27:23, Ex. 7; Estrella Depo. at 12:13-24, Ex. 8. |
| 9. Due to the traffic violation, the officers determined to initiate a traffic stop of the Nissan, and as the Nissan approached the intersection of 14th Street and Mount Vernon Avenue the officers activated their vehicle's overhead emergency lights and siren. | Davalos Decl. ¶ 7, Ex. 1; Estrella Decl. ¶ 7, Ex. 2; Urena Depo. at 43:14-44:8, 45:8-15, Ex. 3. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 10. Officer Estrella, observing plaintiff reaching around inside the Nissan, says to Officer Davalos, "He's reaching." | Davalos Decl. ¶ 8, Ex. 1; Estrella Decl. ¶ 8, Ex. 2; Davalos BWC at 10:15:42, Ex. 4; Estrella BWC at 10:15:42, Ex. 5; Estrella Depo. at 19:8-20:1, Ex. 8. |
| 11. The Nissan did not pull over, but instead ran the stop sign at 14th Street and Mount Vernon Avenue while turning northbound onto Mount Vernon. | Davalos Decl. ¶ 8, Ex. 1; Estrella Decl. ¶ 8, Ex. 2; Urena Depo. at 45:8-46:3, Ex. 3; Davalos Depo. at 27:24-28:12, Ex. 7. |
| 12. After running that stop sign, plaintiff drove the Nissan in a northwest direction, crossing into the opposing southbound traffic lanes until he abandoned the Nissan along the westside curb in front of a driveway leading to a vacant lot between 14th Street and Magnolia Avenue. | Davalos Decl. ¶ 8, Ex. 1; Estrella Decl. ¶ 8, Ex. 2. |
| 13. Plaintiff then proceeded to flee on foot westbound through the vacant lot while grabbing at his waistband with both hands. | Davalos Decl. ¶ 8-9, Ex. 1; Estrella Decl. ¶ 8-9, Ex. 2; Davalos BWC at 10:15:54-57, Ex. 4; Estrella BWC at 10:15:53-57, Ex. 5; Davalos Depo. at 29:21-30:10, Ex. 7; |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| | Estrella Depo. at 14:24-15:12, 19:8-20:1, Ex. 8. |
| 14. Officers Davalos and Estrella exited their police vehicle and pursued plaintiff on foot. | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:15:54-57, Ex. 4; Estrella BWC at 10:15:53-57, Ex. 5; Davalos Depo. at 29:21-30:10, Ex. 7. |
| 15. Officer Estrella yelled to plaintiff, "Hey, let me see your hands!" | Davalos BWC at 10:15:53, Ex. 4; Estrella BWC at 10:15:53, Ex. 5. |
| 16. Plaintiff continued running westbound into the vacant lot while grabbing near his waistband with both hands. | Davalos BWC at 10:15:53-58, Ex. 4; Estrella BWC at 10:15:53-58, Ex. 5; Davalos Depo. at 29:21-31:11, Ex. 7. |
| 17. Officer Davalos radios to dispatch that the officers are in a foot pursuit while Officer Estrella yells at plaintiff, "Let me see your fucking hands!" | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:15:53-58, Ex. 4; Estrella BWC at 10:15:53-58, Ex. 5; Estrella Depo. at 19:4-7, Ex. 8. |
| 18. Around this time, plaintiff's right elbow shifted outward and slightly upward as his left arm shifted inward toward the front of | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos Depo. at 33:17-35:12, |

- 5 -

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| his body the officers observed plaintiff grab a firearm from his waistband area, while continuing to run westbound into the vacant lot towards a residential properties. | Ex. 7; Estrella Depo. at 16:14-20, 27:18-28:12, Ex. 8. |
| 19. After seeing the firearm, the officers slowed and unholstered their firearms while shouting additional commands for plaintiff to show his hands and to stop reaching. | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:15:58-10:16:03, Ex. 4; Estrella BWC at 10:15:58-10:16:03, Ex. 5; Davalos Depo. at 38:20-39:15, 43:8-44:2, Ex. 7; Estrella Depo. at 19:4-7, Ex. 8. |
| 20. Plaintiff continued running through the vacant lot with his hands near his waistband area and then he turned to southwest towards an area where the corner of a residence's chain-link fence met a vacant field with tall, overgrown vegetation. | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:16:03-07, Ex. 4; Estrella BWC at 10:16:03-7, Ex. 5. |
| 21. The officers continue to give commands to plaintiff to stop reaching and Officer Davalos tells Officer Estrella, "He's reaching." | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:16:05, Ex. 4; Estrella BWC at 10:16:05, Ex. 5; Davalos Depo. at 38:20- |

- 6 -

SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| | 39:15, Ex. 7. |
| 22. Officer Davalos yells to plaintiff, "Stop reaching. You're gonna get fucking shot!", while Officer Estrella yells, "Stop reaching!" | Davalos BWC at 10:16:06-07, Ex. 4; Estrella BWC at 10:16:06-07, Ex. 5; Davalos Depo. at 38:20-39:15, Ex. 7. |
| 23. As plaintiff ran from the officers, he did not say anything to them. | Davalos BWC at 10:16:06-07, Ex. 4; Estrella BWC at 10:16:06-07; Urena Depo. at 52:11-13, Ex. 3. |
| 24. As plaintiff reaches the overgrown field, he turned counterclockwise towards the officers with a dark-colored firearm in his right hand as if trying to target the officers. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos BWC at 10:16:09, Ex. 4; Estrella BWC at 10:16:09, Ex. 5; Still Photos at 1-3, Ex. 12; Davalos BWC Stabilized at 0:14, Ex. 14; Davalos Depo. at 44:23-47:14, Ex. 7; Estrella Depo. at 32:5-10, 32:18-33:7, Ex. 8. |
| 25. Plaintiff then unexpectedly went down to the ground into the thick vegetation, which the officers feared was an attempt to achieve a concealed shooting position from which to ambush the officers. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos BWC at 10:16:09-10, Ex. 4; Estrella BWC at 10:16:09-10, Ex. 5; Davalos |

- 7 -
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
|  | Depo. at 50:18-51:5, 57:11-58:13, 60:3-61:13, Ex. 7; Estrella Depo. at 33:21-34:1, Ex. 8. |
| 26. As the officers approach the overgrown field, Officer Davalos yelled, "He has a gun, he has a gun!" and Officer Estrella yells, "He has one!" | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos BWC at 10:16:10-11, Ex. 4; Estrella BWC at 10:16:10-11, Ex. 5; Davalos Depo. at 47:23-48:3, Ex. 7. |
| 27. While parts of plaintiff's body were obscured by the overgrown vegetation, the officers observed plaintiff laying on the ground with his feet closer to the officers, about five to ten yards away, while facing the officers with his arms outstretched towards the direction of the officers. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Depo. at 52:6-21, 54:11-56:8, 62:11-64:3, 80:23-81:19, Ex. 7; Estrella Depo. at 41:10-42:2, 65:11-19, Ex. 8. |
| 28. Plaintiff, who was still armed with the handgun, then started to move his right arm in the officers' direction. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Slow BWC at 0:12-0:18, Ex. 13; Davalos Depo. at 80:23-81:19, Ex. 7. |
| 29. In fear of their lives, the officers fired at plaintiff. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 30. Just after the first shots were fired, and as plaintiff's right arm is raising up, the gun leaves plaintiff's right hand and travels upward. | Davalos Slow BWC at 0:13-0:19, Ex. 13; Still Photos at 4-6, Ex. 12. |
| 31. At no point during the course of the shooting did either officer see the gun leave plaintiff's hand. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Depo. at 65:3-8, 75:2-76:5, Ex. 7; Estrella Depo. at 46:10-15, Ex. 8. |
| 32. Due to seeing plaintiff continue to make furtive movements during the course of the shooting, and because the overgrown vegetation obscured parts of plaintiff's body, including his hands, and having not seen the gun leave his hands, the officers fired 18 shots each while reassessing during the course of the shooting. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Depo. at 63:24-64:3, 65:1-25, 69:2-5, 84:22-85:4, Ex. 7; Estrella Depo. at 43:16-44:7, Ex. 8. |
| 33. Plaintiff did not say anything to the officers during the course of the shooting. | Urena Depo. at 62:18-63:2, Ex. 3. |
| 34. Officer Davalos radioed to dispatch, "Shots fired." | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:16:30, Ex. 4; Estrella BWC at 10:16:30, Ex. 5. |

- 9 -

SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 35. Officer Davalos ordered plaintiff to stop reaching and put his hands behind his head, while Officer Estrella radioed to dispatch their location. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:16:36-39, Ex. 4; Estrella BWC at 10:16:38-49, Ex. 5; Davalos Depo. at 69:8-70:2, 81:25-82:9, Ex. 7. |
| 36. The officers then approached plaintiff's location, at which point Officer Estrella handcuffed plaintiff. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:16:56-10:17:30, Ex. 4; Estrella BWC at 10:16:38-49, Ex. 5. |
| 37. As soon as plaintiff was in secured in handcuffs, Officer Davalos radioed to dispatch that the suspect was in custody and requested dispatch send medical assistance. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:17:35, Ex. 4; Estrella BWC at 10:17:35, Ex. 5. |
| 38. Officer Estella conducted a cursory search of plaintiff, finding needles and drug paraphernalia. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:18:38-45, Ex. 4; Estrella BWC at 10:18:38-45, Ex. 5 |
| 39. Plaintiff told the officers that he was shot in the stomach. | Davalos BWC at 10:18:34, 10:18:54, Ex. 4; Estrella BWC |

- 10 -

SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
|  | at 10:18:34, 10:18:54, Ex. 5; Davalos Depo. at 70:24-71:3, Ex. 7. |
| 40. Officer Estrella searched through the overgrown vegetation area around plaintiff looking for, and expecting to find, plaintiff's firearm but did not find it. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Estrella BWC at 10:18:58-10:21:20, Ex. 5; Estrella Depo. at 48:5-13, Ex. 8. |
| 41. The officers later learned that the 0.40 caliber handgun was recovered in the backyard of the residence next to which plaintiff was located when laying the bushes (1335 W. Magnolia Ave), and that DNA on the handgun matched plaintiff's. | Davalos Decl. ¶ 13, Ex. 1; Estrella Decl. ¶ 13, Ex. 2; DNA Lab Results, Ex. 6; Davalos Depo. at 88:7-9, Ex. 7; Estrella Depo. at 39:7-22, Ex. 8. |
| 42. The officers would not have fired at plaintiff if they had seen plaintiff toss the gun away. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos Depo. at 75:2-76:5, Ex. 7; Estrella Depo. at 43:21-44:7, 46:10-15, Ex. 8 |
| 43. A search of plaintiff's vehicle found approximately 278 ammo cartridges of various caliber were located in a bag in the trunk of the vehicle along with a firearm magazine. | Davalos Decl. ¶ 13, Ex. 1; Estrella Decl. ¶ 13, Ex. 2. |

| UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 44. Paramedics ultimately arrived at the scene and took plaintiff to the hospital. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2. |
| 45. Criminal proceedings were brought against plaintiff on charges of, among others, Penal Code section 245 (assault with a deadly weapon), Penal Code section 29800 (felon in possession of a firearm), and Penal Code section 2800.1 (evading police in a motor vehicle). | Criminal Docket, Ex. 9; Felony Complaint, Ex. 10. |
| 46. On or around June 18, 2024, plaintiff entered into a plea agreement where he plead guilty to felon in possession of firearm and evading police. | Plea Agreement, Ex. 15. |

## CONCLUSIONS OF LAW

1. Plaintiff's Second Claim for Excessive Force under 42 U.S.C. § 1983 fails where the uncontroverted material facts clearly establish that the force used by Officers Davalos and Estrella against the plaintiff was objectively reasonable.

2. The officer defendants are entitled to qualified immunity for plaintiff's claims under 42 U.S.C. § 1983.

3. Plaintiff's Eighth Claim for Battery Conspiracy" claim under 42 U.S.C. § 1983 fails where the uncontroverted material facts clearly establish that the force used by Officers Davalos and Estrella against the plaintiff was objectively reasonable, and the officers are immune under the Government Code.

- 12 -
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

4. Plaintiff's Ninth Claim for Negligence fails where the uncontroverted material facts clearly establish that the force used by Officers Davalos and Estrella against the plaintiff was objectively reasonable, and the officers are immune under the Government Code.

5. Plaintiff's Tenth Claim for Bane Act violation fails where the uncontroverted material facts clearly establish that the force used by Officers Davalos and Estrella against the plaintiff was objectively reasonable, the officers are immune under the Government Code, and the undisputed evidence shows that the officers did not have a specific intent to violate plaintiff's rights.

6. The officer defendants are entitled to judgment in their favor, where the uncontroverted evidence does not support a finding that the officer defendants' conduct was malicious, oppressive or in reckless disregard of the plaintiff's rights to support the imposition of punitive damages.

DATED: _____
Honorable Jesus G. Bernal
United States District Judge