# EXHIBIT "2"

STEVEN J. ROTHANS-STATE BAR NO. 106579
SCOTT CARPENTER-STATE BAR NO. 253339
CARPENTER, ROTHANS & DUMONT LLP
500 South Grand Avenue, 19th Floor
Los Angeles, CA 90071
(213) 228-0400 / (213) 228-0401 (Fax)
srothans@crdlaw.com / scarpenter@crdlaw.com

Attorneys for Defendants, City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| RENATO URENA, individually, | Case No.: 5:24-cv-00341-JGB-SHK |
|---|---|
| Plaintiff, | **DECLARATION OF OFFICER ANDRES ESTRELLA** |
| vs. | |
| CITY OF SAN BERNARDINO, JONATHAN DAVALOS, ANDRES ESTRELLA and DOES 1-10, inclusive, | |
| Defendants. | |

I, Officer Andres Estrella, declare that:

1. I am a sworn police officer employed by the City of San Bernardino Police Department ("SBPD"), in which capacity I have served for approximately six years.

2. This declaration is made in connection with the defendants' Motion for Summary Judgment or, in the alternative, Partial Summary Judgment in the above-entitled matter.

3. The following facts are stated from my personal knowledge, except those facts stated on information and belief which I believe to be true, and if called as a witness I could and would so competently testify thereto under oath.

1
DECLARATION OF OFFICER ANDRES ESTRELLA

4. On February 10, 2023, I was on duty working with my partner, Officer Jonathan Davalos, as a district resource officer for SBPD. We had previously received a tip from the community about a Hispanic male in a silver Nissa Versa who was possibly armed with a gun around the area of 14th Street near K Street.

5. On the morning of February 10, 2023, Officer Davalos and I were in a marked SBPD vehicle driving in that area of 14th Street looking for the suspect vehicle. I was driving our police vehicle, and Officer Davalos was seated in the front passenger seat. Officer Davalos and I were familiar with that area of the City, which was a known gang neighborhood with houses associated with criminal street gangs.

6. Around 10:15 a.m. that morning, Officer Davalos and I observed a Nissan Versa matching the description of the suspect vehicle on K Street turn westbound onto 14th Street. We saw that the Nissan had a cracked windshield, which was a possible violation of Vehicle Code section 26710. I did not initiate a traffic stop at that time due to the proximity of potential gang members in the vicinity of that intersection. As the Nissa drove west on 14th Street, it failed to stop at a stop sign at an intersection – a violation of Vehicle Code section 22450.

7. Officer Davalos and I decided to initiated a traffic stop but waited until nearing the intersection of 14th Street and Mount Vernon to activate our emergency lights because the area was a known gang area and because an elementary school was nearby.

8. After we initiated the traffic stop, the Nissan did not pull over but continued driving westbound on 14th Street and we activated our vehicle's siren. I observed a single male driving the Nissan and could see that the suspect driver was reaching around inside the vehicle, which raised concern that the suspect (who had previously been reported as armed) was attempting to retrieve or conceal a firearm and which I mentioned to Officer Davalos. The Nissan turned right (north) onto

2

DECLARATION OF OFFICER ANDRES ESTRELLA

Mount Vernon while running the stop sign at the intersection of 14th Street and Mount Vernon.  The Nissan drove diagonally (northwest), crossing the southbound traffic lanes, and approached the west curb of Mount Vernon in front of a driveway leading to an abandoned lot between 14th Street and Magnolia, at which time the suspect driver of the Nissan (later identified as plaintiff Renato Urena) exited the driver's side of the Nissan.  As the suspect started to flee on foot, I could see him grabbing at his waistband with both hands.  Officer Davalos and I exited our vehicle and pursued as the suspect ran westbound through the abandoned lot.

        9.     At the outset of the foot pursuit, I believed that the suspect was attempting to retrieve a firearm from his waistband given that I could see the suspect was continually grabbing at his waistband as he fled while wearing baggy pants and a bulky hooded sweatshirt, as well as the him reaching in the car and based on the prior community report and his actions to that point.  Officer Davalos and I immediately gave the suspect multiple commands to show us his hands, but he did not comply.  As the suspect ran, I then observed the suspect retrieve a firearm from his waistband.  Specifically, I remember first seeing the back of an extended magazine for a firearm, at which point my partner and I slowed down our pursuit and unholstered our firearms.  Then as he ran, I could see the barrel of a firearm pointed in my direction.  I continued to give plaintiff multiple commands to stop reaching, but plaintiff refused to comply and continued running through the abandoned lot.  The suspect then turned southwest towards a chain-link fenced corner of a nearby residence.  The south side of the fence line bordered an area of the abandoned lot that was overgrown with tall, waist-high grass, brush, and shrubbery.  As the suspect ran towards that grassy field and the brush, commands were made to the suspect to stop and stop reaching and Officer Davalos warned the suspect that he would be shot.  The suspect continued running, and gave no indication of wanting to surrender or trying to discard his firearm.

        10.    When the suspect reached the threshold of the overgrown field, he

3

DECLARATION OF OFFICER ANDRES ESTRELLA

turned to his left in our direction with the firearm in his right hand, which I perceived as him targeting my partner and myself. The suspect then dove down into the overgrown vegetation. Because he had not thrown the gun up to that point, and because he had turned to target us, I believed his action of going to the ground was an attempt to seek concealment and an advantageous shooting position from which to fire on myself and my partner. I yelled to my partner that the suspect had a firearm, and I heard Officer Davalos also yell that the suspect had a gun as we approached the brush area. When we neared the brush, I could see the suspect about five to ten yards away laying on the ground, with his feet closer to us, facing in our direction. As he was on the ground, he started turning towards us with the gun in his hand and raising his hand up, which appeared to me as if he were raising the gun to shoot us. Due to that imminent threat, and fearing he would kill us, I fired 18 rounds at the suspect while reassessing the threat the suspect posed during the course of the shooting. However, the thick brush obscured the visibility of the suspect's hands and parts of his body, so I shot each round because I believed he was still armed with the gun, had not seen him toss the gun, and he continued to make furtive movements that looked like he was still attempting to target us. After an initial volley of around 14 shots, I paused and continued to see the suspect reaching in a threatening manner, so I fired an additional 4 rounds until the threat ended. I never saw the suspect throw the firearm during the incident and would not of shot if I had seen him throw it.

  11. After the shooting, Officer Davalos radioed to dispatch that shots were fired. Officer Davalos ordered the suspect to stop reaching and to put his hands behind his head. I radioed our location and that we were "Code 4." When the suspect put his hands up and stopped reaching around, we approached the suspect through the thick bushes, at which point I handcuffed the suspect and conducted a cursory search of the suspect looking the suspect's firearm as well as any other weapons. I found needles and drug paraphernalia in plaintiff's pockets.

4

DECLARATION OF OFFICER ANDRES ESTRELLA

Officer Davalos then radioed to dispatch that the suspect was in custody and he requested medical assistance. I radioed further instructions to dispatch about our location for responding units and for paramedics to better locate us. Officer Davalos turned the suspect onto his side into a recovery position. I continued to searched around through the thick brush looking for the suspect's firearm. Paramedics later arrived at the scene and took the suspect to the hospital.

12. A true and correct copy of my body-worn camera recording of the incident is attached hereto as Exhibit "5".

13. While leaving the scene, I heard over the radio that a loaded handgun was found in the backyard of the residence adjacent to the scene of the shooting (1335 W. Magnolia Ave). I also later learned that DNA on the recovered handgun matched the suspect's. A true and correct copy of the DNA laboratory results of the recovered firearm is attached hereto as Exhibit "6". In addition, I later learned that plaintiff's vehicle was searched and approximately 278 ammo cartridges of various caliber were located in a bag in the trunk of the vehicle along with a firearm magazine.

14. At no point during my encounter with decedent were my actions due to racial animus or discriminatory motive. At no point during my encounter with the suspect did I ever retaliate against him for any reason.

15. Furthermore, at no point during the subject incident did I act with malice, oppression or in reckless disregard of constitutional rights. At no point during my interaction with plaintiff did I use any force other than for the legitimate law enforcement purposes I believed were reasonably necessary under the circumstances and based on the safety risks known to me at the time.

16. Based on all of the information available to me at the time, as well as my own observations, I believe my actions and the actions of Officer Davalos were reasonable and justified under the circumstances.

\* \* \* \* \*

5

DECLARATION OF OFFICER ANDRES ESTRELLA

1

\* \* \* \* \*

2   I declare under penalty of perjury that the foregoing is true and correct.

3   Executed this 4th day of March 2026 at San Bernardino, California.

4

5

6   OFFICER ANDRES ESTRELLA - Declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

DECLARATION OF OFFICER ANDRES ESTRELLA