LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO URENA, individually,<br><br>                Plaintiff,<br><br>        vs.<br><br>CITY OF SAN BERNARDINO;<br>JONATHAN DAVALOS; ANDRES<br>ESTRELLA,<br><br>                Defendants. | Case No. 5:24-cv-00341-JGB-SHK<br><br>*Assigned to*:<br>Hon. District Judge Jesus G. Bernal<br>Hon. Mag. Judge Shashi H. Kewalramani<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Plaintiff's Responsive Separate Statement; Declaration of Renee V. Masongsong and Exhibits thereto; and Declaration of Richard Bryce*]<br><br>Date:        April 20, 2026<br>Time:        9:00 a.m.<br>Place:        Ctrm. 1. Riverside |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   LEGAL STANDARD ............................................................................... 2

III.  FACTS...................................................................................................... 3

    *1.    Background* ................................................................................... 3

    *2.    The Foot Pursuit and the Shooting* ............................................. 4

        *a.    The Officers Could Not Shoot Urena For Running Away, Even With a Gun in His Hand.* .............................. 4

        ***b.*   *All or Almost All Shots Were Fired When Urena Was on the Ground.* ........................................................ 4

        *c.    All or Almost All Shots Were Fired when Urena Was Unarmed.* .................................................................. 5

    ***3.*   *Contagious Shooting* ................................................................... 6

    ***4.*   *Substandard Tactics* ................................................................... 6

    ***5.*   *After the Shooting*...................................................................... 6

    *6.    Police Training and Standards on the Use of Deadly Force*.................. 6

    *7.    The Shooting Was Inappropriate and Contrary to Police Standards and Training.* ............................................................ 7

IV.  ARGUMENT ........................................................................................... 8

    *A.    ALL SHOTS WERE EXCESSIVE AND UNREASONABLE*.................... 8

        *1.    The Graham Factors Weigh in Plaintiff's Favor* ....................... 8

        *2.    Whether the Officers Made a Mistake of Fact, And If So, Whether That Mistake Was Reasonable, is a Question for the Jury.* ......................................................................... 11

    *B.    THE OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY* ................................................................................ 12

        *1.    Summary Judgment Cannot be Granted Where There Are Disputed Issues of Material Fact.*................................. 12

    *C.    STATE LAW CLAIMS* .............................................................. 16

        *1.    Battery*................................................................................. 16

        *2.    Negligence* .......................................................................... 17

        *3.    Bane Act* .............................................................................. 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        4.     *No Immunity*.................................................................................18

V.    PUNITIVE DAMAGES..........................................................................19

VI.   CONCLUSION ....................................................................................20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A. K. H by & through Landeros v. City of Tustin*
    837 F.3d 1005 (9th Cir. 2016)...................................................................15

*Adams v. Speers*
    473 F.3d 989 (9th Cir. 2006)....................................................................13

*Aguirre v. County of Riverside*
    29 F.4th 624 (9th Cir. 2022)....................................................................13

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ..................................................................................3

*Blankenhorn v. City of Orange*
    485 F.3d 463 (9th Cir. 2007)...................................................................18

*Brosseau v. Haugen*
    543 U.S. 194 2004)..................................................................................13

*Bryan v. MacPherson*
    630 F.3d 805 (9th Cir. 2010)...................................................................10

*C.V. v. City of Anaheim*
    823 F.3d 1252 (9th Cir. 2016)..................................................................14

*Calonge v. City of San Jose*
    104 F.4th 39 (9th Cir. 2024).................................................................9, 15

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ..................................................................................3

*Coles v. Eagle*
    704 F.3d 624 (9th Cir. 2012)...................................................................13

*Conway v. County of Tuolumne*
    231 Cal. App. 4th 1005 (2014).................................................................19

*Cornell v. City and County of San Francisco*
    17 Cal. App. 5th 766 (2017)....................................................................18

*Cruz v. City of Anaheim*
    765 F.3d 1076 (9th Cir. 2014)..................................................................11

*Curnow v. Ridgecrest Police*
    952 F.2d 321 (9th Cir. 1991)...................................................................14

*Dang v. Cross*
    422 F.3d 800 (9th Cir. 2005)...................................................................20

*Deorle v. Rutherford*
    272 F.3d 1272 (9th Cir. 2001)....................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Diaz v. Cnty. of Ventura*
    512 F. Supp. 3d 1030 (C.D. Cal. 2021)...........................................................12

*Drummond v. City of Anaheim*
    343 F.3d 1052 (9th Cir. 2003).....................................................................16

*Ellins v. City of Sierra Madre*
    710 F.3d 1049 (9th Cir. 2013).....................................................................13

*Estate of Lopez v. Gelhaus*
    871, F.3d 998 (9th Cir. 2017).....................................................................14

*George v. Morris*
    736 F.3d 829 (9th Cir. 2013)......................................................................14

*Glenn v. Washington Cnty.*
    673 F.3d 864 (9th Cir. 2011)......................................................................12

*Gonzalez v. City of Anaheim*
    747 F.3d 789 (9th Cir. 2014)......................................................................11

*Graham v. Conner*
    490 U.S. 386 (1989) ..............................................................................8, 13

*Harris v. Roderick*
    126 F.3d 1189 (9th Cir. 1997)....................................................................8, 9

*Hayes v. Cnty. of San Diego*
    57 Cal. 4th 622 (2013)...............................................................................17

*Holloway v. City of Pasadena*
    2018 WL 8799884 (C.D. Cal. Nov. 8, 2018).................................................14

*Holloway v. Horn*
    2021 WL 3929972 (9th Cir., Sept. 2, 2021, No. 18-56612) ...........................14

*Hopkins v. Andaya*
    958 F.2d 881 (9th Cir. 1992).......................................................................3

*Isayeva v. Sacramento Sheriff's Dep't*
    872 F.3d 938  (9th Cir. 2017).....................................................................13

*Lake Nacimiento Ranch Co. v. San Luis Obispo County*
    841 F.2d 872 (9th Cir. 1987).......................................................................3

*Lam v. City of Los Banos*
    976 F.3d 986 (9th Cir. 2020)......................................................................14

*Larez v. City of Los Angeles*
    946 F.2d 630 (9th Cir. 1991)......................................................................19

*Liston v. County of Riverside*
    120 F.3d 965 (9th Cir. 1997).......................................................................3

*Longoria v. Pinal County*
    873 F.3d 699 (9th Cir. 2017)..................................................................12, 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Lowry v. City of San Diego*
        858 F.3d 1248 (9th Cir. 2017)...........................................................................9

*Mattos v. Agorano*
        661 F.3d 433 (9th Cir. 2011)............................................................................9

*McCorkle v. City of Los Angeles*
        70 Cal. 2d 252 (1969)......................................................................................19

*Megargee v. Wittman*
        550 F.Supp.2d 1190 (E.D. Cal. 2008)............................................................19

*Munoz v. City of Union City*
        120 Cal. App. 4th 1077 (2004).......................................................................17

*Nehad v. Browder*
        929 F.3d 1125 (9th Cir. 2019)....................................................................8, 10

*Price v. County of San Diego*
        990 F. Supp. 1230 (S.D. Cal. 1998)...............................................................18

*Reese v. County of Sacramento*
        888 F.3d 1030 (9th Cir. 2018).........................................................................18

*Rivas-Villegas v. Cortesluna*
        595 U.S. 1 (2021) ............................................................................................13

*Robinson v. Solano Cnty.*
        278 F.3d 1007 (9th Cir. 2002)..........................................................................18

*Rosenbaum v. City of San Jose*
        107 F.4th 919 (9th Cir. 2024)..........................................................................12

*Santos v. Gates*
        287 F.3d 846 (9th Cir. 2002)............................................................................3

*Smith v. Wade*
        461 U.S. 30 (1983) ..........................................................................................19

*Tabares v. City of Huntington Beach*
        988 F.3d 1119 (9th Cir. 2021)..........................................................................17

*Taylor v. Riojas*
        592 U.S. 7 (2020) ............................................................................................13

*Ting v. United States*
        927 F.2d 1504 (9th Cir. 1991)..........................................................................14

*Tolan v. Cotton*
        572 U.S. 650 (2014). .........................................................................................3

*Torres v. City of Madera*
        648 F.3d 1119 (9th Cir. 2011)..........................................................................12

*United States v. One Parcel of Real Prop*
        904 F.2d 487 (9th Cir. 1990)............................................................................3

-v-

*Villanueva v. California*
       986 F.3d 1158 (9th Cir. 2021)...........................................................................12

*Zion v. Cty. of Orange*
       874 F.3d 1072 (9th Cir. 2017).....................................................................15, 16

Statutes

Cal. Gov. Code § 815.2(a). ................................................................................ 16

Cal. Gov. Code §820.2 ...................................................................................2, 18

Other Authorities

CACI 441 ...........................................................................................................17

Judicial Council of California Civil Jury Instructions
       No. 1305B..............................................................................................16, 17

Ninth Circuit Model Civil Jury Instruction
       No. 9.27 (2025)............................................................................................12

Rules

Federal Rules of Civil Procedure, Rule 56 ..........................................................3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This Court should deny Defendants' motion for summary judgment based on the undisputed facts alone, which are as follows: Davalos and Estrella could not shoot Urena for running away, even with a gun in his hand, as both officers admitted in their depositions. Pursuant to police standards and training, a gun in the hand is not enough to justify the use of deadly force—the person would have to be pointing or directing the gun at the officers or another person. Urena tossed the gun over a fence, where it was found in a holster. In Davalos' and Estrellas' experience, suspects will often try to toss their gun, so they don't get caught with it. The officers fired 36 total shots at Urena. At most, the gun is visible in only one BWC video for only 1/6 of a second, 1/15 of a second before the first shot was fired, when Urena (according to Defendants' expert Brady Held) tossed the gun over the fence. This means that even on the undisputed facts, Urena was unarmed during at least 34 shots. The videos show that Urena was on the ground during all shots. By the officers' own admissions, they never actually saw a gun in Urena's hands when he was on the ground. These facts are so strong that Plaintiff should have filed a motion for summary judgment in his favor, and summary judgment should be granted in Plaintiff's favor if this Court deems it appropriate. Likewise, a FRCP 50(a) motion in Plaintiff's favor would be warranted.

Where the facts are disputed, this Court must resolve all disputes in Plaintiff's favor. Disputed issues of material fact must be resolved by a jury, which is even more of a reason for this Court to deny Defendants' motion. On Plaintiff's facts, Urena never pointed the gun at the officers or turned toward them with the gun—the videos do not show this, and Urena testified that he never did that. Urena testified that his hands were down on the ground surface when he was on the ground. It is disputed whether Urena discarded the gun before the shots started (as he testified), or at the time of the first shot, as Defendants' expert opines. It is also disputed whether Urena went to the ground before the shots started or because he was struck

-1-

by an initial shot. According to Plaintiff's police practices expert, Richard Bryce, it was inappropriate for the officers to believe that Urena went to the ground to gain a position of advantage or that Urena was in a shooting position when he was on the ground. Rather, the reasonable inference is that Urena went to the ground to surrender. Plaintiff further disputes whether the officers really failed to recognize that Urena had tossed the gun over the fence, given that police officers are trained with respect to situational awareness, the officers knew that suspects often try to toss their gun when running from the police with a gun, and the officers admitted they never saw anything in Urena's hands when he was on the ground. Resolving these disputes in Plaintiff's favor, Urena never pointed the gun at the officers or turned toward them with the gun, the officers knew Urena had discarded the gun, and Urena was unarmed and on the ground at the time of all 36 shots.

The officers are not entitled to qualified immunity. On both the disputed and undisputed facts, the law was clearly established at the time of the incident that shooting under these circumstances would violate Urena's constitutional right to be free from excessive force. Further, a reasonable jury could find that the officers acted with "reckless disregard" for Urena's constitutional right to be free from excessive force when they shot him, which satisfies the standard on Plaintiff's Bane Act claim and supports a finding of punitive damages. The officers are not immune under Cal. Gov. Code §820.2, which does not confer immunity to officers who use unreasonable force in making an arrest or perform a discretionary act negligently. Additionally, qualified immunity does not apply to Plaintiff's state law claims.

For each of these reasons and the reasons set forth below, this Court should deny Defendants' motion in full.

## II.    LEGAL STANDARD

On a motion for summary judgment, the deciding court must view the evidence in the light most favorable to the non-moving party and make all reasonable inferences in favor of the non-moving party. *Tolan v. Cotton*, 572 U.S.

650, 657 (2014). The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491–92 (9th Cir. 1990). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Entirely circumstantial evidence may be sufficient to create a triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Even where key facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

Summary judgment is a drastic remedy and therefore trial courts should act "with caution" in granting summary judgment. *Anderson*, 477 U.S. at 255. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions," summary judgment "in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question … for the jury."). Federal Rules of Civil Procedure, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

### III.   FACTS

#### 1.  Background

Prior to the incident, the officers had never seen Urena and had no knowledge whether Urena had a criminal history. (Plaintiff's Additional Material Fact ("PAMF") 47). They had no information that Urena had injured or threatened anyone or committed any violent crime, no information that Urena was the subject

of the tip or the registered owner of the car, no photograph of the driver, and no plate number for the Nissan. (PAMF 48-49).

### 2. The Foot Pursuit and the Shooting

#### a. The Officers Could Not Shoot Urena For Running Away, Even With a Gun in His Hand.

The officers made a poor tactical decision when they pursued Urena on foot without cover when they had information that he may be armed. (PAMF 52). Officers are trained that if they are in a foot pursuit, following someone with a gun, they should take cover, create distance, call for backup, and set up containment or a perimeter with the assistance of backup officers. (PAMF 53-54). At the time where the officers claim they first saw a gun on Urena's person, they did not take cover, yell out "gun," or notify dispatch that they were chasing someone they believed had a gun. (PAMF 55).

Both sides agree that pursuant to police standards and training, it would have been inappropriate for the officers to shoot at Urena for running away, even with a gun in his hand. (PAMF 56). Officers, including Davalos and Estrella, are trained that seeing a gun in a suspect's hand is not a sufficient justification to use deadly force against that suspect (PAMF 57) and trained that they cannot justify shooting a person for running away, even if the person has a gun. (PAMF 58). Based on the video, Urena's testimony, and Mr. Held's testimony, Urena never pointed the gun at the officers and never turned toward the officers with the gun in his hand at any time. (PAMF 59).

#### b. All or Almost All Shots Were Fired When Urena Was on the Ground.

It was inappropriate for the officers to believe that Urena went to the ground to gain a position of advantage. (PAMF 60). A reasonable interpretation of Urena going to the ground is that he went to the ground to surrender, particularly when viewed in conjunction with the fact that Urena tossed the gun over the fence.

-4-

(PAMF 61). As seen on the video and stated by Defendants' own expert, Mr. Held, all shots were fired when Urena was on the ground. (PAMF 62). When Estrella paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. (PAMF 63).

### c. All or Almost All Shots Were Fired when Urena Was Unarmed.

Urena testified that he tossed the gun over the fence before any shots were fired. (PAMF 64). It would be inappropriate for the officers to shoot Urena for tossing the gun. (PAMF 65). Based on their experience as police officers, Davalos and Estrella knew that when a subject is running with a gun, the subject might try to toss the gun because they do not want to get caught with a gun. (PAMF 66). Pursuant to police training on situational awareness, a reasonable officer in the position of Estrella and Davalos would have seen that Urena tossed the gun, when they had an unobstructed view a short distance behind him. (PAMF 67).

Even on Defendants' facts, at least 34 shots were fired after Urena discarded the gun. (PAMF 68). Based on his review of the video, Mr. Held testified that: the gun is visible in only one BWC video for only approximately 1/6 of a second; the first shot was fired approximately 1/15 of a second before Urena threw the gun over the fence; and the second shot was fired when the gun was leaving Urena's hand or was in the air. (PAMF 69-71). Police officers are trained to reassess when firing shots, and a reasonable police officer in the position of Estrella and Davalos would have reassessed multiple times during the shooting and recognized that Urena was unarmed during at least 34 or 35 of the shots. (PAMF 72-73).

In fact, both officers admitted at their depositions that they were looking at Urena's hands when they were firing their shots, and they did not see a gun in Urena's hand after Urena went to the ground. (PAMF 74-75). It was inappropriate for the officers to believe that Urena was in a shooting position when he was on the ground. (PAMF 76). Urena testified that when he was on the ground surface, his hands were down on the ground. (PAMF 77). Estrella specifically testified he did

-5-

not have any visual obstructions when firing his shots, he never saw a gun pointed at him after Urena went to the ground, and when he paused to reassess during the shooting sequence, he was aware that Urena was on the ground. (PAMF 78).

### 3. Contagious Shooting

The officers may have engaged in "reactionary shooting" or "contagious fire," given number of shots that were fired (36), and particularly given the number of shots that were fired when Mr. Urena was unarmed and on the ground. (PAMF 79).

### 4. Substandard Tactics

Neither officer ever gave Urena the command "drop it." (PAMF 80). The officers did not give any commands during the shooting sequence. (PAMF 81). Officers are trained to give a verbal warning prior to using deadly force, when feasible, and Estrella did not give Urena a verbal warning that he was prepared to use deadly force. (PAMF 82-83).

### 5. After the Shooting

Davalos and Estrella could not locate the gun after the shooting. (PAMF 84). The gun was later found in a holster, on the other side of the fence. (PAMF 85). It is undisputed that for the gun to end up over the fence, Urena must have tossed it over the fence, and the officers did not see Urena toss a gun after they shot him. (PAMF 86-87). Davalos did not tell anyone at the scene that Urena had pointed a gun at him. (PAMF 88).

### 6. Police Training and Standards on the Use of Deadly Force

Basic police training and standards instruct that deadly force should only be used on the basis of an objectively reasonable belief that the suspect poses an immediate or imminent threat of death or serious bodily injury. (PAMF 89). Police officers are trained that a threat of death or serious bodily injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace

-6-

officer or another person. (PAMF 90). Police officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. (PAMF 91). Pursuant to police training and standards, a subjective fear is insufficient to justify the use of deadly force. (PAMF 92).

Police officers are trained with respect to situational awareness. (PAMF 93). Officers are trained to focus on the suspect's hands, particularly if they believe the suspect is armed. (PAMF 94). Basic police training teaches that that a suspect's failure to comply with officer commands alone is an insufficient basis for the use of deadly force. (PAMF 95). Officers are trained that deadly force should only be used when no reasonable alternative measures are available. (PAMF 96). Basic police training teaches that an overreaction in using deadly force is excessive force. (PAMF 97).

Particularly important to this case, where it is undisputed that almost all the shots occurred when Urena was unarmed and on the ground, police officers are trained that they are responsible for justifying every shot when they use deadly force. (PAMF 98).

### 7. The Shooting Was Inappropriate and Contrary to Police Standards and Training.

As opined by Plaintiff's police practices expert, Mr. Bryce, in his declaration filed concurrently herewith, from the standpoint of police practices, Estrella's and Davalos' uses of deadly force were improper, inappropriate, and contrary to POST standards and basic police training, including for the following reasons: (1) there was no "immediate defense of life" situation at the time of the shots; (2) a subjective fear or fear of future harm is insufficient to justify the use of deadly force; (3) on Plaintiff's facts, Urena was unarmed during all of the shots, and on Defendants' facts, Urena was unarmed during at least 34 of the shots; (4) all 36 shots were fired

when Urena was on the ground; (5) a gun in the hand is insufficient to justify a use of deadly force, and Urena never pointed the gun at the officers and never turned toward the officers with the gun, and the gun was in a holster; (6) the officers could not justify shooting Urena for running away with a gun in his hand; (7) Urena committed no crime involving the infliction of serious injury or death; (8) Urena made no verbal threats; (9) the officers had reasonable alternative measures rather than shooting; (10) the officers showed no reverence for human life when they shot at Urena 36 times; (11) officers are responsible for justifying every shot they fire, and none of the shots are justified, and certainly not the 34 or 35 shots fired while Urena was unarmed and on the ground; and (12) this appears to be a case of contagious fire. (PAMF 99).

## IV.    ARGUMENT

### A. ALL SHOTS WERE EXCESSIVE AND UNREASONABLE

#### 1.  *The Graham Factors Weigh in Plaintiff's Favor*

Fourth Amendment claims for excessive force are judged by "whether the officers' actions [we]re 'objectionably reasonable'" given "the facts and circumstances confronting them." *Graham v. Conner*, 490 U.S. 386, 397 (1989). Government interest factors to weigh against "nature and quality of the intrusion" include the severity of the crime, whether the suspect poses an immediate threat of death or serious bodily injury, and whether he is actively resisting or attempting to evade arrest. *Id.* at 396. Additional factors include availability of alternative measures or tactics to handle the situation and whether proper warnings were given. *Nehad v. Browder*, 929 F.3d 1125, 1137-38 (9th Cir. 2019); *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("whenever practicable, a warning must be given before deadly force is employed").

#### a.  *No Serious Crime*

The "severity of the crime" factor relates to the initial crime prompting police response. *See, e.g.*, *Lowry v. City of San Diego*, 858 F.3d 1248, 1257-58 (9th Cir.

-8-

2017). When the officers contacted Urena, they had no information that Urena was the subject of the tip or the registered owner of the car, and the officers had no photo of the driver or plate for the car. The officers had never seen Urena before and had no information about his criminal history, no information that he had committed any crime involving the infliction of death or serious bodily injury, and no information that Urena had threatened anyone or fired any gunshots.

### b. *No Immediate Threat*

"[T]he most important *Graham* factor is whether the suspect posed an immediate threat" of death or serious bodily injury at the time that deadly force was employed. *Mattos v. Agorano*, 661 F.3d 433, 441 (9th Cir. 2011). A "statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). An officer's "desire to resolve quickly a potentially dangerous situation" does not justify deadly force, nor does the fact that a suspect possesses a weapon or what appears to be a weapon. *Id.*; *Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024) ("We have held over and over that a suspect's possession of a gun does not itself justify deadly force."); *Harris*, 126 F.3d at 1204 ("Law enforcement officials may not kill suspects who do not pose an immediate threat … simply because they are armed.").

A reasonable jury could find that Urena posed no immediate threat of death or serious bodily injury to any person at the time of the shots, even on Defendants' facts and on the undisputed facts. Defendants agree that the officers could not shoot Urena for having a gun or running away with a gun in his hand. It is undisputed that the officers fired 36 shots at Urena, and undisputed that the gun was found after the shooting on the other side of the fence, in a holster. The video shows that Urena was on the ground during all the shots. According to Defendants' expert Mr. Held, Urena tossed the gun at the time of the first shot, meaning he was unarmed during almost all shots. Both officers admitted at their depositions that they never saw a gun in

-9-

Urena's hand after Urena went to the ground and that they did not see him toss the gun after the shooting.

On Plaintiff's facts, the shooting is even more egregious. Taking Plaintiff's facts as true: Urena tossed the gun over the fence before any shots were fired; the officers knew Urena tossed the gun based on their training on situational awareness and their experience that suspects often toss their gun to avoid being caught with it; Urena never pointed the gun at the officers or turned toward them with the gun; Urena went to the ground to surrender; Urena was unarmed during all the shots; Urena was on the ground during all the shots; it was inappropriate for the officers to think Urena was in a shooting position when he was on the ground; and the officers could not see any gun in Urena's hands or on his person at the time of the 36 shots that took place while Urena was on the ground.

### c. No Forcible Resistance

The videos show that Urena was running away from the officers and attempting to avoid contact with them. The Ninth Circuit has recognized that even where an individual "continually ignored" commands … his level of resistance provided little support for a use of significant force. *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). It has likewise found that an individual's erratic behavior and "failure to comply" was "a far cry from actively struggling with an officer" and did not support use of significant force. *Id.*

### d. Reasonable Alternatives Available

Officers also must "consider what other tactics if any were available" to effect an arrest, including "less intrusive methods." *Bryan*, 630 F.3d at 831 & n.15; *see Nehad*, 929 F.3d at 1135. Here, a reasonable officer in the position of Estrella and Davalos would have taken cover, called for backup, notified dispatch that they were chasing a subject with a gun, and set up a perimeter with the assistance of backup officers. The officers also should have created distance and given Urena further commands such as "drop it," and time to comply with commands. Additionally, a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

rational jury may find that it was practicable for Estrella to give Urena a verbal warning before using deadly force, and his "failure to give one might weigh against reasonableness." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014).

### e.    The Officers' Credibility is at Issue.

In *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014), the Ninth Circuit recognized that circumstantial evidence can discredit an officer's claim that they perceived a deadly threat. The *Cruz* court denied summary judgment because a jury "could [] reasonably conclude that the officers lied" about what they had perceived. *Id.* at 1080. As in *Cruz,* a jury in this case could reasonably infer from the evidence that the officers did not actually perceive Urena pointing a gun at them and find the officers' assertions to the contrary not credible. Urena testified that he never pointed the gun at the officers, and the BWC videos do not show Urena pointing a gun at the officers. As noted in Mr. Bryce's declaration filed concurrently herewith, Davalos stated in his initial interview: "He laid down himself on the ground . . . I saw him still with the gun and as I approached him . . ." However, at their depositions, both officers admitted that they did not actually see a gun in Urena's hand when Urena was on the ground. A reasonable jury could also find the officers' testimony that they did not know Urena tossed the gun to be not credible—the video shows that Urena tossed the gun over the fence at the time of the first shot (assuming defense expert Mr. Held's analysis is correct), the officers knew that suspects often try to toss their gun, and the officers were trained on situational awareness. Bryce Decl. at ¶ 10. This all places the officers' credibility at issue, which cuts in favor of denying Defendants' request for summary judgment.

### 2.    *Whether the Officers Made a Mistake of Fact, And If So, Whether That Mistake Was Reasonable, is a Question for the Jury.*

Whether the officers knew Urena tossed the gun over the fence is a disputed question of fact for the jury, given the officers' training on situational awareness, and given that they admitted at their depositions that they never saw a gun in

-11-

Urena's hand after he went to the ground. If they did mistakenly believe that Urena was still armed during the shooting sequence, the reasonableness of that mistaken belief is a question for the jury. Although "officers are often forced to make split-second judgments," an officer's unreasonable factual mistake can lead to a constitutional violation. *Torres v. City of Madera*, 648 F.3d 1119, 1124, 1127 (9th Cir. 2011) (reversing summary judgment because a jury could find that officer's mistake of fact was unreasonable); *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (holding that not all errors in perception or judgment are reasonable and that the Constitution does not forgive an officer's every mistake); *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1042 (C.D. Cal. 2021) (holding that when an officer's use of force is based on a mistake of fact, the question of whether the mistake was reasonable is a triable issue of fact); *see also* Ninth Circuit Model Civil Jury Instruction No. 9.27 (2025) (listing "whether a reasonable officer would have or should have accurately perceived a mistaken fact" as a factor *for the jury to consider* in excessive force cases).

Accordingly, for each of the foregoing reasons, a reasonable jury could deem the officers' uses of deadly force excessive and unreasonable.

### B. THE OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The officers are not entitled to qualified immunity for four reasons.

#### 1. *Summary Judgment Cannot be Granted Where There Are Disputed Issues of Material Fact.*

First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See, e.g.*, *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds."); *Villanueva v. California*, 986 F.3d 1158, 1173 (9th Cir. 2021); *Longoria v. Pinal County*, 873 F.3d 699, 710 (9th Cir. 2017) ("Where the facts are

-12-

disputed, their resolution and determinations of credibility 'are manifestly the province of a jury.'"). Here, these material disputes include: whether Urena ever pointed the gun at the officers or turned toward them with the gun; whether Urena tossed the gun over the fence before the shots started, as Urena testified, or, at the time of the first shot, as Defendants' expert contends; whether the officers knew or should have known that Urena tossed the gun before or at the time of the first shot; whether Urena went to the ground before the shots started; whether it would have been feasible for Estrella to give Urena a verbal warning before shooting; whether the officers should have taken cover and waited for backup; and whether this was a case of contagious fire.

Second, on Plaintiff's facts, this case "falls within the obvious." Where genuine issues of material fact exist, a court must address a claim of qualified immunity by resolving all factual disputes in the non-moving party's favor. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013); *Coles v. Eagle*, 704 F.3d 624, 629 (9th Cir. 2012). Taking Plaintiff's facts as true, Urena never pointed the gun at the officers or turned toward them with the gun, he tossed the gun before the shots started, he went to the ground to surrender, all shots occurred when Urena was unarmed and on the ground with his hands on the ground, and the officers knew that Urena tossed the gun. "[I]n an 'obvious case,' the standards set forth in *Graham* and *Garner*, though 'cast at a high level of generality,' can 'clearly establish' that a constitutional violation has occurred 'even without a body of relevant case law.'" *Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) and *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020); *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2006).

Third, aside from this being an "obvious" case, Urena's constitutional right to be free from excessive force under this set of facts was clearly established at the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

time of the shooting. *Holloway v. Horn*, 2021 WL 3929972 (9th Cir., Sept. 2, 2021, No. 18-56612), is instructive. In *Holloway*, the Ninth Circuit affirmed the denial of qualified immunity where, on Plaintiff Holloway's facts, he was shot after he tossed his gun over a fence and went to the ground in surrender, and the reasonable inference was the officer knew Holloway tossed the gun. *Id*. at *2; *see also Holloway v. City of Pasadena*, 2:15-cv-03867-CAS-JC, 2018 WL 8799884, at *8-9 (C.D. Cal. Nov. 8, 2018) (denying summary judgment where whether plaintiff ever turned and pointed gun toward officer was disputed).

In affirming the denial of qualified immunity, the *Holloway* court relied on the following analogous cases that also support the denial of qualified immunity in Urena's case: *Lam v. City of Los Banos*, 976 F.3d 986, 1000–03 (9th Cir. 2020) (holding that it was clearly established that "an officer may not shoot a previously armed person who no longer posed a threat"); *Estate of Lopez v. Gelhaus*, 871, F.3d 998 (9th Cir. 2017) (rejecting summary judgment where a suspect who was carrying what appeared to be an AK-47 turned, without pointing the gun, toward the officer who shot him); *George v. Morris*, 736 F.3d 829, 832, 833, 838-39 (9th Cir. 2013) (establishing that firing on someone who makes no "furtive movement, harrowing gesture, or serious verbal threat" that would give rise to an "immediate threat" to the safety of the officer or others is unreasonable, even where the defendant is still armed with a deadly weapon); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 323-25 (9th Cir. 1991) (rejecting summary judgment where, on the plaintiffs' facts, he was shot by police while holding a gun but was not facing the officers or pointing the gun at them). *See also C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (deadly force not objectively reasonable even when subject had a gun); *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991) (denying qualified immunity where officers shot "an unarmed and injured felon lying or kneeling on the floor"). The foregoing cases are analogous even on the undisputed facts, where all shots were fired when Urena was on the ground, the officers never saw a gun in Urena's

-14-

hands after he went to the ground, and at least 34 shots were fired when Urena was unarmed.

*Calonge v. City of San Jose*, *supra*, also clearly establishes that a gun in the hand is not enough to justify the use of deadly force. 104 F.4th at 48. In *Calonge*, an officer shot Calonge in the back, alleging he saw Calonge's arm "bow out" as if he were drawing the gun. *Id*. In denying qualified immunity, the Ninth Circuit held that it was established as of 2019 that "[w]hen a man is walking down the street carrying a gun in his waistband, posing no immediate threat, police officers may not . . . kill him." *Id*. at 43. In *Longoria*, *supra*, which is also instructive here, officers had information that the driver of a stolen vehicle was armed. 873 F.3d at 703. Longoria exited his vehicle after a car chase and disobeyed commands to show his hands. *Id*. The Ninth Circuit held that "[a] jury must determine [the officer's] credibility in light of … the videos" and denied qualified immunity to the defendant officer because "a reasonable jury could … conclude that [the officer] knew or should have known that Longoria was not holding a gun and that he did not assume a "shooter's stance" and could find that [the officer's] statements to the contrary were not credible." 873 F.3d at 710-11. Similarly, here, on Urena's facts, many of which are undisputed, Urena never pointed the gun at the officers, he was unarmed and on the ground during all the shots, the officers did not see a gun in Urena's hands after he went to the ground,  the officers should have known that Urena tossed the gun, and it was not reasonable for the officers to think Urena was in a shooting position when he was on the ground. *See also A. K. H by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016); *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010).

Even on the undisputed facts, *Zion v. Cty. of Orange*, 874 F.3d 1072, (9th Cir. 2017), is particularly instructive with respect to the shots fired after the officers knew or should have known that Urena was wounded and on the ground. The officers each fired 18 shots. Officers have a duty to reassess when firing and are

-15-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

responsible for justifying every shot they fire. The officers knew that Urena was down on the ground and never saw a gun in his hand when he was on the ground, and the reasonable inference is they knew Urena had been struck by shots. *Zion* established that "[i]f the suspect is on the ground and appears wounded, he may no longer pose a threat; a reasonable officer would reassess the situation rather than continue shooting.") *Id*. at 1075-76.

Fourth, it is well established that an officer's violation of police training weighs against granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable"). An officer who makes a conscious decision to violate basic training guidelines should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed their decision to be lawful. *See id*.

### C. STATE LAW CLAIMS

Plaintiff is entitled to a jury trial on his state law claims for the same reasons discussed above in connection with Plaintiff's excessive force claim. Qualified immunity does not apply to state law claims, nor are the officers immune under any state statute. On Plaintiff's state law claims, the City is vicariously liable for the conduct of Officers Estrella and Davalos. Cal. Gov. Code § 815.2(a).

#### 1. Battery

Pursuant Judicial Council of California Civil Jury Instructions ("CACI"), No. 1305B (Battery by Peace Officer, Deadly Force), "[a] threat of death or serious bodily injury is "imminent" when … a reasonable officer … would believe [the] person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury." The undisputed fact that the gun ended up on the other side of the fence in a holster indicates that Urena did not have the ability,

opportunity, and apparent intent to immediately cause death or serious bodily injury to any person. Discarding the gun over the fence and going to the ground does not show an intent to shoot the officers, and Urena did not have the ability or opportunity to fire the gun when it was in a holster and when the gun was on the other side of the fence during at least 34 of the 36 shots. Further, the officers admitted that they did not see a gun in Urena's hand when he was on the ground.

Thus, a reasonable jury could find that the shots fired by Davalos and Estrella were objectively unreasonable and "not necessary to defend human life" as described in detail above. *See* CACI 1305B. Plaintiff's above-cited cases that clearly establish Urena's right to be free from excessive force under this set of facts also support a denial of summary judgment on Plaintiff's battery claim. *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1121 n.6 (2004) (instructing that Fourth Amendment excessive force claims and state battery claims require proof of an officer's unreasonable conduct, making federal cases instructive).

### 2. *Negligence*

The negligence analysis is even broader. In addition to the shooting itself being a negligent use of deadly force, pre-shooting tactics "are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability. Such liability can arise where the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 639 (2013); *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021); CACI 441 (instructing the jury to consider the officers' pre-shooting tactical conduct). Here, this includes: the officers' failures to take cover, call for backup, notify dispatch they were chasing someone with a gun; failures to consider reasonable alternative options other than shooting, such as setting up a perimeter, using time and distance, and giving further commands such as "drop it" and time to comply with commands; the officers' failures to employ situational awareness and

-17-

realize that Urena had tossed the gun; failures to properly reassess the need to use deadly force, particularly when the officers did not see anything in Urena's hands after he went to the ground; and Estrella's failure to issue a verbal warning that deadly force would be used, even though it would have been feasible.

### 3. Bane Act

Plaintiff's claim for violation of the Bane Act survives because firing 36 shots at an unarmed person who was on the ground, where (on Plaintiff's facts) the person never pointed the gun at anyone, the officers never saw anything in his hands after he was on the ground, and the officers appear to have engaged in contagious fire, shows a reckless disregard for the person's constitutional right to be free from excessive force. With respect to the "intent" requirement on this claim, whether the officers knew their actions were unlawful is irrelevant, as the Ninth Circuit in *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018), held that reckless disregard for constitutional rights demonstrates specific intent to deprive those rights. Further, *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017), confirmed that the Bane Act does not require a separate "threat, intimidation, or coercion" beyond the constitutional violation (here, the shooting) itself. Given the facts, summary judgment must be denied on this claim under any applicable standard.

### 4. No Immunity

"[I]t has long been established that [Cal. Gov. Code §820.2] does not apply to officers who use unreasonable force in making an arrest." *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007) (citing *Price v. County of San Diego*, 990 F. Supp. 1230 (S.D. Cal. 1998) (§820.2 does not confer immunity for discretionary acts if officer uses unreasonable force) and *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect.")). "[E]ven if a public employee's act is classified as 'discretionary,' the employee is not immune if the injury to another

-18-

results, not from the exercise of discretion to undertake the act, 'but from his negligence in performing it after having made the discretionary decision to do so.'" *Conway v. County of Tuolumne*, 231 Cal. App. 4th 1005 (2014) (quoting *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261 (1969)); *Megargee v. Wittman*, 550 F.Supp.2d 1190 (E.D. Cal. 2008).

The narrow holding of *Conway* is inapplicable to the instant case. *Conway* was not an excessive force case; rather, the plaintiff complained that the tear gas deployment damaged his house. In *Conway*, the issue was "whether discretionary immunity applies to the selection of the means used to effectuate an arrest." *Id*. at 1016. The *Conway* court prefaced its analysis by stating, "discretionary immunity does not apply to … using unreasonable force when making an arrest," which was not the issue in *Conway*. *Id*. at 1015. The *Conway* court made clear that its decision was not so broad "so that every action by an officer, no matter how minor, will be subject to immunity as long as the officer states he … made a choice between two options." *Id*. at 1021. Davalos and Estrella did not have discretion to use excessive force against Urena.

## V.    PUNITIVE DAMAGES

Punitive damages awards are permitted on "various[] standards of negligence, recklessness, carelessness, or other culpable conduct short of actual malicious intent." *Smith v. Wade*, 461 U.S. 30, 45 (1983); *see Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (a jury may assess punitive damages under §1983 when the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others"; actual intent or malice not required). "[O]ppressive conduct is [also] a proper predicate for punitive damages under §1983. … An act [] is oppressive if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability … of another person." *Dang v. Cross*, 422 F.3d 800, 809, 815

-19-

(9th Cir. 2005) (reiterating that various standards exist as separate and distinct bases for punitive damages and holding that the "district court prejudicially erred in refusing to instruct the jury that punitive damages could be awarded if it found that [the officer's] acts that caused [the plaintiff's] injuries were oppressively done.").

Here, a reasonable jury could find that shooting Urena while he was unarmed and on the ground satisfies one or more of the various standards for awarding punitive damages, including that the shooting was oppressive and done with reckless or callous indifference to Urena's right to be free from excessive force.

## VI.   CONCLUSION

For all of the foregoing reasons, Defendants are not entitled to summary judgment or any immunity. Material facts remain in genuine dispute as to whether the officers' use of deadly force was objectively reasonable. Because these issues must be resolved by a jury, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment in its entirety.

Dated: March 23, 2026                LAW OFFICES OF DALE K. GALIPO

By: _____/s/ Renee V. Masongsong_____
                Dale K. Galipo
                Renee V. Masongsong
                Attorneys for Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Renato Urena, certifies that this brief contains 6,986 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.2.

Dated: March 23, 2026                    LAW OFFICES OF DALE K. GALIPO


                                  By: _____/s/ Renee V. Masongsong_____
                                        Dale K. Galipo
                                        Renee V. Masongsong
                                        Attorneys for Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT