LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO URENA, individually,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN BERNARDINO, JONATHAN DAVALOS, and ANDRES ESTRELLA,<br><br>Defendants. | Case No. 5:24-cv-00341-JGB-ACCV<br><br>**PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS**<br><br>[*Filed concurrently with the Memorandum of Points and Authorities; Declarations and Exhibits thereto*]<br><br>Date: April 20, 2026<br>Time: 9:00 a.m.<br>Courtroom: 1 - Riverside |

**TO THE HONORABLE COURT AND DEFENDANTS, CITY OF SAN BERNARDINO, JONATHAN DAVALOS, and ANDRES ESTRELLA THROUGH THEIR ATTORNEYS OF RECORD:**

Pursuant to this Court's Standing Order (Dkt. 7 at pp. 6-7), Plaintiff RENATO URENA hereby respectfully submits this Responsive Statement of Genuine Disputes of Material Facts and Additional Material Facts in Opposition to Defendants' Motion for Summary Judgment.

- 1 -

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 1. | On February 10, 2023, around 10:15 a.m., San Bernardino Police Department ("SPBD") Officers Davalos and Estrella were on duty as partners assigned as district resource officers in a marked police vehicle in the area of 14th Street and K Street in the City of San Bernardino. | Davalos Decl. ¶ 4, Ex. 1; Estrella Decl. ¶ 4, Ex. 2; Davalos Depo. at 22:15-23:10, Ex. 7. | Undisputed. |
| 2. | Prior to that day, in their capacity as district resource officers, Officers Davalos and Estrella had received a tip about a Hispanic male in a gray or silver | Davalos Decl. ¶ 4 Ex. 1; Estrella Decl. ¶ 4, Ex. 2; Davalos Depo. at 23:11-24:21, Ex. 7; Estrella Depo. at 9:25-10:17, Ex. 8. | Disputed to the extent that the officers had no information that Mr. Urena was the subject of the tip or the registered owner of the car, and the officers had no photo of the driver or plate for the car. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | Nissa Versa who was possibly armed with a gun around the area near 14th Street and K Street. | | Ex. C (Estrella Depo.) at 11:5-12:3. |
| 3. | The officers knew that area, which was known gang territory. | Davalos Decl. ¶ 5, Ex. 1; Estrella Decl. ¶ 5, Ex. 2. | Disputed to the extent that Mr. Urena was in the area driving to see his son after visiting a friend to encourage a friend who was suffering from cancer. Ex. A (Urena Depo.) at 35:12-36:5, 37:6-38:14. Disputed to the extent that the officers had no information that Mr. Urena was affiliated with any gang. Ex. D (Davalos Depo.) at 38:16-19. |
| 4. | Meanwhile, on February 10, 2023, at some time around 10:15 a.m., plaintiff | Urena Depo. at 37:6-39:4, 40:3-15, 43:14-44:8, Ex. 3. | Disputed to the extent that Mr. Urena was in the area driving to see his son after visiting a friend to encourage |

- 3 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | Renato Urena was driving a silver Nissan Versa near K Street and 14 Street after having just left a friend's house where he had used marijuana. | | a friend who was suffering from cancer. Ex. A (Urena Depo.) at 35:12-36:5, 37:6-38:14. Disputed to the extent that the officers had no information that Mr. Urena was the subject of the tip or the registered owner of the car, and the officers had no photo of the driver or plate for the car. Ex. C (Estrella Depo.) at 11:5-12:3. |
| 5. | Plaintiff, who was driving without a valid driver's license, was armed with a .40 caliber handgun that was in the front pouch of his hooded sweatshirt. | Urena Depo. at 22:12-14, 46:2-25, Ex. 3. | Disputed to the extent that the officers had no information that Mr. Urena was the subject of the tip or the registered owner of the car, and the officers had no photo of the driver or plate for the car. |

- 4 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Ex. C (Estrella Depo.) at 11:5-12:3. |
| 6. | Around that time, Officers Davalos and Estrella observed plaintiff's Nissa Versa turn westbound onto 14th Street from K Street. | Davalos Decl. ¶ 6, Ex. 1; Estrella Decl. ¶ 6, Ex. 2; Davalos Depo. at 26:1-19, Ex. 7. | Undisputed. |
| 7. | The officers noticed that the Nissan had a cracked windshield – a possible violation of Vehicle Code section 26710. | Davalos Decl. ¶ 6, Ex. 1; Estrella Decl. ¶ 6, Ex. 2 | Undisputed for the purposes of this motion; however, noted that the BWC videos and dispatch tape do not reflect this. |
| 8. | As the officers followed the Nissan westbound on 14th Street, they also observed the Nissan fail to completely stop at an intersection stop | Davalos Decl. ¶ 6, Ex. 1; Estrella Decl. ¶ 6, Ex. 2; Davalos Depo. at 26:20-27:23, Ex. 7; Estrella Depo. at 12:13-24, Ex. | Undisputed for the purposes of this motion; however, noted that the BWC videos and dispatch tape do not reflect this. |

- 5 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | sign - a violation of Vehicle Code section 22450. | 8. | |
| 9. | Due to the traffic violation, the officers determined to initiate a traffic stop of the Nissan, and as the Nissan approached the intersection of 14th Street and Mount Vernon Avenue the officers activated their vehicle's overhead emergency lights and siren. | Davalos Decl. ¶ 7, Ex. 1; Estrella Decl. ¶ 7, Ex. 2; Urena Depo. at 43:14-44:8, 45:8-15, Ex. 3. | Undisputed for the purposes of this motion; however, noted that the BWC videos and dispatch tape do not reflect the traffic violations. |
| 10. | Officer Estrella, observing plaintiff reaching around inside the Nissan, says to Officer Davalos, "He's reaching." | Davalos Decl. ¶ 8, Ex. 1; Estrella Decl. ¶ 8, Ex. 2; Davalos BWC at 10:15:42, Ex. 4; Estrella BWC at 10:15:42, Ex. 5; | Undisputed that Estrella said this; however, noted that the BWC videos do not show Mr. Urena reaching around inside the Nissan. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | Estrella Depo. at 19:8-20:1, Ex. 8. | |
| 11. | The Nissan did not pull over, but instead ran the stop sign at 14th Street and Mount Vernon Avenue while turning northbound onto Mount Vernon. | Davalos Decl. ¶ 8, Ex. 1; Estrella Decl. ¶ 8, Ex. 2; Urena Depo. at 45:8-46:3, Ex. 3; Davalos Depo. at 27:24-28:12, Ex. 7. | Undisputed for the purposes of this motion; however, noted that the BWC videos and dispatch tape do not reflect the traffic violations. |
| 12. | After running that stop sign, plaintiff drove the Nissan in a northwest direction, crossing into the opposing southbound traffic lanes until he abandoned the Nissan along the westside curb in front of a driveway leading to a vacant lot between 14th Street and | Davalos Decl. ¶ 8, Ex. 1; Estrella Decl. ¶ 8, Ex. 2. | Undisputed for the purposes of this motion; however, noted that the BWC videos and dispatch tape do not reflect the traffic violations. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | Magnolia Avenue. | | |
| 13. | Plaintiff then proceeded to flee on foot westbound through the vacant lot while grabbing at his waistband with both hands. | Davalos Decl. ¶ 8-9, Ex. 1; Estrella Decl. ¶ 8-9, Ex. 2; Davalos BWC at 10:15:54-57, Ex. 4; Estrella BWC at 10:15:53-57, Ex. 5; Davalos Depo. at 29:21-30:10, Ex. 7; Estrella Depo. at 14:24-15:12, 19:8-20:1, Ex. 8. | Disputed to the extent that Mr. Urena testified that he was holding his pants up. Ex. A (Urena Depo.) at 53:9-54:11. Disputed to the extent that the BWC videos are unclear as to whether Mr. Urena was grabbing at his waistband with both hands. Def. Ex. 4 (Davalos BWC Video) at 0:40 – 0:57; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:00. |
| 14. | Officers Davalos and Estrella exited their police vehicle and pursued plaintiff on foot. | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:15:54-57, Ex. 4; Estrella BWC at 10:15:53-57, | Disputed to the extent that a reasonable police officer in the position of Davalos and Estrella would not have pursued Mr. Urena on foot without cover if they thought he had a gun. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | Ex. 5; Davalos Depo. at 29:21-30:10, Ex. 7. | Bryce Decl. at ¶ 14. Police officers are trained that if they are in a foot pursuit, following someone with a gun, they should try to take cover. Ex. C (Estrella Depo.) at 17:6-13. Police officers are trained that if they are in a foot pursuit, following someone with a gun, they should try to set up containment or a perimeter with the assistance of backup officers. Ex. C (Estrella Depo.) at 17:14-18:15. |
| 15. | Officer Estrella yelled to plaintiff, "Hey, let me see your hands!" | Davalos BWC at 10:15:53, Ex. 4; Estrella BWC at 10:15:53, Ex. 5. | Undisputed. |
| 16. | Plaintiff continued running westbound | Davalos BWC at 10:15:53-58, Ex. | Disputed to the extent that Mr. Urena testified that he |

- 9 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | into the vacant lot while grabbing near his waistband with both hands. | 4; Estrella BWC at 10:15:53-58, Ex. 5; Davalos Depo. at 29:21-31:11, Ex. 7. | was holding his pants up. Ex. A (Urena Depo.) at 53:9-54:11. Disputed to the extent that the BWC videos are unclear as to whether Mr. Urena was grabbing at his waistband with both hands. Def. Ex. 4 (Davalos BWC Video) at 0:40 – 0:57; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:00. |
| 17. | Officer Davalos radios to dispatch that the officers are in a foot pursuit while Officer Estrella yells at plaintiff, "Let me see your fucking hands!" | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:15:53-58, Ex. 4; Estrella BWC at 10:15:53-58, Ex. 5; Estrella Depo. at 19:4-7, Ex. 8. | Disputed to the extent that the officers did not notify dispatch that they were chasing someone that they believed had a gun. Ex. C (Estrella Depo.) at 16:17-17:5; Ex. D (Davalos Depo.) at 47:23-48:6, 48:19-22, 77:25-78:12. |
| 18. | Around this time, | Davalos Decl. ¶ | Disputed. |

- 10 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
|  | plaintiff's right elbow shifted outward and slightly upward as his left arm shifted inward toward the front of his body the officers observed plaintiff grab a firearm from his waistband area, while continuing to run westbound into the vacant lot towards a residential properties. | 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos Depo. at 33:17-35:12, Ex. 7; Estrella Depo. at 16:14-20, 27:18-28:12, Ex. 8. | Mr. Urena testified that he did not pull the gun out while he was running through the lot. Ex. A (Urena Depo.) at 54:6-11. Mr. Urena testified that he was holding his pants up. Ex. A (Urena Depo.) at 53:9-54:11. The videos do not show a gun in Mr. Urena's hands during the foot pursuit. Ex. A (Urena Depo.) at 26:14-20; Def. Ex. 4 (Davalos BWC Video) at 0:40 – 0:57; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:00; Ex. B (Held Depo.) at 19:16-21, 20:18-24. |
| 19. | After seeing the firearm, the officers | Davalos Decl. ¶ 9, Ex. 1; Estrella | Disputed. Mr. Urena testified that he |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | slowed and unholstered their firearms while shouting additional commands for plaintiff to show his hands and to stop reaching. | Decl. ¶ 9, Ex. 2; Davalos BWC at 10:15:58-10:16:03, Ex. 4; Estrella BWC at 10:15:58-10:16:03, Ex. 5; Davalos Depo. at 38:20-39:15, 43:8-44:2, Ex. 7; Estrella Depo. at 19:4-7, Ex. 8. | did not pull the gun out while he was running through the lot. Ex. A (Urena Depo.) at 54:6-11. Mr. Urena testified that he was holding his pants up. Ex. A (Urena Depo.) at 53:9-54:11. The videos do not show a gun in Mr. Urena's hands during the foot pursuit. Ex. A (Urena Depo.) at 26:14-20; Def. Ex. 4 (Davalos BWC Video) at 0:40 – 0:57; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:00; Ex. B (Held Depo.) at 19:16-21, 20:18-24. Undisputed that the officers gave these commands. |

- 12 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 20. | Plaintiff continued running through the vacant lot with his hands near his waistband area and then he turned to southwest towards an area where the corner of a residence's chain-link fence met a vacant field with tall, overgrown vegetation. | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:16:03-07, Ex. 4; Estrella BWC at 10:16:03-7, Ex. 5. | Disputed to the extent that Mr. Urena testified that he was holding his pants up. Ex. A (Urena Depo.) at 53:9-54:11. Otherwise, undisputed. |
| 21. | The officers continue to give commands to plaintiff to stop reaching and Officer Davalos tells Officer Estrella, "He's reaching." | Davalos Decl. ¶ 9, Ex. 1; Estrella Decl. ¶ 9, Ex. 2; Davalos BWC at 10:16:05, Ex. 4; Estrella BWC at 10:16:05, Ex. 5; Davalos Depo. at 38:20-39:15, Ex. 7. | Undisputed that the officers gave these commands. |
| 22. | Officer Davalos yells | Davalos BWC at | Undisputed. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
|  | to plaintiff, "Stop reaching.  You're gonna get fucking shot!", while Officer Estrella yells, "Stop reaching!" | 10:16:06-07, Ex. 4; Estrella BWC at 10:16:06-07, Ex. 5; Davalos Depo. at 38:20-39:15, Ex. 7. |  |
| 23. | As plaintiff ran from the officers, he did not say anything to them. | Davalos BWC at 10:16:06-07, Ex. 4; Estrella BWC at 10:16:06-07; Urena Depo. at 52:11-13, Ex. 3. | Undisputed. |
| 24. | As plaintiff reaches the overgrown field, he turned counterclockwise towards the officers with a dark-colored firearm in his right hand as if trying to target the officers. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos BWC at 10:16:09, Ex. 4; Estrella BWC at 10:16:09, Ex. 5; Still Photos at 1-3, Ex. 12; Davalos BWC Stabilized at 0:14, | Disputed. Mr. Urena testified that he discarded the gun prior to reaching the field, by tossing it over the fence. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:25-58:4, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
|  |  | Ex. 14; Davalos Depo. at 44:23-47:14, Ex. 7; Estrella Depo. at 32:5-10, 32:18-33:7, Ex. 8. | 111:10-14. Mr. Urena never turned towards the officers while holding the gun, and he never pointed the gun at the officers at any point. Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella Depo.) at 32:11-13, 44:24-45:4, 61:25-62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video) 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08. Defendants' expert Brady Held testified the videos do not show Mr. Urena pointing the gun at the officers or turning toward the officers with the gun in his hand coming in the direction of the officers. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Ex. B (Held Depo.) at 19:16-21, 20:18-24, 38:18-21. The gun was in a holster. Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. |
| 25. | Plaintiff then unexpectedly went down to the ground into the thick vegetation, which the officers feared was an attempt to achieve a concealed shooting position from which to ambush the officers. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos BWC at 10:16:09-10, Ex. 4; Estrella BWC at 10:16:09-10, Ex. 5; Davalos Depo. at 50:18-51:5, 57:11-58:13, 60:3-61:13, Ex. 7; Estrella Depo. at 33:21-34:1, Ex. 8. | Disputed that Mr. Urena unexpectedly went to the ground. Mr. Urena testified that he fell to the ground because he had been shot. Ex. A (Urena Depo.) at 58:5-14, 60:18-22, 105:23-106:14. According to Officer Estrella, he started shooting before Mr. Urena went to the ground. Ex. C (Estrella Depo.) at 36:8-13, 41:7-9, 42:3-5, 42:24-43:8. Disputed to the extent that a subjective fear or fear of |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | future harm is insufficient to justify a use of deadly force. Ex. C (Estrella Depo.) at 62:19-63:1; Ex. D (Davalos Depo.) at 98:4-20; Bryce Decl. at ¶ 3b-c. It was inappropriate for the Officers to believe that Mr. Urena went to the ground to gain a position of advantage and inappropriate for the Officers to believe that Mr. Urena was in a shooting position when he was down on the ground. Bryce Decl. at ¶ 9. A reasonable interpretation of Mr. Urena going to the ground is that Mr. Urena went to the ground to surrender, particularly in conjunction with the fact that he tossed the gun over the |

- 17 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | fence. Bryce Decl. at ¶ 9. The gun was in a holster. Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. |
| 26. | As the officers approach the overgrown field, Officer Davalos yelled, "He has a gun, he has a gun!" and Officer Estrella yells, "He has one!" | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos BWC at 10:16:10-11, Ex. 4; Estrella BWC at 10:16:10-11, Ex. 5; Davalos Depo. at 47:23-48:3, Ex. 7. | Undisputed that these are the words stated by the officers. Disputed to the extent that Mr. Urena testified that he did not have a gun when he was in the field—he had already tossed it over the fence. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. The gun was in a holster. Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of |

- 18 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | gun); Bryce Decl. at ¶ 13. |
| 27. | While parts of plaintiff's body were obscured by the overgrown vegetation, the officers observed plaintiff laying on the ground with his feet closer to the officers, about five to ten yards away, while facing the officers with his arms outstretched towards the direction of the officers. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Depo. at 52:6-21, 54:11-56:8, 62:11-64:3, 80:23-81:19, Ex. 7; Estrella Depo. at 41:10-42:2, 65:11-19, Ex. 8. | Disputed. Mr. Urena testified that when he was on the ground in the field, his hands were on the ground. Ex. A (Urena Depo.) at 62:3-11. Mr. Urena never turned towards the officers while holding the gun, and he never pointed the gun at the officers at any point. Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella Depo.) at 32:11-13, 61:25-62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video) 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08; Ex. B (Held Depo.) at 19:16- |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | 21, 20:18-24, 38:18-21. Davalos and Estrella knew that suspects sometimes try to toss the gun because they don't want to get caught with a gun. Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8. Officer Estrella testified in his deposition that he never saw a gun pointed at him after Mr. Urena went to the ground and testified that when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. Ex. C (Estrella Depo.) at 32:11-13, 62:9-15; Bryce Decl. at ¶ 12. Neither Officer Davalos nor |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Officer Estrella saw a gun in Mr. Urena's hand after Mr. Urena went to the ground. Ex. C (Estrella Depo.) at 32:11-13, 43:16-20, 65:15-66:1; Ex. D (Davalos Depo.) at 62:15-11-63:8, 64:23-65:6, 66:21, 81:15-19, 96:1-5. It was inappropriate for the Officers to believe that Mr. Urena was in a shooting position when he was down on the ground. Bryce Decl. at ¶ 9. A reasonable interpretation of Mr. Urena going to the ground is that Mr. Urena went to the ground to surrender, particularly in conjunction with the fact that he tossed the gun over the fence. |

- 21 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Bryce Decl. at ¶ 9. |
| 28. | Plaintiff, who was still armed with the handgun, then started to move his right arm in the officers' direction. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Slow BWC at 0:12-0:18, Ex. 13; Davalos Depo. at 80:23-81:19, Ex. 7. | Disputed. Mr. Urena testified that he did not have a gun when he was in the field—he had already tossed it over the fence. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. Mr. Urena never turned towards the officers while holding the gun, and he never pointed the gun at the officers at any point. Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Depo.) at 32:11-13, 61:25-62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video) 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08; Ex. B (Held Depo.) at 19:16-21, 20:18-24, 38:18-21. Mr. Urena testified that when he was on the ground in the field, his hands were on the ground. Ex. A (Urena Depo.) at 62:3-11. A reasonable interpretation of Mr. Urena going to the ground is that Mr. Urena went to the ground to surrender, particularly in conjunction with the fact that he tossed the gun over the fence. It was inappropriate for the Officers to believe that Mr. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Urena was in a shooting position when he was down on the ground. Bryce Decl. at ¶ 9. Bryce Decl. at ¶ 9. Defendants' expert Brady Held testified that the gun is visible in Officer Davalos' BWC video for only approximately 1/6 of a second, the first shot was fired approximately 1/15 of a second before Mr. Urena began to throw the gun over the fence, and the second shot was fired when the gun was leaving Mr. Urena's hand or in the air. Ex. B (Held Depo.) at 20:18-24, 25:6-10, 26:14-24, 30:19-23, 31:23-32:8, 32:21-33:10, 33:20-34:18. The gun was in a holster. Ex. C (Estrella Depo.) at 24:12- |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | 25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. |
| 29. | In fear of their lives, the officers fired at plaintiff. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2. | Disputed that the officers had an objectively reasonable belief that Mr. Urena posed an immediate threat of death or serious bodily injury. Based on police training on situational awareness, a reasonable police officer in the position of Officers Davalos and Estrella would have seen Mr. Urena toss the gun. Bryce Decl. at ¶ 11. Based on their experience as police officers, Officers Davalos and Estrella knew that suspects sometimes try to toss the gun because they don't want to get caught with a gun. |

- 25 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8; Bryce Decl. at ¶ 11. Basic police training and standards instruct that deadly force should only be used on the basis of an objectively reasonable belief that the suspect poses an immediate or imminent threat of death or serious bodily injury. Ex. D (Davalos Depo.) at 98:4-7; Bryce Decl. at ¶ 3a. A subjective fear is insufficient to justify the use of deadly force. Bryce Decl. at ¶ 3c. Police officers are trained that a threat of death or serious bodily injury is imminent when, based upon the totality of the |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. Ex. C (Estrella Depo.) at 62:19-63:1; Ex. D (Davalos Depo.) at 98:4-20; Bryce Decl. at ¶ 3b. Police officers, including Officers Davalos and |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Estrella, are trained that they cannot justify shooting a person for having a gun in their hand or for running away with a gun. Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos Depo.) at 18:1-10, 20:4-8, 36:25-37:4, 39:19-22; 49:11-15, 97:17-20, 99:12-21; Bryce Decl. at ¶ 4. The Officers agree that under the facts of this case, it would be inappropriate to shoot Mr. Urena for running, even with a gun in his hand. Bryce Decl. at ¶ 4. The Officers had no information that Mr. Urena had injured anyone, threatened anyone, or committed any violent crime. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Ex. C (Estrella Depo.) at 63:17-25; Ex. D (Davalos Depo.) at 38:1-19. Mr. Urena testified that he did not have a gun when he was in the field—he had already tossed it over the fence. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. Mr. Urena never turned towards the officers while holding the gun, and he never pointed the gun at the officers at any point. Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Depo.) at 32:11-13, 61:25-62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video); Def. Ex. 5 (Estrella BWC Video) at 1:00 – 1:08; Ex. B (Held Depo.) at 19:16-21, 20:18-24, 38:18-21. Mr. Held testified that the gun is visible in Officer Davalos' BWC video for only approximately 1/6 of a second, the first shot was fired approximately 1/15 of a second before Mr. Urena began to throw the gun over the fence, and the second shot was fired when the gun was leaving Mr. Urena's hand or in the air. Ex. B (Held Depo.) at 25:6-10, 26:14-24, 30:19-23, 31:23-32:8, 32:21-33:10, 33:20-34:18. Even on Defendants' facts, |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | all of the shots were fired when Mr. Urena was on the ground, and the majority of the shots were fired after Mr. Urena discarded the gun. Ex. B (Held Depo.) at 20:18-24, 25:16-24, 27:9-18, 33:16-19, 34:13-18, 41:20-42:5. It was inappropriate for the Officers to believe that Mr. Urena was in a shooting position when he was down on the ground. Bryce Decl. at ¶ 9. A reasonable interpretation of Mr. Urena going to the ground is that Mr. Urena went to the ground to surrender, particularly in conjunction with the fact that he tossed the gun over the fence. Bryce Decl. at ¶ 9. |

- 31 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Officer Estrella testified in his deposition that he never saw a gun pointed at him after Mr. Urena went to the ground and testified that when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. Ex. C (Estrella Depo.) at 32:11-13, 62:9-15; Bryce Decl. at ¶ 12. Police officers are trained that they are responsible for justifying every shot when they use deadly force. Ex. C (Estrella Depo.) at 64:11-13; Bryce Decl. at ¶ 3f. After the shooting, the gun was found in a holster, on the other side of the fence. Ex. C (Estrella Depo.) at |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
|  |  |  | 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. The officers agree that in order for the gun to have ended up over the fence, Mr. Urena would have had to have tossed it over the fence. Ex. C (Estrella Depo.) at 47:7-11, 48:5-13. |
| 30. | Just after the first shots were fired, and as plaintiff's right arm is raising up, the gun leaves plaintiff's right hand and travels upward. | Davalos Slow BWC at 0:13-0:19, Ex. 13; Still Photos at 4-6, Ex. 12. | Disputed. Mr. Urena testified that he did not have a gun when he was in the field—he had already tossed it over the fence. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. Mr. Held testified that the gun is visible in Officer |

- 33 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Davalos' BWC video for only approximately 1/6 of one second, the first shot was fired approximately 1/15 of one second before Mr. Urena began to throw the gun over the fence, and the second shot was fired when the gun was leaving Mr. Urena's hand or in the air. Ex. B (Held Depo.) at 25:6-10, 26:14-24, 30:19-23, 31:23-32:8, 32:21-33:10, 33:20-34:18. Police officers, including Officers Davalos and Estrella, are trained that seeing a gun in a person's hand is an insufficient reason to justify the use of deadly force. Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Depo.) at 18:1-10, 20:4-8, 36:25-37:4, 39:19-22; 49:11-15, 97:17-20, 99:12-21; Bryce Decl. at ¶ 6. The Officers agree that under the facts of this case, it would be inappropriate to shoot Mr. Urena for running, even with a gun in his hand. Bryce Decl. at ¶ 4. Based on police training on situational awareness, a reasonable police officer in the position of Officers Davalos and Estrella would have seen Mr. Urena toss the gun. Bryce Decl. at ¶ 11. The Officers could not justify shooting Mr. Urena for tossing the gun. Bryce Decl. at ¶ 7. A reasonable interpretation of Mr. Urena going to the |

- 35 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | ground is that Mr. Urena went to the ground to surrender, particularly in conjunction with the fact that he tossed the gun over the fence.<br><br>Bryce Decl. at ¶ 9.<br><br>Officer Estrella testified in his deposition that he never saw a gun pointed at him after Mr. Urena went to the ground and testified that when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground.<br><br>Ex. C (Estrella Depo.) at 32:11-13, 62:9-15; Bryce Decl. at ¶ 9.<br><br>The gun was in a holster.<br>Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 31. | At no point during the course of the shooting did either officer see the gun leave plaintiff's hand. | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Depo. at 65:3-8, 75:2-76:5, Ex. 7; Estrella Depo. at 46:10-15, Ex. 8. | Disputed to the extent that police officers are trained to focus on the suspect's hands, particularly if the officer believes that the suspect is armed. Bryce Decl. at ¶ 11. Based on police training on situational awareness, a reasonable police officer in the position of Officers Davalos and Estrella would have seen Mr. Urena toss the gun. Bryce Decl. at ¶ 11. Estrella testified he did not have any visual obstructions when firing his shots. Ex. C (Estrella Depo.) at 50:16-25. Officers Estrella and Davalos were looking at Mr. Urena's hands during the time that they were firing the |

- 37 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | shots. Ex. C (Estrella Depo.) at 51:1-4; Ex. D (Davalos Depo.) at 64:4-22. Mr. Urena testified that when he was on the ground in the field, his hands were on the ground surface. Ex. A (Urena Depo.) at 62:3-11. The officers agree that in order for the gun to have ended up over the fence, Mr. Urena would have had to have tossed it over the fence. Ex. C (Estrella Depo.) at 47:7-11, 48:5-13. Based on their experience as police officers, Officers Davalos and Estrella knew that suspects sometimes try to toss the gun because they don't want to get caught with |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | a gun. Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8; Bryce Decl. at ¶ 11. Police officers, including Officers Davalos and Estrella, are trained that seeing a gun in a person's hand is an insufficient reason to justify the use of deadly force. Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos Depo.) at 18:1-10, 20:4-8, 36:25-37:4, 39:19-22; 49:11-15, 97:17-20, 99:12-21; Bryce Decl. at ¶ 6. Officer Estrella testified in his deposition that he never saw a gun pointed at him after Mr. Urena went to the ground and testified that |

- 39 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. Ex. C (Estrella Depo.) at 32:11-13, 62:9-15; Bryce Decl. at ¶ 12. |
| 32. | Due to seeing plaintiff continue to make furtive movements during the course of the shooting, and because the overgrown vegetation obscured parts of plaintiff's body, including his hands, and having not seen the gun leave his hands, the officers fired 18 shots each while reassessing | Davalos Decl. ¶ 10, Ex. 1; Estrella Decl. ¶ 10, Ex. 2; Davalos Depo. at 63:24-64:3, 65:1-25, 69:2-5, 84:22-85:4, Ex. 7; Estrella Depo. at 43:16-44:7, Ex. 8. | Disputed. "Furtive movements" are not seen on the videos. Def. Ex. 4 (Davalos BWC Video) at 0:57 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 1:00 – 1:08. Mr. Urena testified that he had already thrown the gun over the fence before any shots were fired. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, |

- 40 -

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | during the course of the shooting. | | 109:12-22, 110:14-19, 111:10-14. A reasonable interpretation of Mr. Urena going to the ground is that Mr. Urena went to the ground to surrender, particularly in conjunction with the fact that he tossed the gun over the fence. Bryce Decl. at ¶ 9. Police officers are trained to focus on the suspect's hands, particularly if the officer believes that the suspect is armed. Bryce Decl. at ¶ 11. Based on police training on situational awareness, a reasonable police officer in the position of Officers Davalos and Estrella would have seen Mr. Urena toss the gun. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Bryce Decl. at ¶ 11. Based on their experience as police officers, Officers Davalos and Estrella knew that suspects sometimes try to toss the gun because they don't want to get caught with a gun. Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8; Bryce Decl. at ¶ 11. Police officers, including Officers Davalos and Estrella, are trained that seeing a gun in a person's hand is an insufficient reason to justify the use of deadly force. Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos Depo.) at 18:1-10, 20:4-8, 36:25-37:4, 39:19-22; 49:11-15, 97:17-20, 99:12-21; |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Bryce Decl. at ¶ 6. It was inappropriate for the Officers to believe that Mr. Urena was in a shooting position when he was down on the ground. Bryce Decl. at ¶ 9. Mr. Urena testified that when he was on the ground in the field, his hands were on the ground. Ex. A (Urena Depo.) at 62:3-11. Police officers are trained that they are responsible for justifying every shot when they use deadly force. Ex. C (Estrella Depo.) at 64:11-13; Bryce Decl. at ¶ 3f. Mr. Held testified that the gun is visible in Officer Davalos' BWC video for only approximately 1/6 of a |

- 43 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | second, the first shot was fired approximately 1/15 of a second before Mr. Urena began to throw the gun over the fence, and the second shot was fired when the gun was leaving Mr. Urena's hand or in the air. Ex. B (Held Depo.) at 20:18-24, 25:6-10, 26:14-24, 30:19-23, 31:23-32:8, 32:21-33:10, 33:20-34:18; Bryce Decl. at ¶ 7. Even on Defendants' facts, all of the shots were fired when Mr. Urena was on the ground, and the majority of the shots were fired after Mr. Urena discarded the gun. Ex. B (Held Depo.) at 25:6-10, 26:14-24, 30:19-23, 31:23-32:8, 32:21-33:10, 33:20-34:18. Estrella testified he did not |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | have any visual obstructions when firing his shots. Ex. C (Estrella Depo.) at 50:16-25. Officers Estrella and Davalos were looking at Mr. Urena's hands during the time that they were firing the shots. Ex. C (Estrella Depo.) at 51:1-4; Ex. D (Davalos Depo.) at 64:4-22. Neither Officer Davalos nor Officer Estrella saw a gun in Mr. Urena's hand after Mr. Urena went to the ground. Ex. C (Estrella Depo.) at 32:11-13, 43:16-20, 65:15-66:1; Ex. D (Davalos Depo.) at 62:15-11-63:8, 64:23-65:6, 66:21, 81:15-19, 96:1-5. Mr. Urena never turned |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | towards the officers while holding the gun, and he never pointed the gun at the officers at any point. Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella Depo.) at 32:11-13, 61:25-62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video) 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08; Ex. B (Held Depo.) at 19:16-21, 38:18-21. Officer Estrella testified in his deposition that he never saw a gun pointed at him after Mr. Urena went to the ground and testified that when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | ground. Ex. C (Estrella Depo.) at 32:11-13, 62:9-15; Bryce Decl. at ¶ 12. After the shooting, the gun was found in a holster, on the other side of the fence. Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. The Officers agree that in order for the gun to have ended up over the fence, Mr. Urena would have had to have tossed it over the fence. Ex. C (Estrella Depo.) at 47:7-11, 48:5-13. Basic police training and standards instruct that deadly force should only be used on the basis of an objectively reasonable belief that the suspect poses an immediate |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | or imminent threat of death or serious bodily injury. Ex. D (Davalos Depo.) at 98:4-7; Bryce Decl. at ¶ 3a. Pursuant to police standards and training, a subjective fear is insufficient to justify the use of deadly force. Bryce Decl. at ¶ 3c. Police officers are trained that a threat of death or serious bodily injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent |

- 48 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. Ex. C (Estrella Depo.) at 62:19-63:1; Ex. D (Davalos Depo.) at 98:4-20; Bryce Decl. at ¶ 3b. |
| 33. | Plaintiff did not say anything to the officers during the course of the shooting. | Urena Depo. at 62:18-63:2, Ex. 3. | Undisputed. |
| 34. | Officer Davalos radioed to dispatch, "Shots fired." | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:16:30, Ex. 4; Estrella BWC at | Undisputed. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | 10:16:30, Ex. 5. | |
| 35. | Officer Davalos ordered plaintiff to stop reaching and put his hands behind his head, while Officer Estrella radioed to dispatch their location. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:16:36-39, Ex. 4; Estrella BWC at 10:16:38-49, Ex. 5; Davalos Depo. at 69:8-70:2, 81:25-82:9, Ex. 7. | Undisputed that the officers made these statements. Disputed that it was reasonable for the Officers to believe Mr. Urena was "reaching" for something. Mr. Urena testified that he had already thrown the gun over the fence before any shots were fired. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. Officer Estrella testified in his deposition that he never saw a gun pointed at him after Mr. Urena went to the |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | ground and testified that when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. Ex. C (Estrella Depo.) at 32:11-13, 62:9-15; Bryce Decl. at ¶ 12. Neither Officer Davalos nor Officer Estrella saw a gun in Mr. Urena's hand after Mr. Urena went to the ground. Ex. C (Estrella Depo.) at 32:11-13, 43:16-20, 65:15-66:1; Ex. D (Davalos Depo.) at 62:15-11-63:8, 64:23-65:6, 66:21, 81:15-19, 96:1-5. Even on Defendants' facts, all of the shots were fired when Mr. Urena was on the ground, and the majority of the shots were fired after Mr. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
|  |  |  | Urena discarded the gun. Ex. B (Held Depo.) at 25:6-10, 26:14-24, 30:19-23, 31:23-32:8, 32:21-33:10, 33:20-34:18. Based on police training on situational awareness, a reasonable police officer in the position of Officers Davalos and Estrella would have seen Mr. Urena toss the gun. Bryce Decl. at ¶ 11. |
| 36. | The officers then approached plaintiff's location, at which point Officer Estrella handcuffed plaintiff. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:16:56-10:17:30, Ex. 4; Estrella BWC at 10:16:38-49, Ex. 5. | Undisputed. |
| 37. | As soon as plaintiff was in secured in | Davalos Decl. ¶ 11, Ex. 1; Estrella | Undisputed. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | handcuffs, Officer Davalos radioed to dispatch that the suspect was in custody and requested dispatch send medical assistance. | Decl. ¶ 11, Ex. 2; Davalos BWC at 10:17:35, Ex. 4; Estrella BWC at 10:17:35, Ex. 5. | |
| 38. | Officer Estella conducted a cursory search of plaintiff, finding needles and drug paraphernalia. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos BWC at 10:18:38-45, Ex. 4; Estrella BWC at 10:18:38-45, Ex. 5 | Undisputed. |
| 39. | Plaintiff told the officers that he was shot in the stomach. | Davalos BWC at 10:18:34, 10:18:54, Ex. 4; Estrella BWC at 10:18:34, 10:18:54, Ex. 5; Davalos Depo. at 70:24-71:3, Ex. 7. | Undisputed. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 40. | Officer Estrella searched through the overgrown vegetation area around plaintiff looking for, and expecting to find, plaintiff's firearm but did not find it. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Estrella BWC at 10:18:58-10:21:20, Ex. 5; Estrella Depo. at 48:5-13, Ex. 8. | Disputed that a reasonable officer in the position of Officers Davalos and Estrella would have expected to find a gun. Based on police training on situational awareness, a reasonable police officer in the position of Officers Davalos and Estrella would have seen Mr. Urena toss the gun. Bryce Decl. at ¶ 11. Mr. Urena testified that he discarded the gun prior to reaching the field and prior to any shots being fired. Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Based on their experience as police officers, Officers Davalos and Estrella knew that suspects sometimes try to toss the gun because they don't want to get caught with a gun. Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8; Bryce Decl. at ¶ 11. Estrella testified he did not have any visual obstructions when firing his shots. Ex. C (Estrella Depo.) at 50:16-25. Officers Estrella and Davalos were looking at Mr. Urena's hands during the time that they were firing the shots. Ex. C (Estrella Depo.) at 51:1-4; Ex. D (Davalos |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Depo.) at 64:4-22. Neither Officer Davalos nor Officer Estrella saw a gun in Mr. Urena's hand after Mr. Urena went to the ground. Ex. C (Estrella Depo.) at 43:16-20, 65:15-66:1; Ex. D (Davalos Depo.) at 62:15-11-63:8, 64:23-65:6, 66:21, 81:15-19, 96:1-5. Officer Davalos did not see a gun in Mr. Urena's hand at any point during the shooting sequence. Ex. D (Davalos Depo.) at 64:11-65:66:21. Mr. Held testified that the gun is visible in Officer Davalos' BWC video for only approximately 1/6 of one second, the first shot was fired approximately 1/15 of one second before Mr. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Urena began to throw the gun over the fence, and the second shot was fired when the gun was leaving Mr. Urena's hand or in the air. Ex. B (Held Depo.) at 25:6-10, 26:14-24, 30:19-23, 31:23-32:8, 32:21-33:10, 33:20-34:18. |
| 41. | The officers later learned that the 0.40 caliber handgun was recovered in the backyard of the residence next to which plaintiff was located when laying the bushes (1335 W. Magnolia Ave), and that DNA on the handgun matched plaintiff's. | Davalos Decl. ¶ 13, Ex. 1; Estrella Decl. ¶ 13, Ex. 2; DNA Lab Results, Ex. 6; Davalos Depo. at 88:7-9, Ex. 7; Estrella Depo. at 39:7-22, Ex. 8. | Disputed to the extent that the gun was located on the other side of the fence, some distance from Mr. Urena, in a holster. Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. Disputed that the DNA analysis conclusively confirms that it was Mr. Urena's DNA. |

- 57 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 42. | The officers would not have fired at plaintiff if they had seen plaintiff toss the gun away. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2; Davalos Depo. at 75:2-76:5, Ex. 7; Estrella Depo. at 43:21-44:7, 46:10-15, Ex. 8 | Disputed to the extent that a reasonable officer in the position of Officers Davalos and Estrella would have recognized that Mr. Urena was unarmed at the time of at least the majority of the shots. Police officers are trained to focus on the suspect's hands, particularly if the officer believes that the suspect is armed. Bryce Decl. at ¶ 11. Based on police training on situational awareness, a reasonable police officer in the position of Officers Davalos and Estrella would have seen Mr. Urena toss the gun. Bryce Decl. at ¶ 11. Based on their experience as police officers, Officers |

- 58 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Davalos and Estrella knew that suspects sometimes try to toss the gun because they don't want to get caught with a gun. Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8; Bryce Decl. at ¶ 11. Estrella testified he did not have any visual obstructions when firing his shots. Ex. C (Estrella Depo.) at 50:16-25. Officers Estrella and Davalos were looking at Mr. Urena's hands during the time that they were firing the shots. Ex. C (Estrella Depo.) at 51:1-4; Ex. D (Davalos Depo.) at 64:4-22. Neither Officer Davalos nor |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Officer Estrella saw a gun in Mr. Urena's hand after Mr. Urena went to the ground. Ex. C (Estrella Depo.) at 43:16-20, 65:15-66:1; Ex. D (Davalos Depo.) at 62:15-11-63:8, 64:23-65:6, 66:21, 81:15-19, 96:1-5. Officer Davalos did not see a gun in Mr. Urena's hand at any point during the shooting sequence. Ex. D (Davalos Depo.) at 64:11-65:66:21. Mr. Urena never turned towards the officers while holding the gun, and he never pointed the gun at the officers at any point. Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella Depo.) at 32:11-13, 61:25- |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | 62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video); Def. Ex. 5 (Estrella BWC Video) at 1:00 – 1:08. Even on Defendants' facts, all of the shots were fired when Mr. Urena was on the ground, and the majority of the shots were fired after Mr. Urena discarded the gun. Ex. B (Held Depo.) at 25:16-24, 27:9-18, 33:16-19, 34:13-18, 41:20-42:5. Officer Estrella testified in his deposition that he never saw a gun pointed at him after Mr. Urena went to the ground and testified that when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. Ex. C (Estrella Depo.) at |

- 61 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | 32:11-13, 62:9-15; Bryce Decl. at ¶ 12. |
| 43. | A search of plaintiff's vehicle found approximately 278 ammo cartridges of various caliber were located in a bag in the trunk of the vehicle along with a firearm magazine. | Davalos Decl. ¶ 13, Ex. 1; Estrella Decl. ¶ 13, Ex. 2. | Undisputed for the purposes of this motion. |
| 44. | Paramedics ultimately arrived at the scene and took plaintiff to the hospital. | Davalos Decl. ¶ 11, Ex. 1; Estrella Decl. ¶ 11, Ex. 2. | Undisputed. |
| 45. | Criminal proceedings were brought against plaintiff on charges of, among others, Penal Code section 245 (assault with a deadly weapon), Penal Code section | Criminal Docket, Ex. 9; Felony Complaint, Ex. 10. | Undisputed. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| D's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
|  | 29800 (felon in possession of a firearm), and Penal Code section 2800.1 (evading police in a motor vehicle). |  |  |
| 46. | On or around June 18, 2024, plaintiff entered into a plea agreement where he plead guilty to felon in possession of firearm and evading police. | Plea Agreement, Ex. 15. | Undisputed. |

| Pl.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| | Background Information | |
| 47. | Prior to the incident, the officers had never seen Mr. Urena before and had no knowledge of whether Mr. Urena had a criminal history. | Ex. C (Estrella Depo.) at 12:4-12; Ex. D (Davalos Depo.) at 38:1-19. |
| 48. | The officers had no information that Mr. Urena had injured anyone, | Ex. C (Estrella Depo.) at 63:17-25; Ex. D (Davalos |

- 63 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| | | threatened anyone, or committed any violent crime. | Depo.) at 38:1-19. |
| | 49. | The officers had no information that Mr. Urena was the subject of the tip or the registered owner of the car, and the officers had no photograph of the driver of the Nissan and no license plate number for the Nissan. | Ex. C (Estrella Depo.) at 11:5-12:3. |
| | 50. | The officers had no information that Mr. Urena was affiliated with any gang. | Ex. D (Davalos Depo.) at 38:16-19. |
| | 51. | Mr. Urena was in the area driving to see his son after visiting a who was suffering from cancer. | Ex. A (Urena Depo.) at 35:12-36:5, 37:6-38:14. |
| The Foot Pursuit and the Shooting | | | |
| | 52. | The officers made a poor tactical decision when they pursued Mr. Urena on foot without cover when they had information that he may be armed. | Bryce Decl. at ¶ 16. |
| | 53. | Police officers are trained that if they are in a foot pursuit, following someone with a gun, they should try to take cover, create distance, and call for backup. | Ex. C (Estrella Depo.) at 17:6-13; Bryce Decl. at ¶ 16. |
| | 54. | Police officers are trained that if they | Ex. C (Estrella Depo.) at |

- 64 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| | | are in a foot pursuit, following someone with a gun, they should try to set up containment or a perimeter with the assistance of backup officers. | 17:14-18:15; Bryce Decl. at ¶ 16. |
| | 55. | At the time that the officers claim they first saw a gun on Urena's person, they did not take cover, yell out "gun" or notify dispatch that they were chasing someone that they believed had a gun | Ex. C (Estrella Depo.) at 16:17-17:5, 30:23-25;; Ex. D (Davalos Depo.) at 47:23-48:6, 48:19-22, 77:25-78:12; Def. Ex. 4 (Davalos BWC Video) at 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08; Bryce Decl. at ¶ 16. |
| | 56. | Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for the officers to shoot at Mr. Urena for fleeing or for running away, even with a gun in his hand. | Bryce Decl. at ¶ 4; Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos Depo.) at 18:1-10, 20:4-8, 36:25-37:4, 39:19-22; 49:11-15, 97:17-20, 99:12-21. |
| | 57. | Police officers, including Officers Davalos and Estrella, are trained that seeing a gun in a suspect's hand is not a sufficient justification to use deadly force against that suspect. | Bryce Decl. at ¶ 6; Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos Depo.) at 18:1-6, 20:4-8, 36:25-37:4, 97:17-20, 99:12-21. |
| | 58. | Police officers, including Officers | Ex. C (Estrella Depo.) at |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| | | Davalos and Estrella, are trained that they cannot justify shooting a person for running away, even if the person has a gun. | 63:2-7; Ex. D (Davalos Depo.) at 18:7-10, 20:4-8, 36:25-37:4, 39:19-22, 49:11-15; Bryce Decl. at ¶ 4. |
| | 59. | Mr. Urena never pointed the gun at the officers and never turned toward the officers with the gun in his hand at any time. | Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella Depo.) at 32:11-13, 44:24-45:4, 61:25-62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video) 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08; Ex. B (Held Depo.) at 19:16-21, 38:18-21. |
| | 60. | It was inappropriate for the officers to believe that Mr. Urena went to the ground to gain a position of advantage. | Bryce Decl. at ¶ 9. |
| | 61. | A reasonable interpretation of Urena going to the ground is that he went to the ground to surrender, particularly when viewed in conjunction with the fact that Urena tossed the gun over the fence. | Bryce Decl. at ¶ 9. |
| | 62. | All of the shots were fired when Mr. Urena was on the ground. | Ex. B (Held Depo.) at 25:16-24, 27:9-18, 33:16-19; Ex. C |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| | | (Estrella Depo.) at 42:3-5, 42:24-43:8, 49:19-22, 50:6-8, 62:9-15, 65:4-10; Ex. D (Davalos Depo.) at 40:18-41:1, 66:15-21; Def. Ex. 4 (Davalos BWC Video) at 0:57 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 1:00 – 1:08; Bryce Decl. at ¶ 8. |
| 63. | When Officer Estrella paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. | Ex. C (Estrella Depo.) at 62:9-15; Bryce Decl. at ¶ 12. |
| 64. | Mr. Urena testified that he had already thrown the gun over the fence before any shots were fired. | Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. |
| 65. | It would be inappropriate for the officers to shoot Mr. Urena for tossing the gun. | Bryce Decl. at ¶ 7. |
| 66. | Based on their experience as police officers, Davalos and Estrella knew that when a subject is running with a | Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8; |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| | | gun, the subject might try to toss the gun because they do not want to get caught with a gun. | Bryce Decl. at ¶ 11. |
| | 67. | Pursuant to police training on situational awareness, a reasonable officer in the position of Estrella and Davalos would have seen that Mr. Urena tossed the gun, when they had an unobstructed view a short distance behind Mr. Urena. | Bryce Decl. at ¶ 11. |
| | 68. | Even according to Defendants' expert Mr. Held, at least 34 shots were shots were fired after Mr. Urena discarded the gun. | Ex. B (Held Depo.) at 27:9-18, 33:16-19, 34:13-18, 35:25-36:19, 41:20-42:5; Bryce Decl. at ¶ 7. |
| | 69. | Defendants' expert Brady Held testified that the gun is visible only in Officer Davalos' BWC video and only for only approximately 1/6 of one second. | Ex. B (Held Depo.) at 20:18-24, 26:14-24, 31:23-32:8. |
| | 70. | Mr. Held testified that, based on the video, the first shot was fired approximately 1/15 of one second before Mr. Urena began to throw the gun over the fence. | Ex. B (Held Depo.) at 27:9-18, 30:19-23, 32:21-33:10, 33:20-34:18, 35:25-36:19, 41:8-19. |
| | 71. | Mr. Held testified that, based on the video, and the second shot was fired | Ex. B (Held Depo.) at 27:9-18, 32:21-33:10, 33:20- |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| | when the gun was leaving Mr. Urena's hand or was in the air. | 34:18, 35:25-36:19, 41:8-19. |
| 72. | Police officers are trained that they must reassess when they are firing shots. | Bryce Decl. at ¶ 12. |
| 73. | A reasonably well-trained police officer in the position of Officer Davalos and Officer Estrella would have reassessed multiple times during the shooting sequence and would have recognized that Mr. Urena was unarmed during at least 34 or 35 of the shots. | Bryce Decl. at ¶ 12. |
| 74. | Officers Estrella and Davalos were looking at Mr. Urena's hands during the time that they were firing the shots. | Ex. C (Estrella Depo.) at 51:1-4; Ex. D (Davalos Depo.) at 64:4-22. |
| 75. | Neither Officer Davalos nor Officer Estrella saw a gun in Mr. Urena's hand after Mr. Urena went to the ground. | Ex. C (Estrella Depo.) at 43:16-20, 65:15-66:1; Ex. D (Davalos Depo.) at 62:15-11-63:8, 64:23-65:6, 66:21, 81:15-19, 96:1-5. |
| 76. | It was inappropriate for the officers to believe that Mr. Urena was in a shooting position when he was on the ground. | Bryce Decl. at ¶ 9. |
| 77. | Mr. Urena testified that when he was | Ex. A (Urena Depo.) at 62:3- |

- 69 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | on the ground in the field, his hands were on the ground. | 11. |
|---|---|---|---|
| | 78. | Officer Estrella specifically testified he did not have any visual obstructions when firing his shots, he never saw a gun pointed at him after Mr. Urena went to the ground, and when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. | Ex. C (Estrella Depo.) at 32:11-13, 50:16-25, 62:9-15. |
| | 79. | The Officers may have engaged in "reactionary shooting" or "contagious fire," given number of shots that were fired (36), and particularly given the number of shots that were fired when Mr. Urena was unarmed and on the ground. | Bryce Decl. at ¶ 15. |
| | 80. | Neither officer ever gave Mr. Urena the command "drop it." | Ex. C (Estrella Depo.) at 28:18-19, 37:1-5, 52:11-16; Ex. D (Davalos Depo.) at 48:23-25, 94:6-9; Def. Ex. 4 (Davalos BWC Video) at 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08. |
| | 81. | The officers did not give any commands during the shooting | Ex. D (Davalos Depo.) at 69:5-7. |

- 70 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| | sequence. | |
| 82. | Police officers are trained to give a verbal warning prior to using deadly force, when feasible. | Ex. C (Estrella Depo.) at 64:5-7; Bryce Decl. at ¶ 3i. |
| 83. | Officer Estrella did not give Mr. Urena a verbal warning that he was prepared to use deadly force before shooting him. | Ex. C (Estrella Depo.) at 37:1-5; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08. |
| **After the Shooting** | | |
| 84. | After the shooting, Officers Davalos and Estrella looked for the gun in the immediate vicinity of Mr. Urena, and they did not locate a gun. | Ex. C (Estrella Depo.) at 48:5-13; Ex. D (Davalos Depo.) at 75:11-15, 76:6-8, 88:7-9; (Estrella BWC Video) at 4:57 – 5:05. |
| 85. | After the shooting, the gun was found in a holster, on the other side of the fence. | Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. |
| 86. | The officers agree that in order for the gun to have ended up over the fence, Mr. Urena would have had to have tossed it over the fence. | Ex. C (Estrella Depo.) at 47:7-11, 48:5-13. |
| 87. | The officers did not see Mr. Urena toss a gun after they shot him. | Ex. D (Davalos Depo.) at 75:19-24. |
| 88. | Officer Davalos did not tell anyone at the scene that Mr. Urena had pointed a gun at him. | Ex. D (Davalos Depo.) at 75:4-6. |

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | Police Standards and Training | |
|---|---|---|
| 89. | Basic police training and standards instruct that deadly force should only be used on the basis of an objectively reasonable belief that the suspect poses an immediate or imminent threat of death or serious bodily injury. | Ex. D (Davalos Depo.) at 98:4-7; Bryce Decl. at ¶ 3a. |
| 90. | Police officers are trained that a threat of death or serious bodily injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. | Ex. C (Estrella Depo.) at 62:19-63:1; Ex. D (Davalos Depo.) at 98:4-20; Bryce Decl. at ¶ 3b. |
| 91. | Police officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. | Bryce Decl. at ¶ 3b. |
| 92. | Pursuant to police training and | Bryce Decl. at ¶ 3c. |

- 72 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| | | standards, a subjective fear is insufficient to justify the use of deadly force. | |
| | 93. | Police officers are trained with respect to situational awareness. | Bryce Decl. at ¶ 11. |
| | 94. | Police officers are trained to focus on the suspect's hands, particularly if the officer believes that the suspect is armed. | Bryce Decl. at ¶ 11. |
| | 95. | Basic police training teaches that that a suspect's failure to comply with officer commands alone is an insufficient basis for the use of deadly force. | Bryce Decl. at ¶ 3d. |
| | 96. | Police officers are trained that deadly force should only be used when no reasonable alternative measures are available. | Ex. C (Estrella Depo.) at 64:1-4; Bryce Decl. at ¶ 3h. |
| | 97. | Basic police training teaches that an overreaction in using deadly force is excessive force. | Bryce Decl. at ¶¶ 15, 3g. |
| | 98. | Police officers are trained that they are responsible for justifying every shot when they use deadly force. | Ex. C (Estrella Depo.) at 64:11-13; Bryce Decl. at ¶ 3f. |
|  | **The Shooting Was Inappropriate and Contrary to Police Standards and Training** |
| | 99. | From the standpoint of police practices, Officers Estrella's and | Bryce Decl. at ¶ 17. |

- 73 -

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

Davalos' uses of deadly force were improper, inappropriate and contrary to POST standards and basic police training, including for the following reasons: (1) there was no "immediate defense of life" situation at the time of the shots; (2) a subjective fear or fear of future harm is insufficient to justify the use of deadly force; (3) on Plaintiff's facts, Mr. Urena was unarmed during all of the shots, and according to Defendant's expert, Mr. Urena was unarmed during at least 34 of the shots; (4) all 36 shots were fired when Mr. Urena was on the ground; (5) a gun in the hand is insufficient to justify a use of deadly force, and Mr. Urena never pointed the gun at the officers and never turned toward the officers with the gun, and the gun was in a holster; (6) the officers could not justify shooting Mr. Urena for fleeing or running away with a gun in his hand; (7) Mr. Urena committed no crime involving the infliction of serious injury or death; (8) Mr. Urena made

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

|  |  |  |
|---|---|---|
| | no verbal threats; (9) the officers had reasonable alternative measures rather than shooting; (10) the officers showed no reverence for human life when they shot Mr. Urena 36 times; (11) officers are responsible for justifying every shot, and none of the shots are justified, and certainly not the 34 or 35 shots fired while Urena was unarmed and on the ground; (12) given the number of shots, particularly the number of shots fired when Mr. Urena was unarmed and on the ground, this appears to be a case of contagious fire. | |

## PLAINTIFF'S RESPONSES TO DEFENDANTS' CONCLUSIONS OF LAW

1. Plaintiff's Claim for Excessive Force under 42 U.S.C. § 1983 survives because the material facts clearly establish that the force used by Officers Davalos and Estrella against the plaintiff was objectively unreasonable. Fourth Amendment claims for excessive force are judged by "whether the officers' actions [we]re 'objectionably reasonable'" given "the facts and circumstances confronting them." *Graham v. Conner*, 490 U.S. 386, 397 (1989). "[T]he most important *Graham* factor is whether the suspect posed an immediate threat" of death or serious bodily injury at the time that deadly force was employed. *Mattos v. Agorano*, 661 F.3d 433, 441 (9th Cir. 2011). A "statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). An officer's "desire to resolve quickly a potentially dangerous situation" does not justify deadly force, nor does the fact that a suspect possesses a weapon or what appears to be a weapon. *Id.*; *Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024) ("We have held over and over that a suspect's possession of a gun does not itself justify deadly force.")

The undisputed facts are so strong that Plaintiff should have filed a motion for summary judgment in his favor, and summary judgment should be granted in Plaintiff's favor if this Court deems it appropriate. Where the facts are disputed, this Court must resolve all disputes in Plaintiff's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Disputed issues of material fact must be resolved by a jury, which is even more of a reason for this Court to deny Defendants' motion.

2.     Officers Davalos and Estrella are not entitled to qualified immunity for Plaintiff's Excessive Force claim under 42 U.S.C. § 1983. Qualified immunity does not apply to the state law claims.

First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See, e.g.*, *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds."); *Villanueva v. California*, 986 F.3d 1158, 1173 (9th Cir. 2021); *Longoria v. Pinal County*, 873 F.3d 699, 710 (9th Cir. 2017) ("Where the facts are disputed, their resolution and determinations of credibility 'are manifestly the province of a jury.'").

Second, on Plaintiff's facts, this case "falls within the obvious." *Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (quoting *Rivas-Villegas*, 595 U.S. 1, 6 (2021) and *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020); *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2006).

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

Third, Urena's constitutional right to be free from excessive force under this set of facts was clearly established at the time of the shooting. *See*, *e.g., Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024) ("We have held over and over that a suspect's possession of a gun does not itself justify deadly force."); *Lam v. City of Los Banos*, 976 F.3d 986, 1000–03 (9th Cir. 2020) (holding that it was clearly established that "an officer may not shoot a previously armed person who no longer posed a threat"); *Estate of Lopez v. Gelhaus*, 871, F.3d 998 (9th Cir. 2017) (rejecting summary judgment where a suspect who was carrying what appeared to be an AK-47 turned, without pointing the gun, toward the officer who shot him); *Zion v. Cty. of Orange*, 874 F.3d 1072, (9th Cir. 2017); *George v. Morris*, 736 F.3d 829, 832, 833, 838-39 (9th Cir. 2013) (establishing that firing on someone who makes no "furtive movement, harrowing gesture, or serious verbal threat" that would give rise to an "immediate threat" to the safety of the officer or others is unreasonable, even where the defendant is still armed with a deadly weapon); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 323-25 (9th Cir. 1991) (rejecting summary judgment where, on the plaintiffs' facts, he was shot by police while holding a gun but was not facing the officers or pointing the gun at them). *See also C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (deadly force not objectively reasonable even when subject had a gun); *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991) (denying qualified immunity where officers shot "an unarmed and injured felon lying or kneeling on the floor").

Fourth, it is well established that an officer's violation of police training weighs against granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable").

3.    Plaintiff's Claim for Battery under state law survives where the material facts show that the force used by Officers Davalos and Estrella against the

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS

plaintiff was objectively unreasonable and not necessary to defend human life. *See* CACI No. 1305B (Battery by Peace Officer, Deadly Force) ("A threat of death or serious bodily injury is "imminent" when … a reasonable officer … would believe [the] person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury.").

4. Plaintiff's Claim for Negligence survives where the material facts clearly establish that the force used by Officers Davalos and Estrella against Plaintiff was objectively unreasonable and not necessary to defend human life. In addition to the shooting itself being a negligent use of deadly force, pre-shooting tactics "are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability. Such liability can arise where the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 639 (2013); *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021); CACI 441 (instructing the jury to consider the officers' pre-shooting tactical conduct).

5. Plaintiff's Claim for Violation of the Bane Act violation survives where the material facts show that the force used by Officers Davalos and Estrella against Plaintiff was excessive, and they acted with reckless disregard for Plaintiff's constitutional right to be free from excessive force. With respect to the "intent" requirement on this claim, whether the officers knew their actions were unlawful is irrelevant, as the Ninth Circuit in *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018), held that reckless disregard for constitutional rights demonstrates specific intent to deprive those rights.

6. Officers Davalos and Estrella are not immune under the Government Code or any state statute. "[I]t has long been established that [Cal. Gov. Code §820.2] does not apply to officers who use unreasonable force in making an arrest." *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007) (citing

- 78 -

*Price v. County of San Diego*, 990 F. Supp. 1230 (S.D. Cal. 1998) (§820.2 does not confer immunity for discretionary acts if officer uses unreasonable force) and *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect.")).

7.    Plaintiff's claim for punitive damages should not be struck, where the evidence supports a finding that Officers Davalos' and Estrella's conduct was malicious, oppressive and/or in reckless disregard for Plaintiff's rights, which supports the imposition of punitive damages. *Smith v. Wade*, 461 U.S. 30, 45 (1983); *see Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (a jury may assess punitive damages under §1983 when the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others"; actual intent or malice not required).

PLAINTIFF'S RESPONSIVE SEPARATE STATEMENT OF UNCONTROVERTED FACTS