**STEVEN J. ROTHANS-State Bar No. 106579**
**SCOTT CARPENTER-State Bar No. 253339**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 South Grand Avenue, 19th Floor**
**Los Angeles, CA 90071**
**(213) 228-0400 / (213) 228-0401 (Fax)**
srothans@crdlaw.com / scarpenter@crdlaw.com

Attorneys for Defendants, City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella, public employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO URENA, individually, | Case No. 5:24-cv-00341-JGB-ACCV |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUGDMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| CITY OF SAN BERNARDINO, JONATHAN DAVALOS, ANDRES ESTRELLA and DOES 1-10, inclusive, | |
| Defendants. | Date: April 20, 2026<br>Time: 9:00 a.m.<br>Courtroom: 1 – Riverside |

COME NOW Defendants City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella, public employees, and hereby submit the following memorandum of points and authorities in reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.

///

///

- 1 -

DATED:  April 6, 2026          CARPENTER, ROTHANS & DUMONT LLP

By:  _____
        */s/  Scott J. Carpenter*

Steven J. Rothans
Scott J. Carpenter
Attorneys for Defendants

- 2 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................1

II.   STATEMENT OF LAW ....................................................................................1

    A.   The Graham Factors Weigh In Defendants' Favor. ...............................1

    B.   The Officer Defendants Are Entitled To Qualified Immunity................4

        1.   No Unreasonable Mistake Of Fact. ................................................4

        2.   No Clearly Established Law. ...........................................................8

    C.   Plaintiff's State Law Claims Fail. .........................................................12

    D.   Punitive Damages Should Be Stricken...................................................12

III.  CONCLUSION .................................................................................................12

- 1 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bonivert v. City of Clarkston, 883 F.3d 865 (9th Cir. 2018) ...................................4

C.V. v. City of Anaheim, 823 F.3d 1252 (9th Cir. 2016) ........................................9

Cal ex. rel. Harris v. Safeway, Inc., 651 F.3d 1118 (9th Cir. 2011) .......................6

Calonge v. City of San Jose, 104 F.4th 39 (9th Cir. 2024) .....................................8

Cruz v. City of Anaheim, 765 F.3d 1076 (9th Cir. 2014) ........................................4

Curnrow by and through Curnrow v. Ridgecrest Police, 952 F.2d 321 (9th Cir. 1991)……………………………………………………9

District of Columbia v. Wesby, 583 U.S. 48 (2018)................................................4

Est. of Bojcic v. City of San Jose, 358 F. App'x 906 (9th Cir. 2009).......................6

Estate of Lopez by and through Lopez v. Gelhaus, 871 F.3d 998 (9th Cir. 2017) ...9

George v. Morris, 736 F.3d 829 (9th Cir. 2013) .................................................8, 9

Gilbert v. Baldwin, 2007 WL 3203021 (E.D. Cal. Oct. 29, 2007) ........................11

Gordon v. Cnty. of Orange, 6 F.4th 961 (9th Cir. 2021)..........................................4

Graham v. Connor, 490 U.S. 386 (1989) ............................................................4, 6

Holloway v. Horn, 2021 WL 3929972 (9th Cir. Sept. 2, 2021)...........................5, 8

Hyde v. City of Willcox, 23 F.4th 863 (9th Cir. 2022) ............................................6

Lam v. City of Los Banos, 976 F.3d 986 (9th Cir. 2020) .........................................9

Longoria v. Pinal County, 873 F.3d 699 (9th Cir. 2017) ........................................9

McSherry v. City of Long Beach, 584 F.3d 1129 (9th Cir. 2009) ..........................11

Miller v. Clark Cnty., 340 F.3d 959, 966 (9th Cir. 2003) .......................................3

Murillo v. City of Los Angeles, 707 F. Supp. 3d 947 (C.D. Cal. 2023) .................11

Scott v. Harris, 550 U.S. 372 (U.S. 2007) ..............................................................2

Seidner v. de Vries, 39 F.4th 591 (9th Cir. 2022) .................................................10

Valtierra v. City of Los Angeles, 99 F. Supp. 3d 1190 (C.D. Cal. 2015) .................6

Zion v. Cty. of Orange, 874 F.3d 1072 (9th Cir. 2017) ....................................10, 11

- 1 -

TABLE OF AUTHORITIES

Zorn v. Linton, 2026 WL 795469 (U.S. Mar. 23, 2026)........................................10

- 2 -
TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On February 10, 2023, Officers Davalos and Estrella were faced with a rapidly-evolving, life-threatening situation where plaintiff evaded a lawful traffic stop, fled from a moving vehicle, retrieved a firearm, turned with the gun in hand as if targeting the officers, dove to the ground into concealment amidst thick foliage, and then made a "harrowing gesture" of lifting the gun up in the direction of the officers.  The officers reasonably shot in self-defense.  While the gun left Urena's hand just after the first shots, the officers reasonably, even if mistakenly, believed that Urena remained armed throughout the shooting given the split-second nature of the events and the thick brush that obstructed the officers' views of Urena.  Based on the indisputable evidence, the officers' actions were objectively reasonable.  At a minimum, the officers are entitled to qualified immunity.

## II.    STATEMENT OF LAW

### A.    The Graham Factors Weigh In Defendants' Favor.

As set forth in defendants' Motion, the indisputable evidence demonstrates that the force used by Officers Davalos and Estrella was objectively reasonable under the totality of circumstances because plaintiff posing an imminent threat of death or serious bodily harm to the officers.  E.g., Mot. at 7.  To try to overcome the indisputable evidence of the threat Urena posed, plaintiff puts forth purported disputes of fact that are neither genuine nor material.  E.g., Opp. at 10, 12.

For instance, plaintiff claims that he "never pointed the gun at the officers or turned toward them with the gun."  Opp. at 10, 13.  This assertion is belied by the video evidence showing Urena had turned counterclockwise towards the officers with the gun in his right hand just as he entered the overgrown foliage - a clear "harrowing gesture."  Fact 24; Defs' Ex. 12.

Plaintiff states that he "tossed the gun over the fence before any shots were

- 1 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

fired." Opp. at 10, 13. At deposition, plaintiff testified that he threw the gun when he was still on his feet and running while "barely coming to the grass" and before he hit the ground. Pl's Ex. A at 55:10 – 57:18. Plaintiff's account need not be credited since it is blatantly contradicted by the video evidence, which shows that the gun left his hand after he went to the ground and just after the first shots were fired. Fact 30; see Scott v. Harris, 550 U.S. 372, 380-81 (U.S. 2007) (courts must "view[] the facts in the light depicted by the videotape" and not adopt facts "contradicted by the record").

In addition, plaintiff contends that he "went to the ground to surrender." Opp. at 10, 13. But plaintiff testified that he went to the ground in the overgrown field not to surrender but because he had been shot. Pl's Ex. A at 58:5-8. He also testified that he was not thinking about surrendering when he approached the bushes. See id. at 59:18-24 ("Q: [D]id you have a thought to comply and to surrender? A: That's not going to happen. I'm running because if I am complying and all that, I would have already done that in the beginning."). Nor are there any facts to corroborate the notion that plaintiff was surrendering when he went to the ground. Urena made no statements suggesting surrender, never put both of his hands up, repeatedly ignored commands and showed no signs of compliance, fled continuously until reaching the field, ignored the warning that he would be shot and still turned to his left with the gun in his hand pointing it towards the officers as if to target them, and then he suddenly dove to the ground into thick foliage and place of concealment from which he could have obtained a shooting position and ambushed the officers, and then when in the bushes raised only the hand armed with a gun up towards the officers.

Plaintiff argues that "the officers knew Urena tossed the gun . . ." Opp at 10, 13. However, plaintiff does not actually dispute that the officers did not see the gun leave Urena's hand. See Opp. at 6 ("It is undisputed that . . . Urena must have tossed [the gun] over the fence, and the officers did not see Urena toss a gun

- 2 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

after they shot him.").  Plaintiff also acknowledges that "Davalos and Estrella could not locate the gun after the shooting." Id.  The post-shooting evidence corroborates that fact.  After the shooting, Officer Davalos ordered plaintiff to stop reaching and put his hands behind his head, indicating he still feared the gun was nearby.  Fact 35.  And after Urena was taken into custody, the BWC shows Officer Estrella searching at length in the foliage for the gun.  Fact 40.   The officers stated that they would not have shot, or would have ceased fire, if they had seen Urena toss the gun.  Fact 42.  As discussed more fully below, it was not unreasonable for the officers to have not seen the gun leave Urena's hand given that it happened in a fraction of a second and the event is virtually imperceptible from a real-time review of the video evidence.  See infra, Section II.B.1.

The other Graham factors do not save plaintiff's claim:  (i) severity of the crime: plaintiff matched the description from a concerned citizen about an armed man, he evaded a lawful traffic stop, and fled from a moving vehicle, and brandished a gun at officers; (ii) resistance / flight:  plaintiff was actively fleeing, not engaging in passive resistance as plaintiff suggests.  See Miller v. Clark Cnty., 340 F.3d 959, 966 (9th Cir. 2003) ("[E]vading arrest by flight . . . favors the government."); (iii) less intrusive methods:  no evidence that cover was available to the officers, nor is there evidence that backup units were nearby or a perimeter could be established as Urena ran towards residential homes near an elementary school and the entire foot pursuit lasted between 15 and 20 seconds; (iv) Urena was warned: Officer Davalos unequivocally warned plaintiff, "You're gonna get fucking shot!" (Fact 22), plaintiff heard the warning (see Defs' Ex. 3 at 51:15-52:10 (officers said "Stop or I'll kill you" while they were running through the vacant lot)); and (v) Urena showed no signs of mental illness.

Plaintiff argues that the officers' credibility is at issue.  Opp. at 11.  Not so.  The officers have consistently stated that they perceived that the gun was in Urena's hand and they both called out that he had a gun as they approached the

- 3 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

foliage.  Unlike Cruz v. City of Anaheim, 765 F.3d 1076, 1078 (9th Cir. 2014), where officers' accounts of an unarmed suspect reaching for his waistband were dubious (why would an unarmed person reach for nothing?), the BWC here confirms the officers' accounts that Urena still had it in his hand before the shots were fired. Facts 25-32.

**B.     The Officer Defendants Are Entitled To Qualified Immunity.**

To overcome the defense of qualified immunity, plaintiff must show (1) the officer defendants violated a constitutional right, and (2) the unlawfulness of the officers' conduct was clearly established at the time.  District of Columbia v. Wesby, 583 U.S. 48, 62–63 (2018).  "While the constitutional violation prong concerns the reasonableness of the officer's mistake of fact, the clearly established prong concerns the reasonableness of the officer's mistake of law."  Gordon v. Cnty. of Orange, 6 F.4th 961, 968 (9th Cir. 2021).  "Both prongs entail questions of law . . ."  Bonivert v. City of Clarkston, 883 F.3d 865, 872 (9th Cir. 2018). Here, both prongs of the qualified immunity analysis shield Officers Davalos and Estrella.

**1.     No Unreasonable Mistake Of Fact.**

Qualified immunity "protects an officer who reasonably, but mistakenly, perceives facts that would have made his actions lawful had they been true." Bonivert, 883 F.3d at 872.  Such reasonableness, like all Fourth Amendment analysis, "must be judged from the perspective of a reasonable officer on the scene," and accounts "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . ."  Graham v. Connor, 490 U.S. 386, 396-97 (1989).  Here, the indisputable, objective evidence demonstrates that Officers Davalos and Estrella reasonably, even if mistakenly, believed that Urena was armed with a firearm throughout the shooting.

First, as discussed above, although plaintiff claims that "[w]hether the

- 4 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

officers knew Urena tossed the gun over the fence is a disputed question of fact" (Opp. at 11), plaintiff does not actually dispute that Officers Davalos and Estrella did not see the gun leave Urena's hands. See supra, Section II.A. Compare the indisputable facts here to Holloway v. Horn, 2021 WL 3929972 (9th Cir. Sept. 2, 2021), a case which plaintiff cites, and which also involves a shooting incident where a gun toss was at issue. In that case, an officer pursued a suspect on foot into a breezeway between two apartment complexes. Plaintiff stated that the shots came "ten seconds after, and fifteen to twenty feet away, from where he tossed his gun over a fence" and while he was surrendering with his empty hands up. Id. at *2. In addition, after the shooting, the shooting officer made statements to arriving officers indicating he knew that plaintiff had thrown the gun before the shots and where the gun had landed. Id. Because no video existed, the court took plaintiff's facts as true. Here, in contrast, no dispute exists as to when the gun left Urena's hand because the video shows it happened just after the first shots were fired. And, unlike Holloway, there is no basis to infer the officers perceived the gun toss.

Second, it was not unreasonable for the officer defendants to have not perceived the purported gun toss. In conclusory fashion, plaintiff argues that "a reasonable officer in the position of Estrella and Davalos would have seen that Urena tossed the gun, when they had an unobstructed view a short distance behind him." Opp. at 5. However, this argument is blatantly contradicted by the indisputable, objective video evidence. When viewed in real-time, the gun toss is imperceptible from the BWC footage. Plaintiff's Opposition even acknowledges the split-second nature of the gun leaving Urena's hand. See Opp. at 1 ("the gun is visible in only one BWC video for only 1/6 of a second, 1/15 of a second before the first shot was fired"). The event happens in a small fraction of a second – less than a blink of an eye. And plaintiff's argument is belied by the fact that the plaintiff himself, his attorneys, and his own police practices expert all did not perceive the supposed gun toss event even with the benefit of hindsight and the

- 5 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

ability to review the video repeatedly and in slow motion.  But the event must be reviewed in real-time "rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396; see also Hyde v. City of Willcox, 23 F.4th 863, 872–73 (9th Cir. 2022) ("We should not scrutinize an officer's every minor move in a frantic and chaotic situation as if we were examining the Zapruder film in slow-motion.").  It cannot be said that every reasonable officer would have perceived the split-second moment when the gun left Urena's hand.

Plaintiff improperly offers an unsupported and conclusory assertion from his expert that "[p]ursuant to police training on situational awareness, a reasonable officer in the position of Estrella and Davalos would have seen that Urena tossed the gun . . ."  Opp. at 5; see Bryce Decl. ¶ 11.  This opinion was not in the expert's Rule 26 report in violation of Rules 26 and 37.  See Defs' Ex. 16; see Est. of Bojcic v. City of San Jose, 358 F. App'x 906, 907–08 (9th Cir. 2009) (precluding Plaintiffs' expert from testifying where Rule 26 report did not include his opinion on that issue).  In addition, the opinion impermissibly constitutes a legal conclusion – i.e., it touches on the reasonableness of the officers' conduct.  See Valtierra v. City of Los Angeles, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) (reasonableness of officers' actions is a question for the Court where no material facts are in dispute).  The opinion also is conclusory and unsupported by any evidence.  There is no indication on how any supposed situational awareness training would have led a reasonable officer to have perceived the fraction of a second when Urena's hand popped above the foliage and the gun left Urena's hand.  Nor is there any basis upon which to infer that situational awareness training would have allowed the officers to fully see Urena's unraised hands through the thick vegetation.  Such speculative and conclusory opinion should be excluded. See Defs' Obj. to Pl's Evid.; Cal ex. rel. Harris v. Safeway, Inc., 651 F.3d 1118, 1149 n.4 (9th Cir. 2011) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are inadmissible").

- 6 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff's argument that the officers did not see the gun in Urena's hands after Urena went to the ground (Opp. at 11-12) misses the mark. The officers never testified that they saw Urena's empty hands, but rather that they perceived he was still armed and his hands were obscured by the thick brush and foliage. Fact 32. Similarly, plaintiff's contention that "it was not reasonable for the officers to think Urena was in a shooting position when he was on the ground" (Opp. at 15) is not supported by the evidence. The officers stated that when they approached the brush they observed Urena lying on the ground facing the officers with his arms outstretched towards the direction of the officers. Fact 27. Plaintiff was not lying face-down with his back to the officers. Plaintiff testified that when he went to the ground, he was on his side, not his stomach. Pl's Ex. A at 59:25-60:22. And the BWC footage depicts Urena had been hit in front of his body.

Plaintiff also erroneously claims that Officers Davalos and Estrella should have perceived the gun toss because "[b]ased on their experience as police officers," they knew Urena "might try to toss the gun . . ." Opp. at 5. However, plaintiff offers no evidence that the officers had experience in this specific type of scenario – where a suspect flees and then dives into concealment amongst thick vegetation after turning and targeting the officers with a gun in his hand. Indeed, plaintiff ignores the facts (highlighted above) that led the officers to reasonably believe Urena was not surrendering or trying to toss the gun. Urena had plenty of opportunities to toss the gun before he targeted the officers and went to the ground, but he did not do so. No facts put the officers on notice that Urena was going to toss the gun.

Plaintiff claims there is a dispute as to the feasibility of Officer Estrella warning plaintiff about deadly force. But Officer Davalos issued an unequivocal warning and Officer Estrella had also been issuing repeated commands to plaintiff to stop, show his hands, and stop reaching. Even if it were feasible for Officer Estrella to issue a further warning, no rational fact finder could conclude that

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Urena was inadequately warned about the potential use of deadly force.

Lastly, the fact that the gun barrel was in a holster is of no consequence. There is no evidence that the officers saw the gun in a holster, nor is there evidence to suggest they should have seen the holster.  The gun had been hidden in plaintiff's front hoodie pocket, not carried on his hip as if in a holster.  The video evidence does not depict that the gun was in a holster.  Even if it was apparent that the barrel was in a holster, the officers had no facts upon which to assume that the holster rendered the gun unable to fire.

### 2.   No Clearly Established Law.

No case law clearly established the unlawfulness of the officer defendants' conduct at the time of the incident and because reasonable officers could have believed that Officers Davalos and Estrella acted properly in self-defense. Moreover, Defendants detailed a body of factually analogous case law demonstrating that the officers' use of deadly force was justified.  Mot. at 10-13. In particular, clearly established law recognizes that "[i]f the person is armed . . . a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."  See George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013) (Fourth Amendment does not require officers to "delay their fire until a suspect turns his weapon on them.").  Rather than address the cases cited by defendants, plaintiff ignores such precedent and instead focuses on distinguishable cases that define clearly established law at too high a level of generality.  For example:

- As mentioned above, in Holloway v. Horn, the evidence (which did not include BWC footage) suggested that the shooting officer had perceived the plaintiff toss his gun.  2021 WL 3929972, at *2.
- George v. Morris, 736 F.3d at 835-39, dealt with a man who had terminal brain cancer that was shot while on his home patio where he was standing with the assistance of a walker and held a gun pointed down to the ground.
- In Calonge v. City of San Jose, 104 F.4th 39, 44-49 (9th Cir. 2024), a

- 8 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

man was out in the open walking down the street away from officers while carrying a BB gun in his waistband when he was shot in the back without warning, but where non-shooting officer testimony indicated that the suspect was not reaching for the gun, did not have gun in his hands at any point, nor did suspect point the gun at any officers.

- Estate of Lopez by and through Lopez v. Gelhaus, 871 F.3d 998, 1006-11 (9th Cir. 2017) is unavailing given that it involved a 13-year-old walking down the street in broad daylight with a toy gun that a witness said looked "fake," and where a deputy without warning shot the boy who was turning naturally and non-aggressively after the deputy shouted at the boy, and the barrel consistently pointed down to the ground.

- Curnrow by and through Curnrow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991) found that an officer's shot was unreasonable because the suspect was not facing the officers and the suspect had moved in response to the officers' unannounced forced entry into the suspect's home.

- Lam v. City of Los Banos, 976 F.3d 986, 1000–03 (9th Cir. 2020) is distinguishable where an officer's first shot in response to being stabbed with scissors was justified but his second shot was not where that shot occurred without warning after the officer retreated and where testimony from a witness and another officer indicated the suspect was not armed before the second shot.

- In Longoria v. Pinal County, 873 F.3d 699 (9th Cir. 2017), officers confronted an unarmed suspect after a lengthy car chase, where the suspect exited his vehicle and officers shouted that the suspect only had a wallet behind his back, then officers fired beanbag rounds and another tased the suspect causing the suspect to flinch and raise his hands, after which he was shot.

- In C.V. v. City of Anaheim, 823 F.3d 1252, 1253-56 (9th Cir. 2016), because officers reported inconsistent accounts of how decedent, who was armed with a BB gun, responded to sudden commands, question was for jury as to

- 9 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

whether decedent was not pointing the gun at the officers and was complying.

For starters, plaintiff's cases also do not "establish" binding precedent where the Ninth Circuit deferred the finding of constitutional violation to a jury. See Zorn v. Linton, 2026 WL 795469, at *2 (U.S. Mar. 23, 2026) (indicating that Secon Circuit ruling did not clearly establish law when the court "did not hold [officers'] actions violated the Fourth Amendment). More importantly, none of plaintiff's cases come close to the factual scenario in this case where a fleeing armed suspect seeks a position of concealment. Officers Davalos and Estrella did not come upon an unresisting, non-fleeing suspect in plain view and without warning cause a natural, reactionary movement. Instead, our case involves an armed, fleeing suspect that evaded a lawful traffic stop, jumped from a moving vehicle and ran, refused to comply with repeated commands, never gave any indication of surrendering, was warned he would be shot but nevertheless turned towards to the officers with the gun in his hand as if to target them, and then the suspect unexpectedly went to the ground into concealment amidst thick overgrown foliage in an apparent attempt to seek an advantageous shooting position from which to ambush the officers, and then the suspect raised one arm up with the gun in his hands towards the officers as if to target them again. See Seidner v. de Vries, 39 F.4th 591, 600 (9th Cir. 2022) (courts "cannot ignore the reality that a person fleeing . . . poses unique challenges for law enforcement")

Nor do plaintiff's cases touch upon a shooting that occurs where the suspect is concealed in thick foliage during the course of the shooting, and where the officers' views of the suspect, the suspect's hands, and the endpoints of shots fired are all obscured and not plainly visible. Plaintiff's citation to Zion v. Cty. of Orange, 874 F.3d 1072 (9th Cir. 2017) is misplaced. In Zion, a man suffering from a seizure stabbed a police officer, prompting another officer to shoot the man nine times. 874 F.3d at 1075. After the man fell to the ground, the officer walked up to the man, and from a distance of four feet, fired another nine shots at his

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

body, paused and then stomped on the man's head three times.  Id.  The Ninth Circuit held that no reasonable jury could find the head-stomping of a clearly disabled suspect justifiable.  Id. at 1075-76.

Plaintiff claims that, under Zion, "the officers knew or should have known that Urena was wounded and on the ground."  Opp. at 15.  However, whereas in Zion, the suspect fell to the ground in obvious response to being struck by the first volley of shots, Urena had dropped to the ground prior to any shots and in what appeared to be a purposeful maneuver to seek a concealed shooting position from which to ambush the offices.  Moreover, unlike in Zion, Officers Davalos and Estrella did not have clear visibility of Urena during the course of the shooting while he was in the heavy foliage and thus could not see where their shots were landing or if Urena was being wounded or incapacitated.  See Defs' Exs. 4 & 5 at 10:16:12-10:16:14.

Plaintiff argues, without authority, that "[o]fficers have a duty to reassess when firing and are responsible for justifying every shot they fire."  Opp. at 15-16.  However, "there is no requirement that an officer must 'reevaluate whether the deadly threat has been eliminated after each shot . . .'"  Murillo v. City of Los Angeles, 707 F. Supp. 3d 947, 963 (C.D. Cal. 2023).  And, regardless, plaintiff points to no evidence as to which shots wounded plaintiff or that the officers had knowledge of the effects of the shots.  See Gilbert v. Baldwin, 2007 WL 3203021, at *13 (E.D. Cal. Oct. 29, 2007) ("no evidence that Deputy Baldwin's first shot disabled and disarmed him, and presents no evidence that Deputy Baldwin had knowledge of the effect of the first shot on his finger").

Plaintiff posits that "the officers may have engaged" in "contagious fire."  Opp. at 6.  But plaintiff's query is purely speculative and unsupported by any evidence other than the number shots fired.  See McSherry v. City of Long Beach, 584 F.3d 1129, 1138 (9th Cir. 2009) ("Summary judgment requires facts, not . . . rank speculation.").  Moreover, plaintiff ignores the fact that, during the course of

- 11 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

the shooting, Urena was hidden amidst thick, overgrown brush and was obscured from the officers' view.  As such, all of Urena's body and hands were not plainly visible to the officers, which is confirmed by how hidden Urena is on the BWC.

Lastly, plaintiff argues that "an officer's violation of police training weighs against granting qualified immunity."  Opp. at 16.  However, plaintiff does not sufficiently demonstrate how Officers Davalos and Estrella violated their training or that they actually did violate training.  There is no evidence as to how officers are trained when confronted with this type of scenario.

### C.    Plaintiff's State Law Claims Fail.

The analysis for the battery, negligence, and Bane Act claims turn on much of the same analysis as the federal excessive force claim.  Because the officers' use of force was objectively reasonable and in self-defense, the state law claims must be dismissed.  Moreover, as to the Bane Act, the evidence shows that the officers did not act with specific intent to violate plaintiff's rights.  Plaintiff acknowledges that the officers did not actually see plaintiff toss the gun.

### D.    Punitive Damages Should Be Stricken.

The evidence does not support a finding that Officers Davalos and Estrella acted with malice, oppression or in reckless disregard of plaintiff's rights.  The officers reasonably believed that Urena was armed throughout the shooting, and plaintiff does not actually dispute that the officers did not see Urena toss the gun.

### III.    CONCLUSION

Based on the foregoing, defendants respectfully request that this Court grant summary judgment and enter judgment in defendants' favor.

DATED:  April 6, 2026             CARPENTER, ROTHANS & DUMONT LLP

                                                      /s/  Scott J. Carpenter
                                          By:  _____
                                                      Steven J. Rothans
                                                      Scott J. Carpenter
                                                      Attorneys for Defendants

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, City of San Bernardino and Officers Davalos and Estrella, certifies that this brief contains 4,243 words, which complies with the word limit pursuant to Local Rule 11-6.1

DATED:  April 6, 2026          CARPENTER, ROTHANS & DUMONT LLP

/s/  Scott J. Carpenter

By:  _____

Steven J. Rothans
Scott J. Carpenter
Attorneys for Defendants

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**SUPPLEMENTAL DECLARATION OF SCOTT J. CARPENTER**

I, Scott J. Carpenter, declare that:

1.      I am an attorney, duly licensed to practice law before all of the courts in the State of California, and I am an attorney at the law firm of Carpenter, Rothans & Dumont, attorneys of record for Defendants, City of San Bernardino and Officers Davalos and Estrella in the above-entitled action.

2.      This supplemental declaration is made in connection with reply brief in support defendants' Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("Motion") in the above-entitled matter, and is submitted for purposes of objections to plaintiff's evidence in opposition to defendants' Motion.

3.      The following facts are stated from my personal knowledge, except those facts stated on information and belief, which I believe to be true and if called as a witness I could and would so competently testify thereto under oath.

4.      Attached hereto as Exhibit "16" is a true and correct copy of the Rule 26 Report dated February 26, 2026 and submitted by plaintiff's expert Richard S. Bryce (the "Rule 26 Report").  The declaration of Mr. Bryce ("Bryce Declaration") submitted in opposition to defendants' Motion (Dkt. No. 28-3) contains several new opinions that were not disclosed in Mr. Bryce's Rule 26 Report dated February 26, 2026, including new opinions set forth in paragraphs 6, 7, 9, 10, 11, 12, 13, and 15 of the Bryce Declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 6th day of April 2026, at Los Angeles, California.

*/s/ Scott J. Carpenter*

_____

Scott J. Carpenter – Declarant

- 14 -

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT