**STEVEN J. ROTHANS-State Bar No. 106579**
**SCOTT CARPENTER-State Bar No. 253339**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 South Grand Avenue, 19th Floor**
**Los Angeles, CA 90071**
**(213) 228-0400 / (213) 228-0401 (Fax)**
srothans@crdlaw.com / scarpenter@crdlaw.com

Attorneys for Defendants, City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella, public employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO URENA, individually,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN BERNARDINO,<br>JONATHAN DAVALOS, and<br>ANDRES ESTRELLA,<br><br>Defendants. | Case No. 5:24-cv-00341-JGB-ACCV<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS**<br><br>[*Filed concurrently with Defendants' Reply In Support Of MSJ & Objections to Plaintiff's Evidence*]<br><br>Date: April 20, 2026<br>Time: 9:00 a.m.<br>Courtroom: 1 - Riverside |

COME NOW Defendants City of San Bernardino, a public entity, and Officers Jonathan Davalos and Andres Estrella, public employees, and hereby submit the following Response to Plaintiff's Separate Statement of Uncontroverted Facts.

///

///

- 1 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| Pl.'s SUF No. | Fact | Supporting Evidence | Defs' Response[1] |
|---|---|---|---|
| | Background Information | | Defs' Response |
| 47. | Prior to the incident, the officers had never seen Mr. Urena before and had no knowledge of whether Mr. Urena had a criminal history. | Ex. C (Estrella Depo.) at 12:4-12; Ex. D (Davalos Depo.) at 38:1-19. | Undisputed, except that the officers had the information received from the community about plaintiff driving his vehicle and being armed. Defs' Fact 2. |
| 48. | The officers had no information that Mr. Urena had injured anyone, threatened anyone, or committed any violent crime. | Ex. C (Estrella Depo.) at 63:17-25; Ex. D (Davalos Depo.) at 38:1-19. | Undisputed, except that the officers had the information received from the community about plaintiff driving his vehicle and being armed. Defs' Fact 2. |
| 49. | The officers had no information that Mr. Urena was the subject of the tip or | Ex. C (Estrella Depo.) at 11:5-12:3. | Undisputed, except that the officers had the information |

[1] Defendants are currently filing evidentiary objections to plaintiff's facts and evidence, which defendants hereby incorporate herein.

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | the registered owner of the car, and the officers had no photograph of the driver of the Nissan and no license plate number for the Nissan. | | received from the community about plaintiff driving his vehicle and being armed.  Defs' Fact 2. |
| 50. | The officers had no information that Mr. Urena was affiliated with any gang. | Ex. D (Davalos Depo.) at 38:16-19. | Undisputed, except that the officers had the information received from the community about plaintiff driving his vehicle and being armed and that he would be in known gang territory. Defs' Fact 2. |
| 51. | Mr. Urena was in the area driving to see his son after visiting a who was suffering from cancer. | Ex. A (Urena Depo.) at 35:12-36:5, 37:6-38:14. | Undisputed. |
| | **The Foot Pursuit and the Shooting** | | **Defs' Response** |
| 52. | The officers made a poor tactical decision when they pursued Mr. Urena on foot without cover when they had information that he may be armed. | Bryce Decl. at ¶ 16. | Disputed; unsupported and contradicted by the record.  Defs' Facts 9-29. |

- 3 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| 53. | Police officers are trained that if they are in a foot pursuit, following someone with a gun, they should try to take cover, create distance, and call for backup. | Ex. C (Estrella Depo.) at 17:6-13; Bryce Decl. at ¶ 16. | Disputed in that it misstates the testimony, is unsupported and contradicted by the record.  Defs' Facts 9-29.  Officer Estrella testified that officers should take cover "[d]epending on the circumstances"  Ex. C at 17:9. |
| 54. | Police officers are trained that if they are in a foot pursuit, following someone with a gun, they should try to set up containment or a perimeter with the assistance of backup officers. | Ex. C (Estrella Depo.) at 17:14-18:15; Bryce Decl. at ¶ 16. | Disputed in that it misstates the testimony, is unsupported and contradicted by the record.  Defs' Facts 9-29.  Officer Estrella testified that was "an option." Ex. C at 17:18. |
| 55. | At the time that the officers claim they first saw a gun on Urena's person, they did not take cover, yell out | Ex. C (Estrella Depo.) at 16:17-17:5, 30:23-25;; Ex. D (Davalos Depo.) at | Undisputed, except state that the officers slowed their pace and yelled out |

- 4 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | "gun" or notify dispatch that they were chasing someone that they believed had a gun | 47:23-48:6, 48:19-22, 77:25-78:12; Def. Ex. 4 (Davalos BWC Video) at 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08; Bryce Decl. at ¶ 16. | repeated commands, and warned plaintiff he would be shot. Defs' Facts 9-29. |
| 56. | Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for the officers to shoot at Mr. Urena for fleeing or for running away, even with a gun in his hand. | Bryce Decl. at ¶ 4; Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos Depo.) at 18:1-10, 20:4-8, 36:25-37:4, 39:19-22; 49:11-15, 97:17-20, 99:12-21. | Undisputed, and indeed the officers did not fire until they were targeted. Defs' Facts 9-29. |
| 57. | Police officers, including Officers Davalos and Estrella, are trained that seeing a gun in a suspect's hand is not a sufficient justification to use deadly force against that suspect. | Bryce Decl. at ¶ 6; Ex. C (Estrella Depo.) at 63:2-7; Ex. D (Davalos Depo.) at 18:1-6, 20:4-8, 36:25-37:4, 97:17-20, 99:12-21. | Undisputed, and indeed the officers did not fire until they were targeted. Defs' Facts 9-29 |
| 58. | Police officers, including Officers Davalos and | Ex. C (Estrella Depo.) at 63:2-7; Ex. | Undisputed, and indeed the officers |

- 5 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | Estrella, are trained that they cannot justify shooting a person for running away, even if the person has a gun. | D (Davalos Depo.) at 18:7-10, 20:4-8, 36:25-37:4, 39:19-22, 49:11-15; Bryce Decl. at ¶ 4. | did not fire until they were targeted. Defs' Facts 9-29. |
| 59. | Mr. Urena never pointed the gun at the officers and never turned toward the officers with the gun in his hand at any time. | Ex. A (Urena Depo.) at 57:19-24, 58:23-59:17, 107:19-21; Ex. C (Estrella Depo.) at 32:11-13, 44:24-45:4, 61:25-62:4, 67:3-69:25; Def. Ex. 4 (Davalos BWC Video) 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08; Ex. B (Held Depo.) at 19:16-21, 38:18-21. | Disputed and blatantly contradicted by the record. Defs' Facts 24-30. |
| 60. | It was inappropriate for the officers to believe that Mr. Urena went to the ground to gain a position of advantage. | Bryce Decl. at ¶ 9. | Disputed; unsupported by the record and also blatantly contradicted by the record and the totality of the circumstances. |

- 6 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | | Defs' Facts 9-30. |
|---|---|---|---|---|
| 61. | A reasonable interpretation of Urena going to the ground is that he went to the ground to surrender, particularly when viewed in conjunction with the fact that Urena tossed the gun over the fence. | Bryce Decl. at ¶ 9. | | Disputed; unsupported by the record and also blatantly contradicted by the record and the totality of the circumstances. Defs' Facts 9-30. Plaintiff testified that he went to the ground in the overgrown field not to surrender but because he had been shot.  Pl's Ex. A at 58:5-8.  He also testified that he was not thinking about surrendering when he approached the bushes.  See id. at 59:18-24 ("Q: [D]id you have a thought to comply and to surrender? A: That's |

- 7 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | not going to happen. I'm running because if I am complying and all that, I would have already done that in the beginning."). Nor are there any facts to corroborate the notion that plaintiff was surrendering when he went to the ground. |
|---|---|---|---|
| 62. | All of the shots were fired when Mr. Urena was on the ground. | Ex. B (Held Depo.) at 25:16-24, 27:9-18, 33:16-19; Ex. C (Estrella Depo.) at 42:3-5, 42:24-43:8, 49:19-22, 50:6-8, 62:9-15, 65:4-10; Ex. D (Davalos Depo.) at 40:18-41:1, 66:15-21; Def. Ex. 4 (Davalos BWC Video) at 0:57 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 1:00 – | Undisputed, except state that the officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting position. Defs' Fact 25. And plaintiff had already pointed his gun at the officers and had started to raise his armed hand up |

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

|  |  |  | 1:08; Bryce Decl. at ¶ 8. | towards the officers once on the ground. <u>Id.</u> at 24-30. |
|---|---|---|---|---|
|  | 63. | When Officer Estrella paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. | Ex. C (Estrella Depo.) at 62:9-15; Bryce Decl. at ¶ 12. | Undisputed except state that the officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting position.  Defs' Fact 25.  And plaintiff had already pointed his gun at the officers and had started to raise his armed hand up towards the officers once on the ground. |
|  | 64. | Mr. Urena testified that he had already thrown the gun over the fence before any shots were fired. | Ex. A (Urena Depo.) at 54:18-55:9, 56:12-57:18, 57:9-59:17, 61:20-62:2, 100:4-9, 104:20-105:3, 107:15-18, 108:3-10, 109:12-22, 110:14-19, 111:10-14. | Disputed as unsupported by the record and blatantly contradicted by the record.  Plaintiff testified that he threw the gun when he was still on his |

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | | | feet and running while "barely coming to the grass" and before he hit the ground.  Pl's Ex. A at 55:10 – 57:18.  But the objective video evidence shows that the gun left his hand after he went to the ground and just after the first shots were fired.  Defs' Fact 30. |
| 65. | It would be inappropriate for the officers to shoot Mr. Urena for tossing the gun. | Bryce Decl. at ¶ 7. | Disputed as unsupported and contradicted by the record.  The officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting position.  Defs' Fact 25.  And plaintiff had already pointed his gun at the |

- 10 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | | | officers and had started to raise his armed hand up towards the officers once on the ground. <u>Id.</u> at 24-30. |
| 66. | Based on their experience as police officers, Davalos and Estrella knew that when a subject is running with a gun, the subject might try to toss the gun because they do not want to get caught with a gun. | Ex. C (Estrella Depo.) at 20:3-13; Ex. D (Davalos Depo.) at 18:13-20, 19:6-8; Bryce Decl. at ¶ 11. | Undisputed, except state that there are no facts in the record suggesting that plaintiff would toss the gun, nor are there any facts that the officers (let alone any officers) had experience with suspects toss guns by pointing guns at the officers, then going into a shooting position in concealment, and then turning towards the officers. |
| 67. | Pursuant to police training on situational awareness, a reasonable officer in the | Bryce Decl. at ¶ 11. | Disputed as unsupported by record and blatantly |

- 11 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | position of Estrella and Davalos would have seen that Mr. Urena tossed the gun, when they had an unobstructed view a short distance behind Mr. Urena. | | contradicted by the record.  Defs' Facts 30-31.  Plaintiff himself, his attorneys, his own police practices expert, and his own video expert all apparently did not perceive the supposed gun toss event even with the benefit of hindsight and the ability to review the video repeatedly and in slow motion. |
| 68. | Even according to Defendants' expert Mr. Held, at least 34 shots were shots were fired after Mr. Urena discarded the gun. | Ex. B (Held Depo.) at 27:9-18, 33:16-19, 34:13-18, 35:25-36:19, 41:20-42:5; Bryce Decl. at ¶ 7. | Undisputed, except state that at no point during the course of the shooting did either officer see the gun leave plaintiff's hand and, because the overgrown vegetation obscured parts of plaintiff's |

- 12 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | body including his hands, and having not seen the gun leave his hands, the officers reasonably believed plaintiff remained armed throughout the course of the shooting.  Defs' Facts 29-40. |
|---|---|---|---|
| 69. | Defendants' expert Brady Held testified that the gun is visible only in Officer Davalos' BWC video and only for only approximately 1/6 of one second. | Ex. B (Held Depo.) at 20:18-24, 26:14-24, 31:23-32:8. | Undisputed and supports the fact that the officers did not perceive the supposed gun toss event as it occurred in a fraction of a second. |
| 70. | Mr. Held testified that, based on the video, the first shot was fired approximately 1/15 of one second before Mr. Urena began to throw the gun over the fence. | Ex. B (Held Depo.) at 27:9-18, 30:19-23, 32:21-33:10, 33:20-34:18, 35:25-36:19, 41:8-19. | Undisputed, except state that plaintiff was on the ground and had started to move his right arm in the direction of the officers before the first shot.  Defs' Facts 28-31. |

- 13 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| 71. | Mr. Held testified that, based on the video, and the second shot was fired when the gun was leaving Mr. Urena's hand or was in the air. | Ex. B (Held Depo.) at 27:9-18, 32:21-33:10, 33:20-34:18, 35:25-36:19, 41:8-19. | Undisputed, except state that plaintiff was on the ground and had started to move his right arm in the direction of the officers before the first shot.  Defs' Facts 28-31 |
|---|---|---|---|
| 72. | Police officers are trained that they must reassess when they are firing shots. | Bryce Decl. at ¶ 12. | Undisputed, except state that the officers continually reassessed during the course of the shooting.  Defs' Facts 27-32. |
| 73. | A reasonably well-trained police officer in the position of Officer Davalos and Officer Estrella would have reassessed multiple times during the shooting sequence and would have recognized that Mr. Urena was unarmed during at least 34 or 35 of the shots. | Bryce Decl. at ¶ 12. | Disputed as unsupported by the record and contradicted by the record. The officers continually reassessed during the course of the shooting.  Defs' Facts 27-32.  The video evidence unequivocally shows the extent to which |

- 14 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | plaintiff was obscured from view by the thick overgrown foliage. |
|---|---|---|---|
| 74. | Officers Estrella and Davalos were looking at Mr. Urena's hands during the time that they were firing the shots. | Ex. C (Estrella Depo.) at 51:1-4; Ex. D (Davalos Depo.) at 64:4-22. | Disputed as misstates the testimony and unsupported by the record.  The officers were looking for plaintiff's hands but they were obscured by the thick foliage. Defs' Facts 27-32. |
| 75. | Neither Officer Davalos nor Officer Estrella saw a gun in Mr. Urena's hand after Mr. Urena went to the ground. | Ex. C (Estrella Depo.) at 43:16-20, 65:15-66:1; Ex. D (Davalos Depo.) at 62:15-11-63:8, 64:23-65:6, 66:21, 81:15-19, 96:1-5. | Disputed as misstates the testimony and unsupported by the record.  The officers were looking for plaintiff's hands but they were obscured by the thick foliage. Defs' Facts 27-32. The officers reasonably believed plaintiff was still armed during the |

- 15 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | shooting. Id. |
|---|---|---|---|
| 76. | It was inappropriate for the officers to believe that Mr. Urena was in a shooting position when he was on the ground. | Bryce Decl. at ¶ 9. | Disputed as unsupported by the record and blatantly contradicted by the record. The officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting position. Defs' Fact 25. And plaintiff had already pointed his gun at the officers and had started to raise his armed hand up towards the officers once on the ground. Id. at 24-30. |
| 77. | Mr. Urena testified that when he was on the ground | Ex. A (Urena Depo.) at 62:3-11. | Disputed as unsupported by the |

- 16 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | in the field, his hands were on the ground. | | record and blatantly contradicted by the record.  Defs' Fact 30. |
| 78. | Officer Estrella specifically testified he did not have any visual obstructions when firing his shots, he never saw a gun pointed at him after Mr. Urena went to the ground, and when he paused to reassess during the shooting sequence, he was aware that Mr. Urena was on the ground. | Ex. C (Estrella Depo.) at 32:11-13, 50:16-25, 62:9-15. | Disputed as misstates the testimony and unsupported by the record.  The officers were looking for plaintiff's hands but they were obscured by the thick foliage. Defs' Facts 27-32. The officers reasonably believed plaintiff was still armed during the shooting.  Id. |
| 79. | The Officers may have engaged in "reactionary shooting" or "contagious fire," given number of shots that were fired (36), and particularly given the number of shots that were fired when Mr. Urena was | Bryce Decl. at ¶ 15. | Disputed as unsupported by the record.  Defs' Facts 24-32. |

- 17 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | unarmed and on the ground. | | |
| 80. | Neither officer ever gave Mr. Urena the command "drop it." | Ex. C (Estrella Depo.) at 28:18-19, 37:1-5, 52:11-16; Ex. D (Davalos Depo.) at 48:23-25, 94:6-9; Def. Ex. 4 (Davalos BWC Video) at 0:40 – 1:05; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08. | Undisputed as to the specific words, but state that the officers gave repeated unequivocal commands to plaintiff and warned plaintiff that he would be shot. Defs' Facts 15-22. |
| 81. | The officers did not give any commands during the shooting sequence. | Ex. D (Davalos Depo.) at 69:5-7. | Undisputed, but state that the officers gave repeated unequivocal commands to plaintiff and warned plaintiff that he would be shot. Defs' Facts 15-22. |
| 82. | Police officers are trained to give a verbal warning prior to using deadly force, when feasible. | Ex. C (Estrella Depo.) at 64:5-7; Bryce Decl. at ¶ 3i. | Undisputed, but state that the officers gave repeated unequivocal commands to plaintiff and warned plaintiff that he |

- 18 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| # | | | |
|---|---|---|---|
| | | | would be shot. Defs' Facts 15-22. |
| 83. | Officer Estrella did not give Mr. Urena a verbal warning that he was prepared to use deadly force before shooting him. | Ex. C (Estrella Depo.) at 37:1-5; Def. Ex. 5 (Estrella BWC Video) at 0:44 – 1:08. | Undisputed, but state that the officers gave repeated unequivocal commands to plaintiff and Officer Davalos warned plaintiff that he would be shot. Defs' Facts 15-22 |
| After the Shooting | | | Defs' Response |
| 84. | After the shooting, Officers Davalos and Estrella looked for the gun in the immediate vicinity of Mr. Urena, and they did not locate a gun. | Ex. C (Estrella Depo.) at 48:5-13; Ex. D (Davalos Depo.) at 75:11-15, 76:6-8, 88:7-9; (Estrella BWC Video) at 4:57 – 5:05. | Undisputed, and supports the fact that the officers actually believed plaintiff was armed throughout the course of the shooting. |
| 85. | After the shooting, the gun was found in a holster, on the other side of the fence. | Ex. C (Estrella Depo.) at 24:12-25:1; Ex. E (photo of gun); Bryce Decl. at ¶ 13. | Undisputed. |
| 86. | The officers agree that in order for the gun to have | Ex. C (Estrella Depo.) at 47:7-11, | Undisputed, but speculative. |

- 19 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | ended up over the fence, Mr. Urena would have had to have tossed it over the fence. | 48:5-13. | |
| 87. | The officers did not see Mr. Urena toss a gun after they shot him. | Ex. D (Davalos Depo.) at 75:19-24. | Undisputed that the officers did not see the gun leave plaintiff's hand, but the objective video evidence shows that the gun left Urena's hand just after the first shots.  Defs' Facts 30-32. |
| 88. | Officer Davalos did not tell anyone at the scene that Mr. Urena had pointed a gun at him. | Ex. D (Davalos Depo.) at 75:4-6. | Unsupported by the cited evidence. |
| | Police Standards and Training | | Defs' Response |
| 89. | Basic police training and standards instruct that deadly force should only be used on the basis of an objectively reasonable belief that the suspect poses an immediate or imminent | Ex. D (Davalos Depo.) at 98:4-7; Bryce Decl. at ¶ 3a. | Undisputed, but state that the officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting |

- 20 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | threat of death or serious bodily injury. | | position.  Defs' Fact 25.  And plaintiff had already pointed his gun at the officers and had started to raise his armed hand up towards the officers once on the ground. Id. at 24-32. |
| 90. | Police officers are trained that a threat of death or serious bodily injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. | Ex. C (Estrella Depo.) at 62:19-63:1; Ex. D (Davalos Depo.) at 98:4-20; Bryce Decl. at ¶ 3b. | Undisputed, but state that the officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting position.  Defs' Fact 25.  And plaintiff had already pointed his gun at the officers and had started to raise his armed hand up towards the officers once on the ground. Id. at 24-32. |

- 21 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| 91. | Police officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. | Bryce Decl. at ¶ 3b. | Undisputed, but state that the officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting position.  Defs' Fact 25.  And plaintiff had already pointed his gun at the officers and had started to raise his armed hand up towards the officers once on the ground. Id. at 24-32. |
| --- | --- | --- | --- |
| 92. | Pursuant to police training and standards, a subjective fear is insufficient to justify the use of deadly force. | Bryce Decl. at ¶ 3c. | Too vague and overbroad to properly respond, and thus disputed and unsupported by the record. |
| 93. | Police officers are trained with respect to situational awareness. | Bryce Decl. at ¶ 11. | Too vague and overbroad to properly respond, and thus disputed |

- 22 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | |
|---|---|---|---|
| | | | and unsupported by the record. |
| 94. | Police officers are trained to focus on the suspect's hands, particularly if the officer believes that the suspect is armed. | Bryce Decl. at ¶ 11. | Too vague and overbroad to properly respond, and thus disputed and unsupported by the record. |
| 95. | Basic police training teaches that that a suspect's failure to comply with officer commands alone is an insufficient basis for the use of deadly force. | Bryce Decl. at ¶ 3d. | Undisputed. |
| 96. | Police officers are trained that deadly force should only be used when no reasonable alternative measures are available. | Ex. C (Estrella Depo.) at 64:1-4; Bryce Decl. at ¶ 3h. | Undisputed, but state that the officers perceived that plaintiff went to the ground to ambush the officers from a concealed shooting position. Defs' Fact 25. Commands had been issued, and plaintiff had been warned. And plaintiff had already |

- 23 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | | pointed his gun at the officers and had started to raise his armed hand up towards the officers once on the ground. Id. at 24-3 |
|---|---|---|---|
| 97. | Basic police training teaches that an overreaction in using deadly force is excessive force. | Bryce Decl. at ¶¶ 15, 3g. | Too vague and overbroad to properly respond, and thus disputed and unsupported by the record. |
| 98. | Police officers are trained that they are responsible for justifying every shot when they use deadly force. | Ex. C (Estrella Depo.) at 64:11-13; Bryce Decl. at ¶ 3f. | Undisputed. |
| The Shooting Was Inappropriate and Contrary to Police Standards and Training | | | Defs' Response |
| 99. | From the standpoint of police practices, Officers Estrella's and Davalos' uses of deadly force were improper, inappropriate and contrary to POST standards and basic police training, including for the following | Bryce Decl. at ¶ 17. | Too vague, overbroad, and compound to properly respond, and thus disputed as unsupported by the record and blatantly contradicted by the |

- 24 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

reasons: (1) there was no "immediate defense of life" situation at the time of the shots; (2) a subjective fear or fear of future harm is insufficient to justify the use of deadly force; (3) on Plaintiff's facts, Mr. Urena was unarmed during all of the shots, and according to Defendant's expert, Mr. Urena was unarmed during at least 34 of the shots; (4) all 36 shots were fired when Mr. Urena was on the ground; (5) a gun in the hand is insufficient to justify a use of deadly force, and Mr. Urena never pointed the gun at the officers and never turned toward the officers with the gun, and the gun was in a holster; (6) the officers could not justify shooting Mr. Urena for fleeing or running away with a gun in

record. See generally Defs' Facts 1-46.

- 25 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

| | | |
|---|---|---|
| his hand; (7) Mr. Urena committed no crime involving the infliction of serious injury or death; (8) Mr. Urena made no verbal threats; (9) the officers had reasonable alternative measures rather than shooting; (10) the officers showed no reverence for human life when they shot Mr. Urena 36 times; (11) officers are responsible for justifying every shot, and none of the shots are justified, and certainly not the 34 or 35 shots fired while Urena was unarmed and on the ground; (12) given the number of shots, particularly the number of shots fired when Mr. Urena was unarmed and on the ground, this appears to be a case of contagious fire. | | |

- 26 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

DATED:  April 6, 2026          CARPENTER, ROTHANS & DUMONT LLP


                                        */s/  Scott J. Carpenter*

                               By:  _____

                                        Steven J. Rothans
                                        Scott J. Carpenter
                                        Attorneys for Defendants

- 27 -

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS