LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:    (818) 347-3333
Fax:    (818) 347-4118

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO URENA, individually, | Case No.: 5:24-cv-00341-JGB-SHK |
| Plaintiff, | **PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF, ARGUMENT REGARDING, OR REFERENCES TO PLAINTIFF'S CRIMINAL RECORD, ALLEGED GANG AFFILIATION, AND PRIOR BAD ACTS** |
| vs. | |
| CITY OF SAN BERNARDINO, JONATHAN DAVALOS, ANDRES ESTRELLA, | FPTC:        6/8/2026 |
| | Time:        11:00 a.m. |
| | Crtrm:      1 |
| Defendants. | Trial:        6/23/2026 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Plaintiff hereby moves *in limine* for an order excluding any evidence, testimony, argument, or reference at trial to Plaintiff Renato Urena's criminal history and prior bad acts, including but not limited to: (1) contacts with law enforcement, arrests, charges, convictions, and periods of incarceration occurring prior to this incident; (2) criminal charges filed against Mr. Urena arising from this incident, Mr. Urena's conviction by plea deal under §29800 (felon in possession of a firearm) and §2800.1 (evading police) relating to this incident, and Mr. Urena's incarceration relating to this incident; (3) subsequent contacts with law enforcement, arrests, charges, convictions, and periods of

i

incarceration occurring after this incident (unrelated to this incident); (4) allegations that Mr. Urena was affiliated with a gang and/or has gang tattoos, and/or was in a "gang area" at the time of the shooting; (5) Mr. Urena's probation status; (6) Mr. Urena's current incarceration status (to the extent that he is still incarcerated at the time of trial). Plaintiff makes this Motion pursuant to Federal Rules of Evidence 401, 402, 403, and 404.

Plaintiff's current custodial release date is May 18, 2026. However, to the extent that Mr. Urena is still incarcerated at the time of trial, then Plaintiff also seeks an order by this Court that Mr. Urena be permitted to dress into plainclothes and not be handcuffed or shackled for his appearance at trial, and that any deputies, custodial officers, etc. accompanying Mr. Urena also be instructed not to wear any prison/custodial uniforms and any badge, duty belt, or other article of clothing that would indicate that they are law enforcement officers, at least when they are in the presence of the jury.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

**Statement of Local Rule 7-3 Compliance**:  This Motion is made following a conference of counsel during which no resolution could be reached. Plaintiff's counsel Renee V. Masongsong met and conferred with defense counsel Scott Carpenter via written correspondence and Zoom between May 4, 2026, and May 5, 2026.

Dated: May 11, 2026

LAW OFFICES OF DALE K. GALIPO

By:  *s/ Renee V. Masongsong*
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiff, Renato Urena

ii

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.       INTRODUCTION**

This civil rights case arises from the non-fatal shooting of Plaintiff Renato Urena ("Mr. Urena") by City of San Bernardino Police Department Officers Andres Estrella and Jonathan Davalos on February 10, 2023. On Plaintiff's facts, Mr. Urena posed no immediate threat of death or serious bodily injury to any person at the time of the shots. Therefore, the shooting violated Mr. Urena's right to be free from excessive and unreasonable force under federal and state law. Mr. Urena brings state and federal causes of action for: (1) Excessive Force under 42 U.S.C. § 1983 and the Fourth Amendment; (2) Battery; (3) Negligence; (4) Violation of Cal. Civil Code § 52.1. This Motion seeks to exclude all evidence of Mr. Urena's criminal history, prior bad acts, and alleged gang affiliation – both before and after the incident – because such evidence is irrelevant, unfairly prejudicial, constitutes improper character evidence, and would violate the fundamental principle that use of force must be evaluated solely from the perspective of what the Officers knew at the moment force was used.

At the time of the incident, the officers had never seen Mr. Urena before, and they had no specific information about Mr. Urena's criminal history, including whether Mr. Urena had any criminal convictions prior to the shooting. (Estrella Depo. at 12:4-12; Davalos Depo. at 38:1-19; Dkt. 28-7, 28-8). The officers also had no information that Mr. Urena had injured anyone, threatened anyone, or committed any violent crime prior to the shooting. (Estrella Depo. at 63:17-25; Davalos Depo. at 38:1-9; Dkt. 28-7, 28-8). After the shooting, Mr. Urena was charged under California Penal Code §245 (assault with a deadly weapon), §29800 (felon in possession of a firearm) and §2800.1 (evading police) for his conduct arising from the incident. On or around June 18, 2024, Mr. Urena pled guilty to "felon in possession of a firearm" and "evading police," and he served a period of incarceration for these two offenses only.

1

Subsequently, and unrelated to the incident, Mr. Urena faced charges under PC § 30305(A)(1)-F (prohibited person own ammo), PC §12022.1(B)-E (commit crime while on bail), and HS §11377(a)-M (possess dangerous drug/controlled substances). These charges were dismissed in the interest of justice. Mr. Urena is currently incarcerated, with an anticipated release date of May 18, 2026.

Plaintiff anticipates that Defendants will attempt to introduce inflammatory evidence of Mr. Urena's criminal record for the purpose of unduly prejudicing Plaintiff and misleading the jury into thinking that such evidence can be used to justify the officers' use of force or reduce Mr. Urena's compensatory damages. Such evidence would improperly invite the jury to conclude that Mr. Urena "deserved" to be shot or that his damages should be diminished based on his character rather than the objective reasonableness of the officers' actions. Accordingly, by way of this motion, Plaintiff seeks to exclude evidence, testimony, argument, or reference to his criminal history, including but not limited to the following: (1) contacts with law enforcement, arrests, charges, convictions, and periods of incarceration occurring prior to this incident; (2) criminal charges filed against Mr. Urena arising from this incident, Mr. Urena's conviction by plea deal under §29800 (felon in possession of a firearm) and §2800.1 (evading police) relating to this incident, and Mr. Urena's incarceration relating to this incident; (3) subsequent contacts with law enforcement, arrests, charges, convictions, and periods of incarceration occurring after this incident (unrelated to this incident); (4) allegations that Mr. Urena was affiliated with a gang and/or has gang tattoos, and/or was in a "gang area" at the time of the shooting; (5) Mr. Urena's probation status; (6) Mr. Urena's current incarceration status (to the extent that he is still incarcerated at the time of trial). Plaintiff makes this Motion pursuant to Federal Rules of Evidence 401, 402, 403, and 404.

## II.    ARGUMENT

### A. Evidence of Mr. Urena's Criminal Record is not Relevant.

Since the United States Supreme Court first elucidated the Fourth

Amendment reasonableness standard in police use of force cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Glenn v. Washington Cnty.*, 673 F.3d 864, 873, n.8 (9th Cir. 2011) ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways."). Accordingly, juries in the Ninth Circuit are expressly instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene" at the time of the use of force "and not with the 20/20 vision of hindsight." *Id.*; Ninth Circuit Model Jury Instruction 9.25; *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). Furthermore, "evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986). Relevant evidence is only that "evidence having [a] tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Here, Mr. Urena's criminal history has zero relevance to the central question in this case, which is whether the officers's use of deadly force was objectively reasonable based on the facts and circumstances confronting them at the moment they fired the shots. Because the officers were completely unaware of Mr. Urena's criminal history and subsequent convictions at the time of the shooting, this evidence cannot possibly shed light on whether the officers' actions were reasonable at the time.

In light of how the jury will be instructed and given the great weight of Supreme Court and Ninth Circuit authority on this issue, permitting the jury to learn about Mr. Urena's criminal record (both before and after the incident), probation status, prior contacts with law enforcement, and periods of incarceration would

3

violate this well-established precedent. Given that this hindsight evidence is not relevant to the jury's reasonableness determination, any probative value would be substantially outweighed by the risk of unfair prejudice that the jury would rest its decision on an improper basis and judge the officers' conduct with 20/20 hindsight.

It is clear that Mr. Urena's criminal record prior to the February 10, 2023, shooting is irrelevant to whether the officers' use of deadly force against Mr. Urena was reasonable. Mr. Urena's charges, conviction and incarceration arising from the shooting incident is also irrelevant, and the officers clearly did not have information about Mr. Urena's future charges and convictions at the time of the shooting. After the shooting, Mr. Urena was charged under California Penal Code §245(d)(1) (assault with a deadly weapon), §29800 (felon in possession of a firearm) and §2800.1 (evading police) for his conduct arising from the incident. On or around June 18, 2024, Mr. Urena pled guilty to "felon in possession of a firearm" and "evading police," and he served a period of incarceration for these two offenses only. The PC §245(d)(1) was dismissed, such that introduction of this charge is irrelevant. Plaintiff does not dispute that he had a firearm at some point during this incident and does not dispute that he ran from police, making the PC §29800 (felon in possession of a firearm) and §2800.1 (evading police) charges of extremely minimal probative value.

## B. Evidence of Mr. Urena's Criminal Record is Unfairly Prejudicial, a Waste of Judicial Time, and Confusing to the Jury.

As described above, Mr. Urena's criminal record has no probative value in this case. In the alternative, if there is any probative value to this evidence, it is substantially outweighed by the danger of unfair prejudice. Accordingly, it should be excluded under Rule 403 of the Federal Rules of Evidence. Rule 403 excludes even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

4

evidence." "Unfair prejudice" means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

With respect to Mr. Urena's criminal record prior to the February 10, 2023, shooting, there is a real danger that the jury might incorrectly assume that because Mr. Urena committed crimes in the past, he was committing a crime at the time of his contact with The officers. Admission of this evidence poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (en banc); *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central factual dispute in this case is whether the officers' use of deadly force was objectively reasonable under the circumstances. Mr. Urena is not on trial. His prior conduct does not bear on the reasonableness of the officers' conduct. If Defendants are permitted to introduce evidence of Mr. Urena's criminal history, record, then that will compel Plaintiff to explain the circumstances of these acts, delve into whether Mr. Urena was actually convicted of each of these charges, or otherwise to try to mitigate their prejudicial impact. This will distract the jury from its central task and will unduly consume this Court's and the jury's time. *See Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) (finding it improper in a civil rights case against officers for the district court to admit plaintiff's criminal history—turning "trial of the defendants into a trial of the plaintiff").

With respect to the charges filed against Mr. Urena relating to the February 10, 2023, there is an additional layer of acute danger that the jury will reach a conclusion based on improper considerations and assumptions. The danger presented by introduction Mr. Urena's PC §245(d)(1) charge and other

5

charges/convictions arising from this incident is that they may usurp the jury's role to independently weigh the evidence and reach its own conclusion based on the facts and the law in the civil case. The jury should decide the case based on its own evaluation of the evidence presented at the trial of the instant civil case, and not based on what charges the district attorney determined to file. Determining the reasonableness of the officers's actions is a task for the jury, and there is a significant risk that the jury might give undue deference to the conclusions of the district attorney. The jury may also be confused about the procedural criminal process, including why or how the PC §245(d)(1) was dismissed. This would result in a mini-trial to explain these collateral issues to the jury.

Similarly, Plaintiff anticipates that the officers might argue at trial that Mr. Urena was affiliated with a gang. Whereas the officers testified at their depositions that Mr. Urena was in a "gang area" at the time of the shooting, Mr. Urena testified that he was in the area to visit a friend who was suffering from cancer. The officers had no information at the time of the shooting that Mr. Urena was affiliated with any gang. (Davalos Depo. at 38:16-19, Dkt. 28-8). Mr. Urena testified at his deposition that he has never been affiliated with any gang. Mr. Urena also  testified that he has a tattoo back that says "Counts," a tattoo of the letters "LCG" behind his ear, and a tattoo of the letters "WSV" on his right ear.  He testified that the tattoos do refer to the Little Counts gang and the West Side Verdugos gang, but that he was never affiliated with either gang, and he only got the tattoos because he was young and "dumb." Explaining this to the jury would unnecessarily consume Court time and would be confusing and prejudicial. Plaintiff requests that this Court instruct Defendants not to even use the word "gang" during trial.

For all the above reasons, Mr. Urena's entire criminal record, as well as allegations of gang affiliation and information about his tattoos, should be excluded in full. In the alternative, if the Court determines that some of this inflammatory evidence may be potentially relevant, the Court should hold a brief hearing outside

the presence of the jury under Rule 104(a) to establish relevance, foundation, and any appropriate limits on its use before the jury is permitted to hear any of it.

### C. Mr. Urena's Criminal Record is Improper Character Evidence

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Introduction of Mr. Urena's criminal record would suggest an improper inference based on character evidence, to the extent that the jury might infer from the fact that Mr. Urena engaged in bad conduct on another occasion that he gave the officers probable cause to believe that he had committed a crime on the date in question. *See Evans v. City of San Diego*, 913 F. Supp. 2d 986, 992-93 (S.D. Cal. 2012) (in false arrest case, evidence of plaintiff's conduct outside the time frame of the arrest is inadmissible character evidence). Since any evidence of Mr. Urena's criminal record, as well as his gang tattoos, would require an inference as to Mr. Urena's character to make it relevant, such that it is inadmissible.

### D. To the extent Mr. Urena is Incarcerated During Trial, this Court Should Issue an Order Permitting Him and any Accompanying Custodial Officers to Be Dressed in Plainclothes.

Plaintiff's current custodial release date is May 18, 2026.  However, to the extent that Mr. Urena is still incarcerated at the time of trial, then Plaintiff also seeks an order by this Court that Mr. Urena be permitted to dress into plainclothes and not be handcuffed or shackled for his appearance at trial, and that any deputies, custodial officers, etc. accompanying Mr. Urena at trial also be prohibited from wearing any prison/custodial uniforms and any badge, duty belt, or other article of clothing that would indicate that they are law enforcement officers, when they are in the presence of the jury.

//

//

7

**E. Any Reports and Certain Statements Pertaining to Mr. Urena's Criminal History Are Hearsay Under Federal Rules of Evidence, Rules 801 and 802.**

Finally, any reports containing the above information would constitute hearsay under Federal Rules of Evidence, Rules 801 and 802. Even if a hearsay statement falls under an exception to the rule, it is not admissible if such statement consists of one or more statements that are themselves hearsay. Accordingly, this evidence should also be excluded on this ground.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests the Court grant his motion *in limine* to exclude all information regarding Mr. Urena's criminal record, prior bad acts, and alleged gang affiliation as described above and as set forth in the proposed order filed concurrently herewith.

Respectfully submitted,

Dated: May 11, 2026                    LAW OFFICES OF DALE K. GALIPO

                              By:   *s/ Renee V. Masongsong*
                                    Dale K. Galipo
                                    Renee V. Masongsong
                                    Attorneys for Plaintiff, Renato Urena

8