# EXHIBIT L

**FILED**
CLERK, U.S. DISTRICT COURT

4-21-2026

**CENTRAL DISTRICT OF CALIFORNIA**
BY: ____PG____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EMILY GARCIA; and C.G., by and through her guardian ad litem, Rosala Becerra, individually and as successors-in-interest,

Plaintiffs,

v.

CITY OF TUSTIN; ESTELLA SILVA; and DOES 1 through 10, inclusive,

Defendants.

Consolidated with WENDY LORENA GALICIA RAMIREZ, et al. v. CITY OF TUSTIN, et al.

Case No. 8:22-cv-00131-SPG-KES

**JURY INSTRUCTIONS**

The following are the Court's jury instructions to guide your consideration of the evidence in this case.

Dated: 4/21/2026

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-1-

8. The severity of the security problem at issue;

9. The availability of alternative methods to take Luis Garcia into custody;

10. The number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

11. Whether it was practical for Officer Silva to give warning of the imminent use of force, and whether such warning was given;

12. Whether it should have been apparent to Officer Silva that Luis Garcia was emotionally disturbed;

13. Whether a reasonable officer would have or should have accurately perceived a mistaken fact.

**JURY INSTRUCTION NO. 26.**

**Bane Act – Essential Factual Elements (Civ. Code § 52.1)**

For Claim Two, Plaintiffs claim that Officer Silva intentionally interfered with Luis Garcia's civil rights by using excessive force against him.

To establish this claim, Plaintiffs must prove:

1. That Officer Silva used excessive force against Luis Garcia;

2. That Officer Silva intended to deprive Luis Garcia of his constitutional right to be free from excessive force, which may be demonstrated by a reckless disregard for Mr. Garcia's constitutional right to be free from excessive force;

3. That Luis Garcia was harmed; and

4. That Officer Silva's conduct was a substantial factor in causing Luis Garcia's harm.

Officer Silva's conduct was in "reckless disregard" of Luis Garcia's constitutional rights if, under the circumstances, it reflects complete indifference to Luis Garcia's constitutional rights, or Officer Silva acted in the face of a perceived risk that her actions would violate Luis Garcia's constitutional rights.

-31-

**JURY INSTRUCTION NO. 27.**

**(Battery by Peace Officer (Deadly Force) – Essential Factual Elements)**

A peace officer may use deadly force only when necessary in defense of human life. For Claim Three, Plaintiffs claim that Officer Silva committed a battery. To establish this claim, Plaintiffs must prove all of the following:

1. That Officer Silva intentionally shot Luis Garcia;

2. That Officer Silva used deadly force against Luis Garcia;

3. That Officer Silva's use of deadly force was not necessary to defend human life;

4. That Luis Garcia was harmed and/or killed; and

5. That Officer Silva's use of deadly force was a substantial factor in causing Luis Garcia's harm and/or death.

Officer Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Officer Silva or to another person.

A person being arrested or detained has a duty not to use force to resist the officer unless the officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and

-32-

addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Officer Silva and Luis Garcia leading up to the use of deadly force. In determining whether Officer Silva's use of deadly force was necessary in defense of human life, you must consider Officer Silva's tactical conduct and decisions before using deadly force on Luis Garcia and whether Officer Silva used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to do so. You must also consider whether Officer Silva knew or had reason to know that Luis Garcia was suffering from a physical, mental health, developmental, or intellectual disability that may have affected his ability to understand or comply with commands from the officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

-33-

**JURY INSTRUCTION NO. 28.**

**(Negligent Use of Deadly Force by Peace Officer – Essential Factual Elements)**

A peace officer may use deadly force only when necessary in defense of human life. For Claim Four, Plaintiffs claim that Officer Silva was negligent in using deadly force against Luis Garcia.  To establish this claim, Plaintiffs must prove all of the following:

1. That Officer Silva was a peace officer;

2. That Officer Silva used deadly force against Luis Garcia;

3. That Officer Silva's use of deadly force was not necessary to defend human life;

4. That Luis Garcia was harmed and/or killed; and

5. That Officer Silva's use of deadly force was a substantial factor in causing Luis Garcia's harm and/or death.

Officer Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Silva at the time of the shooting, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Officer Silva or any other person.

A person being arrested or detained has a duty not to use force to resist the officer unless the officer is using unreasonable force.

"Deadly force" is force that creates a substantial risk of causing death or serious bodily injury.  It is not limited to the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person.  An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

-34-

"Totality of the circumstances" means all facts known to or perceived by Officer Silva at the time of the shooting, including the conduct of Officer Silva and Luis Garcia leading up to the use of deadly force. In determining whether Officer Silva's use of deadly force was necessary in defense of human life, you must consider Officer Silva's tactical conduct and decisions before using deadly force against Luis Garcia and whether Officer Silva used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer. You must also consider whether Officer Silva knew or had reason to know that the person against whom she used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officers.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance.

-35-

**JURY INSTRUCTION NO. 29.**

**(Comparative Fault of Decedent)**

Defendants claim that Luis Garcia's own negligence contributed to his death. To succeed on this claim, Defendants must prove both of the following:

    1.  That Luis Garcia was negligent; and,

    2.  That Luis Garcia's negligence was a substantial factor in causing his death.

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

If Defendants prove the above, Plaintiffs' damages on the negligence claim, Claim Four, are reduced by your determination of the percentage of Luis Garcia's responsibility. I will calculate the actual reduction.

-36-

## JURY INSTRUCTION NO. 30.

### (Causation – Substantial Factor)

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

-37-

## JURY INSTRUCTION NO. 31.

### (Damages)

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Plaintiffs on any of their claims, you must determine Plaintiffs' damages. Plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Plaintiffs and/or Luis Garcia for any injury you find was caused by the Defendants.

You should consider the following as to Luis Garcia's damages:

1. The nature and extent of the injuries;

2. Luis Garcia's loss of life and loss of enjoyment of life; and

3. The mental, physical, and emotional pain and suffering experienced prior to his death.

You should consider the following as to the Plaintiffs' damages:

1. The loss of Luis Garcia's love, companionship, comfort, care, assistance, protection, affection, society, and moral support; and

2. Funeral and burial expenses.

In determining Plaintiffs' loss, do not consider:

1. Plaintiffs' grief, sorrow or mental anguish;

2. The pain and suffering of Luis Garcia;

3. The poverty or wealth of Plaintiffs.

It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**JURY INSTRUCTION NO. 32.**

**(Duty of Jury)**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## JURY INSTRUCTION NO. 33.
### (Duty to Deliberate)

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**JURY INSTRUCTION NO. 34.**

**(Consideration of Evidence – Conduct of the Jury)**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or

-41-

the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

## JURY INSTRUCTION NO. 35.

### (Evidence in Electronic Format)

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer will be available to you in the jury room.

A court technician will show you how to operate the computer and how to locate and view the exhibits on the computer. You will also be provided with a paper list of all exhibits received in evidence. If you have questions about how to operate the computer, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

-43-

## JURY INSTRUCTION NO. 36.
### (Communication with Court)

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## JURY INSTRUCTION NO. 37.

### (Return of Verdict)

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.