# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 24-0341 JGB (ACCVx)** | Date | May 28, 2026 |
|---|---|---|---|
| Title | ***Renato Urena v. City of San Bernardino, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) DENYING Defendant's Motion for Summary Judgment (Dkt. No. 24); and (2) VACATING the June 1, 2026, Hearing (IN CHAMBERS)**

Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). ("Motion," Dkt. No. 24.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** Defendants' Motion. The June 1, 2026, hearing is **VACATED**.

## I.   BACKGROUND

On February 9, 2024, Plaintiff Renato Urena filed a complaint against Defendants City of San Bernardino, Jonathan Davalos, Andres Estrella, and Does 1-10. ("Complaint," Dkt. No. 1.) The Complaint alleges ten causes of action: (1) unlawful detention and arrest under 42 U.S.C. § 1983; (2) unreasonable search and seizure—excessive force under 42 U.S.C. § 1983; (3) unreasonable search and seizure—denial of medical care under 42 U.S.C. § 1983; (4) municipal liability for unconstitutional custom, practice, or policy under 42 U.S.C. § 1983; (5) municipal liability for ratification under 42 U.S.C. § 1983; (6) municipal liability for failure to train under 42 U.S.C. § 1983; (7) false arrest/false imprisonment; (8) battery; (9) negligence; and (10) violation of California Civil Code § 52.1 (See Compl.) On June 6, 2024, Defendants filed their answer. ("Answer," Dkt. No. 11.) On March 9, 2026, the Court approved the parties' stipulation to dismissal with prejudice of claims 1, 3, 4, 5, 6, and 7. (Dkt. No. 27.)

The instant Motion was filed on March 9, 2026. (Mot.) In support of the Motion, Defendants filed the following:

- Statement of Undisputed Facts ("Def. SUF," Dkt. No. 24-1);
- Declaration of Scott J. Carpenter and attached exhibits ("Carpenter Decl.," Dkt. No. 24-2); and
- Request for Judicial Notice ("RJN," Dkt. No. 25).

Plaintiff opposed the Motion on March 23, 2026. ("Opposition," Dkt. No. 28.) Plaintiff's Opposition is accompanied by:

- Objections to Evidence and Facts ("Pl. Obj.," Dkt. No. 28-1);
- Statement of Undisputed Facts ("Pl. SUF," Dkt. No. 28-2);
- Declaration of Richard Bryce ("Bryce Decl.," Dkt. No. 28-3); and
- Declaration of Renee V. Masongsong and attached exhibits ("Masonsong Decl.," Dkt. No. 28-4).

Defendants replied on January 13, 2026. ("Reply," Dkt. No. 29.) Defendants' Reply is accompanied by:

- Objections to Facts and Evidence ("Def. Obj.," Dkt. No. 31); and
- Response to Pl. SUF ("Def. Resp.," Dkt. No. 30).

## II. FACTS

### A. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. P. 56(e). For summary judgment, courts consider evidence with ***content*** that would be admissible at trial, even if the ***form*** of the evidence would not be admissible at trial. See, e.g., Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The Court considers the parties' objections only where necessary.[1] All other objections are **OVERRULED AS MOOT**.
//
//
//
//

---

[1] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are therefore "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

## B. Undisputed Facts

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted.  They are "admitted to exist without controversy" for purposes of the Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

On February 10, 2023, around 10:15 a.m., San Bernardino Police Department ("SBPD") Officers Jonathan Davalos and Andres Estrella ("Officer Defendants") were on duty in the area of 14th Street and K Street in San Bernardino.  (Def. SUF ¶ 1.)  The Officer Defendants were on duty as partners assigned as district resource officers in the area, and were in a marked police vehicle.  (Id.)  Prior February 10, 2023, the Officer Defendants had received at tip about a Hispanic male in a gray or silver Nissan Versa who was possibly armed with a gun around the area near 14th Street and K Street.[2]  (Id. ¶ 2.)  The Officer Defendants were familiar with that area, which was known gang territory.[3]  (Id. ¶ 3.)  Prior to that day, the Officer Defendants had never seen Plaintiff and had no knowledge of whether he had a criminal history.  (Pl. SUF ¶ 47.)  The Officer Defendants also had no information that Plaintiff had injured anyone, threatened anyone, committed any violent crime, or was affiliated with any gang.  (Id. ¶¶ 48, 50.)  The Officer Defendants had no information that Plaintiff was the subject of the tip or the registered owner of the car, nor did they have a photograph of the driver or a license plate for the car.  (Id. ¶ 49.)

On February 10, 2023, Plaintiff was seen driving a silver Nissan Versa near K Street and 14th Street after having just left a friend's house where he had used marijuana.  (Def. SUF ¶ 4.)  Plaintiff was driving without a valid driver's license and was armed with a .40 caliber handgun, which was in the front pouch of his hooded sweatshirt.  (Id. ¶ 5.)  The Officer Defendnats observed Plaintiff's car turn westbound onto 14th Street from K Street.  (Id. ¶ 6.)  They noticed that the car had a cracked windshield, possibly in violation of California Vehicle Code § 26710. (Id. ¶ 7.)  As the Officer Defendants followed the car westbound on 14th Street, they observed the car fail to completely stop at an intersection with a stop sign in violation of Vehicle Code § 22450.  (Id. ¶ 8.)  The Officer Defendants decided to initiate a traffic stop and activated their vehicle's overhead lights and sired as they approached the intersection of 14th Street and Mount Vernon Avenue.  (Id. ¶ 9.)

---

[2] Plaintiff inadequately disputes this fact.  (See "Standing Order," Dkt. No. 7, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").)  Plaintiff argues that the Officer Defendants had no information that Plaintiff was the subject of that tip or the registered owner of the car, nor a photo of the driver or license plate.  But the fact does not assert as much—it only asserts that there was a tip of this nature.  As such, this fact is deemed undisputed.

[3] Plaintiff inadequately disputes this fact.  Plaintiff offers a reason for why Plaintiff was in the area and notes that there was no information he was gang-affiliated.  But the fact only asserts what was generally known about the area, it does not assert anything about Plaintiff's relation to the gang activity there.  As such, this fact is deemed undisputed.

Estrella observed Plaintiff reaching around inside the car.  (Id. ¶ 10.)  Estrella then said to Davalos, "He's reaching."  (Id.)  Plaintiff's car did not pull over, but instead ran the stop sign at 14th Street and Mount Vernon Avenue while turning northbound onto Mount Vernon Avenue.  (Id. ¶ 11.)  Plaintiff drove the car northwest, crossing into the opposing southbound traffic lanes on Mount Vernon Avenue.  (Id. ¶ 12.)  He drove until he abandoned the vehicle along the western curb in front of a driveway leading to a vacant lot between 14th Street and Magnolia Avenue.  (Id.)  Plaintiff then fled westbound through the vacant lot while grabbing at his waistband with at least one hand.  (Id. ¶ 13.)  The Officer Defendants exited their vehicle and pursued Plaintiff on foot.[4]  (Id. ¶ 14.)  Estrella yelled to Plaintiff, "Hey, let me see your hands."  (Id. ¶ 15.)  Plaintiff continued running westbound while grabbing at his waistband.  (Id. ¶ 16.)

Davalos radioed dispatch that the officers were engaged in a foot pursuit.  (Id. ¶ 17.)  Estrella yelled at Plaintiff, "Let me see your fucking hands."  (Id.)  Around this time, Plaintiff's right elbow shifted outward and slightly upward as his left arm shifted inward toward the front of his body.[5]  (Id. ¶ 18.)  At the time that the officers claim they first saw a gun on Plaintiff, they did not take cover, yell out "gun," or notify dispatch that they were chasing someone they believed had a gun.  (Pl. SUF ¶ 55.)  Plaintiff continued to run westbound into the vacant lot toward residential properties.  (Def. SUF ¶ 18.)  The Officer Defendants slowed and unholstered their firearms while shouting additional commands for Plaintiff to show his hands and stop reaching.  (Id. ¶ 19.)  Plaintiff continued running through the lot with his hands near his waistband area, and then turned southwest across the lot toward a corner where a residence's chain-link fence met a vacant field with tall, overgrown vegetation.  (Id. ¶ 20.)  The Officer Defendants continued giving commands to Plaintiff to stop reaching, and Davalos told Estrella, "He's reaching."  (Id. ¶ 21.)  Davalos then yells, "Stop reaching.  You're gonna get fucking shot."  (Id. ¶ 22.)  Estrella yells, "Stop reaching."  (Id.)  As Plaintiff ran from the Officer Defendants, he did not say anything to them.  (Id. ¶ 23.)

//
//
//
//
//
//
//

---

[4] It is disputed whether the Officer Defendants made a poor tactical decision when they pursued Plaintiff on foot without cover when they believed he may be armed.  (Def. Resp. ¶ 52.)  It is also disputed that officers are trained that, when engaged in a foot pursuit of a person with a gun, they should try to take cover, create distance, set up containment or a perimeter, and call for backup.  (Id. ¶¶ 53-54.)

[5] It is disputed whether Plaintiff grabbed a firearm from his waistband area at this time.  The Officer Defendants assert that they saw him pull a firearm from his waistband, while Plaintiff testified at his deposition that he did not pull the gun out while he was running through the lot.  (See id. ¶ 18; Deposition of Renato Urena ("Plaintiff Depo."), Dkt. No. 28-5 at 54.)  The resolution of this fact issue is reserved for a jury.

As Plaintiff reached the overgrown field, he turned counterclockwise toward the officers.[6] (Id. ¶ 24.)  Plaintiff then unexpectedly went down to the ground into the thick vegetation.[7] (Id. ¶ 25.)  As the Officer Defendants approached the overgrown field, Davalos yelled, "He has a gun, he has a gun" and Estrella yelled, "He has one." (Id. ¶ 26.)  Once Plaintiff was on the ground, parts of his body were obscured by vegetation. (Id. ¶ 27.)  The Officer Defendants observed Plaintiff laying on the ground with his feet closer to the officers.[8] (Id.)  Plaintiff started to move his right arm in the Officer Defendants' direction.[9] (Id. ¶ 28.)  The Officer Defendants, in fear of their lives, then fired at Plaintiff.[10] (Id. ¶ 29.)  Based on their experience as police officers, the Officer Defendants knew that when a subject is running with a gun, the subject might try to toss the gun because they do not want to get caught with it.[11] (Pl. SUF ¶ 66.)  Just as the first shot was

---

[6] It is disputed whether Plaintiff was trying to target the officers, which is a question for the jury. (See id. ¶ 24.)  Plaintiff inadequately disputes whether he was still holding the gun at this time.  While Plaintiff testified at his deposition that he discarded the firearm prior to reaching the field, the body-worn camera footage indisputably shows that Plaintiff did not toss the gun until he was already in the vegetation.  (See Carpenter Decl., Ex. 13.)  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

[7] It is disputed why Plaintiff went down to the ground.  The Officer Defendants assert that they feared it was an attempt by Plaintiff to achieve a concealed shooting position from which to ambush the officers, but Plaintiff testified that he fell to the ground because he had been shot.  (Id. ¶ 25; Plaintiff Depo. at 58.)  Plaintiff also points to Estrella's deposition testimony where he describes shooting Plaintiff before he went to the ground.  (Deposition of Andres Estrella ("Estrella Depo."), Dkt. No. 24-11 at 36.)  Plaintiff asserts that it was inappropriate for the Officer Defendnats to believe that Plaintiff went to the ground to gain a position of advantage.  (Pl. SUF ¶ 60.)  This is a question for the jury.

[8] It is disputed where Plaintiff's hands were while he was on the ground.  The Officer Defendants assert that Plaintiff was facing the officers on the ground with his arms outstretched in their direction, but Plaintiff testified that his hands were on the ground.  (Id. ¶ 27; Plaintiff's Depo. at 62.)

[9] It is disputed whether Plaintiff pointed the gun at the Officer Defendants and whether he turned toward the Officer Defendants with a gun in his hand at any time.  (Pl. SUF ¶ 59; Def. Resp. ¶ 59.)  This is a question for the jury.

[10] Plaintiff inadequately disputes this fact.  Plaintiff disputes this fact on the basis that the Officer Defendants did not have an objectively reasonable belief that Plaintiff posed an immediate threat of death or serious bodily injury.  The fact does not assert whether the Officer Defendants' beliefs were reasonable, only that this is what they believed.  As such, this fact is deemed undisputed.

[11] It is disputed whether, pursuant to police training on situational awareness, a reasonable officer in the Officer Defendants' position would have seen Plaintiff toss the gun.  (Pl. SUF ¶ 67; Def. Resp. ¶ 67.)

---

**CIVIL MINUTES—GENERAL**           Initials of Deputy Clerk mg

fired and Plaintiff's arm raised into the air, the gun left Plaintiff's hand and travels upward.[12] (Def. SUF ¶ 30.) At no point during the course of the shooting did either officer see the gun leave Plaintiff's hand.[13] (Id. ¶ 31.) Neither Officer Defendant ever gave Plaintiff the specific command to "drop it." (Pl. SUF ¶ 80.) Nor did they give any commands during the shooting sequence. (Id. ¶ 81.) Police officers are trained to give verbal warnings prior to using deadly force when feasible, but Officer Estrella did not give Plaintiff a verbal warning that he was prepared to use deadly force before shooting him. (Id. ¶¶ 82-83.)

Due to seeing Plaintiff continue to make movements during the course of the shooting, because the overgrown vegetation obscured part of Plaintiff's body, including his hands, and because the Officer Defendants did not see the gun leave Plaintiff's hand, the Officer Defendnats each fired 18 shots while reassessing during the course of the shooting. (Def. SUF ¶ 32.) All of the shots were fired while Plaintiff was on the ground. (Pl. SUF ¶ 62.) At least 34 shots were fired after Plaintiff discarded the gun. (Id. ¶ 68.) When Estrella paused to reassess during the shooting, he was aware Plaintiff was on the ground. (Id. ¶ 63.) The Officer Defendants were looking toward Plaintiff's hands when they were firing.[14] (Id. ¶ 74.) While both Officer Defendants had body-worn cameras on, the gun is visible only in Davalos's video for approximately 1/6 of a second. (Id. ¶ 69.) Based on the video, the first shot was fired approximately 1/15 of a second before Plaintiff began to throw the gun over the fence. (Id. ¶ 70.) The second shot was fired as the gun was leaving Plaintiff's hand or was in the air. (Id. ¶ 71.)

Plaintiff did not say anything to the Officer Defendants during the course of the shooting. (Def. SUF ¶ 33.) Davalos radioed to dispatch, "Shots fired." (Id. ¶ 34.) He ordered Plaintiff to stop reaching and put his hands behind his head while Estrella radioed to dispatch their location. (Id. ¶ 35.) The Officer Defendants then approached Plaintiff and Estrella handcuffed him. (Id. ¶ 36.) Once Plaintiff was handcuffed, Davalos radioed to inform dispatch that Plaintiff was in custody and to request medical assistance. (Id. ¶ 37.) Estrella conducted a cursory search of

---

[12] Plaintiff inadequately disputes this fact. Plaintiff asserts that he testified that he did not have a gun when he was in the field and that he had already tossed it over the fence, but the body-worn camera footage indisputably shows the gun traveling from Plaintiff's hand into the air while he is already in the vegetation. (See Carpenter Decl., Ex. 13); Scott v. Harris, 550 U.S. at 380. As such, this fact is deemed undisputed. Separately, it is disputed whether it would be appropriate for the Officer Defendants to shoot Plaintiff for tossing the gun. (Pl. SUF ¶ 65; Def. Resp. ¶ 65.)

[13] Plaintiff inadequately disputes this fact. The fact does not assert that the Officer Defendants were reasonable in failing to see the gun leave Plaintiff's hand, only that they did not do so. As such, this fact is deemed undisputed.

[14] It is disputed how visible Plaintiff's hands were to the Officer Defendants given the foliage. (Pl. SUF ¶ 74; Def. Resp. ¶ 74.) It is also disputed whether the Officer Defendants saw the gun after Plaintiff was on the ground. (Pl. SUF ¶¶ 75, 78; Def. Resp. ¶¶ 75, 78.) These are questions for the jury.

---

Plaintiff and found needles and drug paraphernalia. (Def. SUF ¶ 28.) Plaintiff told officers that he was shot in the stomach. (Id. ¶ 39.)

Estrella searched through the vegetation around Plaintiff looking for a firearm that he expected to find, but did not.[15] The Officer Defendants later learned that the 0.40 caliber handgun was recovered in the backyard of the residence next to where Plaintiff was laying in the vegetation and that the DNA on the gun matched Plaintiff. (Id. ¶ 41.) The recovered gun was in a holster. (Pl. SUF ¶ 85.) The Officer Defendants would not have fired at Plaintiff if they had seen Plaintiff toss the gun. (Def. SUF ¶ 42.) A later search of Plaintiff's vehicle found approximately 278 ammunition cartridges of various calibers located in the trunk of the car, along with a firearm magazine. (Id. ¶ 43.)

Paramedics arrived at the scene and took Plaintiff to the hospital. (Id. ¶ 44.) Criminal proceedings were brought against Plaintiff on charges of assault with a deadly weapon, felon in possession of a firearm, and evading police in a motor vehicle. (Id. ¶ 45.) On June 18, 2024, Plaintiff entered into a plea agreement where he pled guilty to being a felon in possession of a firearm and evading police. (Id. ¶ 46.)

Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for the Officer Defendants to shoot at Plaintiff for fleeing or running away, even with a gun in his hand. (Pl. SUF ¶ 56.) The Officer Defendants were trained that seeing a gun in a suspect's hand is not a sufficient justification to use deadly force against a suspect, nor is running away. (Id. ¶¶ 57-58.) Basic police training and standards instruct that deadly force should only be used on the basis of an objectively reasonable belief that the suspect poses an immediate or imminent threat of death or serious bodily injury. (Id. ¶ 89.) Officers are trained that such a threat is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to cause death or serious bodily injury to the officer or another person. (Id. ¶ 90.) Imminent harm is not a fear of future harm, no matter how great the fear or no matter how great the likelihood of harm. (Id. ¶ 91.) Basic police training teaches that a suspect's failure to comply with officer commands alone is an insufficient basis for use of deadly force. (Id. ¶ 95.) Officers are trained that deadly force should only be used when no reasonable alternative measures are available. (Id. ¶ 96.) Police officers are trained that they are responsible for justifying every shot when they use deadly force. (Id. ¶ 98.)

### III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it

---

[15] Plaintiff inadequately disputes this fact. The fact does not assert that Estrella was reasonable in his expectation that he would find a gun, only that that is what he expected. As such, this fact is deemed undisputed.

believes demonstrate the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the nonmoving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the nonmoving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The nonmoving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Id. at 322; Anderson, 477 U.S. at 252. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The nonmoving party must show more than the mere existence of a scintilla of evidence." In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the nonmoving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Plaintiff's case involves four remaining claims: (1) unreasonable search and seizure—excessive force under Section 1983 against the Officer Defendants; (2) battery against all Defendants; (3) negligence against all Defendants; and (4) violation of California Civil Code § 52.1 against all Defendants. (Motion at 4.)

### A. Excessive Force

#### 1. Constitutionality

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted). Graham sets forth several factors to be considered when determining if the use of force in a particular case is reasonable. Those factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The Graham factors are not the exclusive considerations, and other factors courts consider include whether officers

---

"provided [Plaintiff] appropriate warnings and whether less intrusive alternatives to deadly force were available." S.R. Nehad v. Browder, 929 F.3d 1125, 1137 (9th Cir. 2019).

Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (internal citations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97.

First, with respect to the severity of the crime at issue, the Officer Defendants initially pursued Plaintiff based on a tip that a Hispanic male in a gray or silver Nissan Versa was possibly armed with a gun in the area where they first saw Plaintiff. (Def. SUF ¶ 2.) As Defendants are surely well aware, not all gun possession is illegal, so the tip did not definitively indicate criminal conduct occurred. Further, even if the Officer Defendants had known that the individual with a gun possessed it illegally, there is no evidence that the tip referenced any dangerous or threatening behavior engaged in by the individual with the alleged weapon. Defendants' Motion makes no reference to the "severity of the crime at issue" factor, and Plaintiff convincingly argues that the crime at issue was not severe. Similarly, even if the crime at issue is Plaintiff's cracked windshield or his failure to stop fully at an intersection, neither offense arises to a level of severity warranting deadly force. As such, the Court finds as a legal matter that the severity of the crime at issue factor weighs decidedly in Plaintiff's favor.

The most important factor in the Graham analysis is "whether the suspect poses an immediate threat to the safety of the officers or others." Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005). But resolving this issue is impossible at this stage given the number of disputed facts that underpin this factor. First, it is disputed whether Plaintiff pulled the gun out while he was running. (Def. SUF ¶ 18.) Further, it is disputed whether Plaintiff's movement at the edge of the field where he appears to turn partially while holding the gun constitutes an immediate threat to the Officer Defendants. (Id. ¶ 24.) "An immediate threat might be indicated by a furtive movement, harrowing gesture, or serious verbal threat." Calonge v. City of San Jose, 104 F.4th 39, 46 (9th Cir. 2024) (internal quotations omitted). But Plaintiff is not alleged to have made any verbal threats, and it is disputed whether Plaintiff's movements constituted furtive movements or harrowing gestures. Whether that movement constituted an immediate threat is a question for the jury.

It is also disputed why Plaintiff went to the ground and whether his movements on the ground posed—or reasonably appeared to pose—an immediate threat. (Def. SUF ¶ 25.) Officers fired 36 shots total between the two of them. (Id. ¶ 18.) All but one, or maybe two, of the shots were fired while Plaintiff was no longer in possession of the gun, and while Plaintiff was on the ground. (Pl. SUF ¶¶ 63, 70-71.) The Supreme Court in Plumhoff v. Rickard noted that "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." 572 U.S. 765, 777 (2014). But as the Ninth Circuit has pointed out, "terminating a threat doesn't necessarily mean terminating

the suspect. If the suspect is on the ground and appears wounded, he may no longer pose a threat; a reasonable officer would reassess the situation rather than continue shooting." Zion v. Cnty. of Orange, 874 F.3d 1072, 1076 (9th Cir. 2017). The Officer Defendants reassessed the situation, (Def. SUF ¶ 32), but it is a question for the jury whether that reassessment was adequate, and whether the circumstances as they existed justified continuing to shoot at Plaintiff even if there was at some point justification to use deadly force.

As to the question of whether Plaintiff was resisting arrest or fleeing, it is clear that he was fleeing the Officer Defendants up until he was on the ground in the field. While flight weighs somewhat in favor of using force, it provides less justification than an individual who is resisting arrest by physically struggling with officers. See, e.g., Chew v. Gates, 27 F.3d 1432, 1442 (9th Cir. 1994) ("With respect to whether Chew was 'actively resisting arrest,' it is undisputed that he fled and then hid from the police. He did not, however, resist arrest to the point of offering any physical resistance to the arresting officers, nor, at the time the officers released the dogs, did they have any particular reason to believe that he would do so."). As such, this factor weighs only slightly in Defendants' favor.

### 2. Qualified Immunity

Qualified immunity protects government officials "from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts generally apply a two-pronged test: whether "(1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 201–02 (2001)). If both prongs are met, the officer will be denied qualified immunity. Id.

The Ninth Circuit is clear that "[w]here factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds." Rosenbaum v. City of San Jose, 107 F.4th 919, 924 (9th Cir. 2024). Because there are pending factual disputes as to the reasonableness of the Officer Defendants' conduct, qualified immunity may not be granted at this stage.

As such, Defendants' Motion is **DENIED** as to Plaintiff's excessive force claim under Section 1983.

### B. State Law Battery and Negligence Claims

For the same reasons the Court rejects Defendants' arguments as to the reasonableness of the Officer Defendants' force in the constitutional context, the Court also rejects those arguments with respect to state law battery. A state law battery claim against a police officer requires that a Plaintiff establish: (1) the officer intentionally touched plaintiff or caused plaintiff

to be touched; (2) the officer used unreasonable force on the plaintiff; (3) plaintiff did not consent to the use of that force; (4) plaintiff was harmed; and (5) the officer's use of unreasonable force was a substantial factor in causing plaintiff's harm.  See Cal. Jury Inst., No. 1305A.  The Court has already determined that whether the Officer Defendants used unreasonable force on Plaintiff requires that a jury resolve disputed material facts.

The elements of a California negligence cause of action are "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury."  Ladd v. Cty. of San Mateo, 12 Cal. 4th 913, 917 (Cal. 1996) (internal citations omitted).  "Under established law, police officers have a duty 'to use reasonable care in deciding to use and in fact using deadly force.'"  Brown v. Ransweiler, 171 Cal. App. 4th 516, 534 (Cal. Ct. App. 2009).  This cause of action also turns on the reasonableness of the Officer Defendants' conduct through the question of breach, and thus requires a jury's evaluation of the disputed facts.

Defendants argue that these state law tort claims are barred by California Government Code § 820.2, which states that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  But it is well established in the Ninth Circuit that "this provision does not apply to officers who use unreasonable force in making an arrest."[16]  Blankenhorn v. City of Orange, 485 F.3d 463, 487 (9th Cir. 2007).  Thus, the question of immunity under Section 820.2 is also dependent on the jury's determination of facts underpinning the reasonableness of the Officer Defendants' use of force.

Defendants' Motion is **DENIED** as to the state law battery and negligence claims.

## C.  California Bane Act

Finally, Defendants argue that Plaintiff's Bane Act claim should fail.  That statute, codified as California Civil Code § 52.1, "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'"  Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (citing Cal. Civ. Code § 52.1).  The Ninth Circuit has made clear that "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" and that "use of excessive force can be enough to satisfy" that element.  Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing Cornell v. City and County of San Francisco, 17 Cal.App.5th 766 (Cal. Ct. App. 2017).  At the same time, "the Bane Act requires a 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'"  Id.

---

[16] As Plaintiff points out, Conway v. County of Tuolumne is inapposite here, because that case dealt with damage to the plaintiff's home caused by use of tear gas, not the issue of excessive force against a person.  See 231 Cal.App.4th 1005 (Cal. Ct. App. 2014).

(internal citations omitted).  At this time Defendant has not offered undisputed facts sufficient to resolve the issue of intent.  As such, the Motion is **DENIED** as to the Bane Act claim.

## D.  Punitive Damages

Like the Bane Act allegations, Defendant has not offered undisputed facts to conclusively resolve the issue of whether the Officer Defendants' "conduct is shown to be motivated by evil motive or intent, or [if] it involves reckless or callous indifference to the federally protected rights of [Plaintiff]." <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  As such, the Motion is **DENIED** as to Plaintiff's punitive damages claim.

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion.  The June 1, 2026, hearing is **VACATED**.

**IT IS SO ORDERED.**