# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-00625-KK-DTBx** | Date: | January 7, 2026 |
|---|---|---|---|

Title: ***Steffon Barber v. County of San Bernardino et al.***

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order DENYING Defendants' Ex Parte Application to Stay Proceedings Pending Interlocutory Appeal [Dkt. 151] and GRANTING Plaintiff's Ex Parte Application for Order Certifying Defendants' Appeal as Frivolous and Retaining Jurisdiction [Dkt. 152]**

**I.
INTRODUCTION**

On April 12, 2022, Plaintiff initiated the instant action by filing a Complaint in this Court arising from an incident that occurred on April 27, 2021.  ECF Docket No. ("Dkt.") 1 ("Complaint").  The case is currently proceeding on the operative Second Amended Complaint ("SAC") filed on June 17, 2025, against defendants County of San Bernardino and Christopher Alfred ("Deputy Alfred") (together, "Defendants").  Dkt. 72, SAC.  The parties have filed all required pretrial documents, and trial is currently set for January 26, 2026.

On December 22, 2025, the Court issued an Order denying Defendants' Motion for Summary Judgment ("Order").  Dkt. 132, Order.  On December 30, 2025, Defendants filed a Notice of Appeal of the Court's December 22, 2025 Order.  Dkt. 146.  On December 31, 2025, Defendants filed the instant Ex Parte Application to Stay Proceedings Pending Interlocutory Appeal ("Defendants' Application").  Dkt. 151, Defendants' Application ("Defs.' App.").  That same day, Plaintiff filed the instant Ex Parte Application for Order Certifying Defendants' Appeal as Frivolous and Retaining Jurisdiction ("Plaintiff's Application"). Dkt. 152, Plaintiff's Application ("Pl.'s App.").

The Court finds the matters appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Defendants' Application is **DENIED** and Plaintiff's Application is **GRANTED**.

## II.
## BACKGROUND

### A.    RELEVANT FACTS

The factual background concerning this case can be found in the Court's Order denying Defendants' motion for summary judgment.  See generally Order.  Hence, the Court will not recite the relevant facts here.

### B.    PROCEDURAL HISTORY

On April 12, 2022, Plaintiff filed the Complaint before the Court.  Dkt. 1.  On July 27, 2022, the Court stayed the action pending the resolution of Plaintiff's criminal case in state court stemming from the April 27, 2021 incident.  Dkt. 20.  Pursuant to multiple stipulated requests, the case was ultimately stayed for a total of 29 months from July 2022 to December 2024 due to the related criminal case.  Dkts. 23, 25, 28, 31, 36.

On December 18, 2024, the parties notified the Court Plaintiff's criminal case was resolved on December 16, 2024, and thus, requested the Court "return this matter to its active calendar."  Dkt. 41 at 2.  Accordingly, on December 19, 2024, the Court granted the parties' request and issued an Order setting a scheduling conference pursuant to Federal Rule of Civil Procedure 16(b). Dkts. 43-44.

On February 7, 2025, the Court issued a Scheduling Order setting a final pretrial conference for January 8, 2026, and trial for January 26, 2026.  Dkt. 47.

On June 17, 2025, Plaintiff filed the operative SAC raising claims for battery, negligence, violations of the Bane Act, excessive force, municipal liability under Monell, and intentional infliction of emotional distress.  See SAC ¶¶ 24-116.

On October 9, 2025, Defendants filed a Motion for Summary Judgment, arguing, among other things, that Deputy Alfred was entitled to qualified immunity as to Plaintiff's excessive force claim.  Dkt. 97.

On December 22, 2025, the Court issued an Order denying Defendants' Motion for Summary Judgment with respect to all causes of action.  See generally Order.  Relevant to the instant applications, the Court denied Deputy Alfred's defense of qualified immunity, concluding a reasonable jury could find he used deadly force in violation of the Fourth Amendment and his conduct violated a clearly established right.  Id. at 13-19.

On December 30, 2025, Defendants filed a Notice of Appeal of the Court's January 17, 2024 Order.[1]  Dkt. 146.

---

[1] On December 31, 2025, Defendants filed an Amended Notice of Appeal to indicate the appeal was filed in the Ninth Circuit rather than the Federal Circuit, as indicated by their first Notice of Appeal.  See Dkt. 150.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk DC

On December 31, 2025, Defendants filed their Application, seeking a stay of the instant proceedings pending the resolution of their interlocutory appeal of the December 22, 2025 Order. Defs.' App. Defendants argue the Court should stay the proceedings because (1) Defendants' appeal divests the Court of jurisdiction over Plaintiff's federal-law claims, id. at 5-8, and (2) Defendants would be prejudiced by "litigat[ing] claims simultaneously in both [the] district court as well as the Ninth Circuit," id. at 10.

On the same day, Plaintiff filed his Application, seeking an order certifying Defendants' appeal as frivolous and retaining jurisdiction over the instant action. Pl.'s App. Plaintiff argues (1) Defendants' appeal is baseless because Defendants seek review of disputed issues of material fact rather than purely legal issues, id. at 4-7, and (2) he will be prejudiced by a stay, as the instant action had already been stayed for nearly two and a half years pending the resolution of Plaintiff's criminal case. Id. at 7-10. In support of his Application, Plaintiff submits a declaration from his counsel, Dkt. 152-1, and various exhibits of cases from this District and the Ninth Circuit related to interlocutory appeals of denials of qualified immunity, Dkts. 152-2 to -5.

Further, on the same day, Plaintiff filed his Opposition to Defendants' Application ("Plaintiff's Opposition"). Dkt. 153, Plaintiff's Opposition ("Pl.'s Opp."). In his Opposition, Plaintiff contends (1) Defendants impermissibly seek to "second-guess[] a trial court's determination that there is a genuine issue of fact," id. at 4, and (2) a stay is not warranted because Defendants are unlikely to succeed on the merits of their qualified immunity defense and Plaintiff would be prejudiced by further delay of the action, id. at 5-8.

On January 1, 2026, Defendants filed their Opposition to Plaintiff's Application ("Defendants' Opposition"). Dkt. 154, Defendants' Opposition ("Defs.' Opp."). In their Opposition, Defendants contend (1) Plaintiff "cannot reasonably argue prejudice regarding his 'day in Court'" as he "is currently detained in state prison on a thirteen year sentence imposed just this year," id. at 3, (2) Defendants' appeal raises a purely legal issue, id. at 4-5, (3) Defendants' appeal is not frivolous because Deputy Alfred's actions did not violate clearly established law governed by existing precedent, id. at 5-12, and (4) Plaintiff has not demonstrated irreparable harm warranting ex parte relief, id. at 12.

The final pretrial conference is currently scheduled for January 8, 2026, and trial is set to begin on January 26, 2026. See Dkt. 86.

These matters, thus, stand submitted.

## III.
### DISCUSSION

### A.      EX PARTE RELIEF IS WARRANTED

Unlike regularly noticed motions, applications for ex parte relief are "inherently unfair" and "pose a threat to the administration of justice" because "the parties' opportunities to prepare are grossly unbalanced." Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 490 (C.D. Cal. 1995). Hence, to justify use of ex parte procedures, a party seeking ex parte relief must show: (1) "the moving party's cause will be irreparably prejudiced if the underlying motion is heard

according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." Id. at 492. "To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion." Id. If a proposed application lacks merit, "failure to hear it cannot be prejudicial." Id.

As an initial matter, the Court finds the parties have met the standard for consideration of their ex parte applications. As both parties note, the final pretrial conference is scheduled for January 8, 2026, leaving the parties without time to formally notice a motion. Further, the Court does not find either party is at fault for creating this crisis. Accordingly, the Court will address the merits of both ex parte applications. See Immigrant Defs. L. Ctr. v. Noem, 781 F. Supp. 3d 1011, 1034 (C.D. Cal. 2025) (allowing ex parte application where the party was "without fault in creating the crisis").

## B.    DEFENDANTS' APPEAL IS FRIVOLOUS

### 1.    Applicable Law

A party may appeal an "order[] denying qualified immunity under the collateral order exception to finality." Scott v. Smith, 109 F.4th 1215, 1222 (9th Cir. 2024). Ordinarily, the filing of such an appeal "divests the district court of jurisdiction to proceed with trial" on the issue of qualified immunity. Chuman v. Wright, 960 F.2d 104, 105 (9th Cir. 1992). However, just as with any other interlocutory appeal, a district court "may certify that [] appeal as frivolous." Coinbase, Inc. v. Bielski, 599 U.S. 736, 745 (2023); see also California ex rel. Harrison v. Express Scripts, Inc., 139 F.4th 763, 772 (9th Cir. 2025) (discussing Coinbase). In the Ninth Circuit, an appeal is frivolous if the "arguments of error are wholly without merit." In re Marino, 949 F.3d 483, 489 (9th Cir. 2020) (quoting Maisano v. United States, 908 F.2d 408, 411 (9th Cir. 1990) (per curiam)); see also Express Scripts, Inc., 139 F.4th at 772 (noting frivolous appeals generally); Galen v. Cnty. of Los Angeles, 477 F.3d 652, 666 (9th Cir. 2007) (considering whether a qualified immunity argument was frivolous under this standard).

### 2.    Analysis

Here, Defendants' appeal is frivolous on multiple fronts.

First, Defendants' entire appeal rests on a "distortion of the record." Blixseth v. Yellowstone Mountain Club, LLC, 796 F.3d 1004, 1007 (9th Cir. 2015). Specifically, Defendants argue "the Court concluded [] that Deputy Alfred's first shot was reasonable under the circumstances." Defs.' Opp. at 8. However, that assertion misrepresents what the Court concluded:

> Ultimately, in balancing the gravity of the intrusion and the government's need for that intrusion, a jury could find Deputy Alfred's use of deadly force was unreasonable. In particular, viewing the evidence most favorably to Plaintiff, a jury could find Deputy Alfred acted unreasonably when he fired six shots – without warning and after failing to identify himself as an officer in a dark driveway – at Plaintiff's slowly moving vehicle that he could have avoided by simply stepping away.

Order at 17 (emphasis added). Rather than genuinely challenge this finding, Defendants "put[] words into the district court's mouth" by falsely claiming the Court concluded the first shot was reasonable. Nw. Env't Def. Ctr. v. Brown, 640 F.3d 1063, 1076 (9th Cir. 2011), rev'd on other grounds and remanded sub nom. Decker v. Nw. Env't Def. Ctr., 568 U.S. 597 (2013); see also United States v. Gonzalez, Inc., 412 F.3d 1102, 1111 (9th Cir. 2005) ("[W]e are not in the business of putting words in the mouth of [a] district court."). This distortion and mischaracterization alone renders their appeal "wholly without merit." Blixseth, 796 F.3d at 1007 (declaring appeal frivolous where the appellant "distort[ed] [] the record" by mischaracterizing the lower court proceedings); see also Frunz v. City of Tacoma, 476 F.3d 661, 665 (9th Cir. 2007) (same where the appellants failed "to recite the record fairly and accurately"); I.A. ex rel. ReneePollarda v. City of Redondo Beach, No. CV 20-06447-DDP-JPRx, 2023 WL 6881022, at *2 (C.D. Cal. Oct. 17, 2023) (certifying appeal as frivolous where the defendant's "set[] up a straw man" that court "never suggested" in its order).

Second, based upon this distortion and mischaracterization, Defendants seek to put forward an unpreserved theory for qualified immunity based on assertions the Court, "[t]ellingly, . . . did not pass on." Cascadia Wildlands v. U.S. Bureau of Land Mgmt., 153 F.4th 869, 901 (9th Cir. 2025). While Defendants now argue Deputy Alfred did not violate clearly established law because "police officers are justified in firing at a suspect in order to end a severe threat to public safety" and "need not stop shooting until the threat has ended,"[2] Defs.' Opp. at 6 (citation modified) (quoting Plumhoff v. Rickard, 572 U.S. 765, 779 (2014)), this argument was not presented in Defendants' summary judgment briefings. See Cascadia Wildlands, 153 F.4th at 901 (subjecting argument to waiver because it "was not raised in any developed manner in the [p]laintiff's motion for summary judgment"). Defendants' failure to previously raise this argument is further evidenced by their first-time use of cases, namely Plumhoff, Estate of Hernandez ex rel. Hernandez v. City of Los Angeles, 139 F.4th 790 (9th Cir. 2025), Zion v. County of Orange, 874 F.3d 1072 (9th Cir. 2017), and Blanford v. Sacramento County, 406 F.3d 1110 (9th Cir. 2005).[3] See Defs.' Opp. at 7-9. Because Defendants' newfound argument was never raised before the Court, it was "waived," Cascadia Wildlands, 153 F.4th at 902, and is thus "wholly without merit," Malhiot v. S. Cal. Retail Clerks Union, 735 F.2d 1133, 1137-38 (9th Cir. 1984) (concluding appeal was "frivolous" where the appellant's "argument was not raised before . . . the district court").

---

[2] Defendants' also frame this argument as: "[T]here are no such cases clearly establishing that it is unconstitutional for an officer on foot to use deadly force against a person when the person reversed a vehicle towards the officer, and it was not clear that the person no longer posed an immediate threat to the office [sic?] after it allegedly slowed down." Defs.' Opp. at 11.

[3] Defendants' passive Plumhoff parenthetical, see Dkt. 97 at 22 ("'(police officers justified in using deadly force to stop the suspect from speeding)'"), is not remotely the same argument they present now.

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk DC

Third, putting waiver aside, Defendants' argument is meritless. The gist of Defendants' appeal turns on one case: <u>Hernandez</u>, in which the court held the officer violated clearly established law by "continu[ing] to shoot" a suspect after "he falls to the ground" from being wounded. <u>Hernandez</u>, 139 F.4th at 795. Defendants first claim <u>Hernandez</u> is analogous to the instant case because, as in <u>Hernandez</u>, "the Court concluded [] that Deputy Alfred's first shot was reasonable." Defs. Opp. at 8. As noted earlier, this argument fails because the Court never made this finding. <u>See</u> Order at 15-16. Defendants then claim <u>Hernandez</u> is unlike this case because "a Trailblazer slowing down after Deputy Alfred's first shot is <u>not akin</u> to decedent's actions after the third and fourth shots in" <u>Hernandez</u>. Defs.' Opp. at 8. Specifically, Defendants seek to contrast Plaintiff's actions in the instant case from the plaintiff in <u>Hernandez</u> who was shot multiple times after falling to the ground and making "nonthreatening" movements, <u>Hernandez</u>, 139 F.4th at 804. <u>See</u> Defs.' Opp. at 8. According to Plaintiff, this difference entitles Deputy Alfred "to qualified immunity because there could be no determination that [] Plaintiff was not still a threat after [the] first shot."[4] <u>Id.</u> In the instant case, however, there is a genuine issue of material dispute as to whether Plaintiff ever posed an immediate and significant threat of death or serious physical injury from the time the first shot was fired by Deputy Alfread all the way up to the final, sixth shot.[5] <u>See</u> Order at 15-16. Moreover, <u>Hernandez</u> is a poor analogy given this case involved one rapid succession of shots rather than "three distinct volleys of [] shots" with moments of pause long enough for the officer to give another set of commands. 139 F.4th at 795, 800-01; <u>see</u> <u>Murillo v. City of Los Angeles</u>, 707 F. Supp. 3d 947, 963-64 (C.D. Cal. 2023) (refusing "to treat the first six shots as more than one event" where there was "no discernable pause in the volley of shots").

---

[4] If anything, this is a couched factual dispute targeting two of Plaintiff's facts – that the Trailblazer only moved slowly and that Deputy Alfred had the opportunity to step to the side. <u>See</u> <u>Est. of Wilson ex rel. Jackson v. Cnty. of San Diego</u>, 729 F. Supp. 3d 1039, 1047 (S.D. Cal. 2024) (certifying appeal as frivolous where the defendant "implicitly fail[ed] to view the facts in a light most favorable to [the plaintiff]"). Under those facts, which the Court must view in Plaintiff's favor, Defendants' appeal is "frivolous" because this case was "predetermined by a review of relevant law," <u>C.W. v. Capistrano Unified Sch. Dist.</u>, 784 F.3d 1237, 1247 (9th Cir. 2015), such as <u>Acosta v. City & Cnty. of San Francisco</u>, 83 F.3d 1143 (9th Cir. 1996), and <u>Orn v. City of Tacoma</u>, 949 F.3d 1167 (9th Cir. 2020). Defendants' discussion of those two cases in particular is terse and ultimately unavailing. For example, Defendants claim <u>Acosta</u> is distinguishable because of its procedural posture. However, it is "the facts of [a] particular case[] that clearly establish what the law is," <u>Martinez v. High</u>, 91 F.4th 1022, 1031-32 (9th Cir. 2024) (citation modified), <u>cert. denied</u>, 145 S. Ct. 547 (2024), not how that case was litigated. As for <u>Orn</u>, Defendants overlook where the Ninth Circuit expressly opined a jury "could still conclude that [the defendant] lacked an objectively reasonable basis to fear for his own safety" if he "was standing behind the rear bumper of his SUV [in the vehicle's path of travel], as he claims." 949 F.3d 1167, 1175 (9th Cir. 2020); <u>see also</u> <u>id.</u> (noting the officer's "version of [the] events, in which he stood in the path of [the plaintiff's] vehicle as it accelerated toward him").

[5] Defendants' "severity of the crime" argument is also unavailing. <u>See</u> Defs.' Opp. at 9 (citing <u>J.P. ex rel. Balderas v. City of Porterville</u>, 801 F. Supp. 2d 965, 983 (E.D. Cal. 2011)). As the Court explained in the Order, the crime Deputy Alfred responded to was not serious and had ended by the time he arrived. <u>See</u> Order at 14-15.

---

Lastly, Defendants' use of "non-controlling case law" is further indicia their appeal is "frivolous." Greco v. Stubenberg, 859 F.2d 1401, 1404 (9th Cir. 1988). In urging the Court their appeal has merit, Defendants cite to at least ten out-of-circuit cases allegedly proposing Deputy Alfred did not violate clearly establish law. See Defs.' Opp. at 9-10. For the clearly established law inquiry, however, courts in the Ninth Circuit only venture out of circuit "[i]n the absence of binding precedent." Moore v. Garnand, 83 F.4th 743, 750 (9th Cir. 2023). Notably, this is not a case where "there is very little case law directly apposite," Karam v. City of Burbank, 352 F.3d 1188, 1195 (9th Cir. 2003) (citation modified), or where the Ninth Circuit "has never spoken on this issue," Taylor AG Indus. v. Pure-Gro, 54 F.3d 555, 563 (9th Cir. 1995) (considering appeal not frivolous where the law was unsettled but "clearly established . . . by the Supreme Court [and] seven other courts of appeal"). But rather than discuss the apposite caselaw, Defendants cite two paragraphs-worth of non-binding cases, see Defs.' Opp. at 9-10, that appear to collide with Ninth Circuit precedent making clear "that an officer who shoots at a slow-moving car when he can easily step out of the way violates the Fourth Amendment," Villanueva v. California, 986 F.3d 1158, 1171 (9th Cir. 2021). Defendants' failure to recognize the applicable law in the Ninth Circuit further makes their appeal frivolous. See C.W. v. Capistrano Unified Sch. Dist., 784 F.3d 1237, 1247 (9th Cir. 2015) (concluding appeal was "frivolous" where "its outcome [was] predetermined by a review of relevant law").

Accordingly, Plaintiff's Application is **GRANTED**.

## C.   THE INTERESTS OF JUSTICE DO NOT WARRANT A STAY

### 1.   Applicable Law

"The district court possesses 'inherent authority to stay federal proceedings pursuant to its docket management powers.'" Chinaryan v. City of Los Angeles, 122 F.4th 823, 825 (9th Cir. 2024) (citation modified) (quoting In re PG&E Corp. Sec. Litig., 100 F.4th 1076, 1085 (9th Cir. 2024)). In deciding to stay a case, a court must weigh (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Id. (quoting Ernest Bock, LLC v. Steelman, 76 F.4th 827, 842 (9th Cir. 2023)).

### 2.   Analysis

Here, the factors weigh against granting a stay.

First, a stay would damage Plaintiff's interests. This case has proceeded in fits and starts for nearly four years now, in part because of a 29-month stay entered while the related criminal case as pending. Any further delay would "create a danger of denying justice" even if the case "may eventually resume." Doe 1-10 v. Fitzgerald, 102 F.4th 1089, 1095 (9th Cir. 2024) (citation modified). Defendants argue any harm is minimal because a stay is "temporary." Defs.' App. at 10. Yet that assertion ignores the "risk that witnesses' memories will fade and evidence will become stale" while his suit is "on ice," Doe 1-10, 102 F.4th at 1095-96 – a concrete risk considering Plaintiff's alleged constitutional injury occurred close to five years ago. See also Express Scripts, Inc., 139 F.4th at 772 (noting how a stay could trigger "harms in the form of lost evidence, depleted funding, and diminished patience"). Defendants also claim Plaintiff cannot be prejudiced because he is

incarcerated. "Simply because a person is incarcerated," however, "does not mean that he is stripped of free access to the courts and the use of legal process to remedy civil wrongs." Wimberly v. Rogers, 557 F.2d 671, 673 (9th Cir. 1977); cf. Davis v. Walker, 745 F.3d 1303, 1311 (9th Cir. 2014) (vacating stay where state prisoner's "ability to litigate his [Section] 1983 actions would be substantially prejudiced through delay"). Thus, this factor leans against entering a stay.

Second, requiring this matter to go forward would not be inequitable or result in hardship. Defendants claim prejudice would result from having to "litigate claims simultaneously" at the trial and appellate levels. Because that harm is present in any stay inquiry, however, it is not enough by itself. Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'"). Defendants' second argument – that it would "expend[] further time and expense to litigate issues that may be invalidated or otherwise impacted by the Ninth Circuit's" – is wholly speculative considering the Court's frivolity ruling. See Behrens v. Pelletier, 516 U.S. 299, 311 (1996) (noting the practice of certifying appeals as frivolous "minimizes disruption of the ongoing proceedings"); see also, e.g., Est. of Wilson ex rel. Jackson v. Cnty. of San Diego, 729 F. Supp. 3d 1039, 1059 (S.D. Cal. 2024) (denying motion to stay in light of certifying appeal as frivolous); V.R. v. Cnty. of San Bernardino, No. EDCV 19-1023-JGB-SPx, 2022 WL 3137728, at *3 (C.D. Cal. Mar. 31, 2022) (same); Vargas v. Cnty. of Los Angeles, No. CV 19-3279-PSG-ASx, 2021 WL 2403162, at *6 (C.D. Cal. May 5, 2021) (same). Regardless, "nearly all courts 'have concluded that incurring litigation expenses does not amount to an irreparable harm.'" Mohamed v. Uber Techs., 115 F. Supp. 3d 1024, 1032-33 (N.D. Cal. 2015). Finally, because the parties have already filed their motions in limine and other pretrial documents, the only thing left is a relatively straightforward and concise trial to proceed as scheduled. Hence, this factor also weighs against entering a stay.

Third, a stay would not simplify any issues of law, and Defendants do not argue otherwise. Thus, this factor weighs against a stay. See Lockyer, 398 F.3d at 1112 (vacating stay where it was "highly doubtful" that the parallel proceedings would resolve the claims).

Each factor weighs against entering a stay. Accordingly, Defendants' Application is **DENIED**.

## IV.
## CONCLUSION

For the reasons set forth above, Defendants' Application is **DENIED**, and Plaintiff's Application is **GRANTED**. The Court shall retain jurisdiction over this action pending Defendants' appeal, and the matter shall proceed to trial as scheduled.

**IT IS SO ORDERED.**